EXHIBIT "1"

Electronically FILED by
Superior Court of California,
County of Los Angeles
12/11/2024 12:39 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

1
COLE R. SHERIDAN (SBN: 215109)
LAW OFFICES OF COLE SHERIDAN
2
1990 South Bundy Drive, Suite 630
3
Los Angeles, California 90025
Phone 310-867-1810
4
Email: csheridan@csheridanlaw.com

5
Attorneys for Plaintiff Restoration Earth, LLC,
6
a California Limited Liability Company

7

8
SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT
UNLIMITED JURISDICTION
9

| | |
|---|---|
| 10  RESTORATION EARTH, LLC, a California Limited Liability Company, | CASE NO.  24STCV32648 |
| 11                 Plaintiff, | **COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT FOR** |
| 12              v. | **NON-INFRINGEMENT OF STATE AND/OR COMMON LAW** |
| 13  JIM S. ADLER, P.C., a Texas Professional | **TRADEMARK AND OTHER RELATED VIOLATIONS; AND THE** |
| 14  Corporation; JAMES "JIM" ADLER, an | **ABSENCE OF ANY BREACH OF** |
| 15  individual; WILLIAM "BILL" ADLER, an individual; GRIFFITH LANDING, LLC, a | **CONTRACT** |
| 16  California Limited Liability Company; and DOES 1 through 10, inclusive, | **JURY TRIAL DEMANDED** |
| 17 | |
| 18                 Defendants. | |
| 19 | |

20      Plaintiff RESTORATION EARTH, LLC, a California Limited Liability Company ("Plaintiff")

21 by its attorney of record, for its complaint in this action avers and alleges as follows:

22                              **THE PARTIES**

23      1.      Plaintiff, RESTORATION EARTH, LLC, is a California limited liability company

24 organized under the laws of the State of California, with its principal place of business in Los Angeles,

25 California.

26      2.      Upon information and belief, Defendant JAMES "JIM" ADLER, is an individual,

27 domiciled in and a resident of the State of Texas.

28      3.      Upon information and belief, Defendant WILLIAM "BILL" ADLER, is an individual,

LA10448.017241192

domiciled in and a resident of the State of Texas.

4.      Upon information and belief, Defendant JIM S. ADLER, P.C., is a professional corporation, organized under the laws of the State of Texas, with its principal place of business in Houston, Texas.

5.      GRIFFITH LANDING, LLC ("Griffith Landing"), organized under the laws of the State of California, with its principal place of business in Los Angeles, California.

## JURISDICTION AND VENUE

6.      Plaintiff is informed and believes and thereon alleges that venue is proper under California Code of Civil Procedure ("CCP") §§392-395 because the wrongdoing that is the subject of the claims mentioned herein have taken place in the City of Los Angeles (the "City") and in the County of Los Angeles (the "County") and State of California (the "State") and all defendants have been conducting such minimally sufficient business activities throughout the City, County and State to avail themselves to the jurisdiction of the above-referenced court.

7.      Plaintiff is informed and believes and thereon alleges that this court has jurisdiction over the subject matter of this lawsuit and the underlying dispute involves obligations to be performed within the City, County and/or State. Upon information and belief, this Court has personal jurisdiction over Defendants JAMES "JIM" ADLER; Defendant WILLIAM "BILL" ADLER; Defendant JIM S. ADLER, P.C.; and Defendant GRIFFITH LANDING, LLC (collectively, "Defendants"), as they have each purposefully directed their activities at forum residents; purposefully availed themselves of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of local law. Defendants engaged in conduct and had such connection with the forum state that causing injury to residents of the forum state was foreseeable. Defendants also engaged in activities that were an individualized targeting of residents of the forum state; and knowingly and purposefully engaged in an activity that caused an effect in the forum state. The above-captioned lawsuit arises from such activity and the exercise of jurisdiction comports with fair play and substantial justice; and/or committed a wrongful intentional act that was expressly aimed at the forum state, causing harm that

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT

LA10448.017241192

these Defendants knew or should have known was likely to be suffered within the forum state, such that personal jurisdiction of this Court over these Defendants is just proper.

8.    Venue is proper, as Plaintiff entered into an agreement, executed in Los Angeles, California under the governing laws of the State of California with GRIFFITH LANDING, LLC, a California limited liability company, regarding its rights and privileges regarding the trademarks at issue in the above-captioned case; and/or Defendants JAMES "JIM" ADLER, Defendant WILLIAM "BILL" ADLER, and Defendant JIM S. ADLER, P.C. (collectively, the "Adler Defendants") sent a cease and desist letter to Plaintiff's business address located and received within this district in Los Angeles, California, claiming that Plaintiff was infringing on their trademarks at issue in the above-captioned case; Plaintiff's rights to conduct business within this district under its corporate name and corresponding rights pending before the USPTO have been materially prejudiced by Defendants' actions and the above-captioned case directly arises from a request to determine the respective rights of the parties concerning the trademarks at issue in the above-captioned case.

### DECLARATORY RELIEF REGARDING VALIDITY OF TRADEMARKS

9.    Claims regarding intellectual property rights and disputes are indisputably appropriate for declaratory relief. Otherwise, competitors might have no practical recourse, but to pay whatever action or royalty was demanded of them. Conversely, competitors facing infringement claims can clear the air by suing for a judgment that the intellectual property at issue is invalid. Threat of a scarecrow intellectual property right establishes a sufficient controversy for declaratory relief. Otherwise competitors would face an in terrorem choice between an incurrence of a growing potential liability for infringement and abandonment of their enterprise

10.    The above-captioned case is ripe for judicial determination as an actual and substantial controversy exists between parties, having adverse legal interests of sufficient immediacy in reality to warrant the issuance of a declaratory judgment. The Adler Defendants have a history of litigating their trademark rights, have taken affirmative action to directly demand that Plaintiff abandon its use and trademark application of the marks at issue in the above-captioned matter, and have opposed Plaintiff's

LA10448.017241192

trademark application, giving rise to the existence of a substantial controversy between the parties, having adverse legal interests of sufficient immediacy in reality to warrant the issuance of a declaratory judgment. In addition, GRIFFITH LANDING, LLC, a California limited liability company, has made an actual demand for assurances from Plaintiff under threat of a breach regarding Griffith Landing's ability to use and/or license the marks at issue in the above-captioned matter.

11.     The pendency of any federal court proceeding involving similar federal trademark issues and parties does not, by itself, require a state court to refuse declaratory relief.

## FACTUAL ALLEGATIONS

12.     On about 2010, Plaintiff (and/or one or more of its principals) developed the name "Hammer & Nails" for use within the legal profession for those providing advice and counsel to construction industry specialists.

13.     Plaintiff began developing the stylized logo and branding icon for Hammer & Nails Law after various entities working with Plaintiff - who had been locally recognized since the early 1990s as individuals or attorneys associated with the generic term "hammer" within the legal industry - requested Plaintiff's assistance in branding their construction-based legal services in light of such historical use of the generic term "hammer".

14.     On about September 14, 2023, Plaintiff (and/or its associates/affiliates) registered its domain name "hammerandnailslaw.com" and began using the domain's corresponding email addresses and developing a website to support the domain and the Hammer & Nails Law firm.

15.     On or about February 27, 2024, Plaintiff filed for three (3) separate trademarks, using a unique combination of words, phrases, symbols and designs that specifically identified Plaintiff's legal services within the construction industry. For purposes of reference, the USPTO issued the following US Serial Numbers to three (3) separate trademarks respectively: (i) 98423825; (ii) 98423304; and (iii) 98515823 (collectively, the "H&N Marks"), appearing as follows in both stylized form [i.e. Mark Drawing Type 3 – an illustration drawing which includes word(s)/letter(s)/number(s)] as well as standard characters [i.e. Mark Drawing Type 4 – a standard

LA10448.017241192

character mark] without claim to any particular font style, size or color:

  Hammer & Nails

16.     On about April 23, 2024, Hammer and Nails Law, A Professional Corporation filed its Articles of Incorporation having been recognized as a California corporation by the Office of the California Secretary of State.

17.     On or about July 17, 2024, the State Bar of California issued its certificate of registration to Hammer and Nails Law, A Professional Corporation, (i) certifying that the entity had complied with all legal requirements of the governing statutes of the State of California and applicable rules and regulations pertaining to professional corporations; and (ii) recognizing Hammer and Nails Law, A Professional Corporation as a registered law corporation authorized to practice law within the State of California, a true and correct copy of which is attached hereto as Exhibit 1.

18.     Plaintiff entered into an agreement, executed in Los Angeles, CA and under the governing laws of the State of California with Griffith Landing, licensing and/or assigning certain use rights of the H&N Marks by Plaintiff to Griffith Landing and containing certain representations and warranties regarding its originality. The agreement also granted Griffith Landing the right, power and authority to permit Hammer and Nails Law, A Professional Corporation to use the H&N Marks.

19.     Such agreement designated Los Angeles County in California as the exclusive jurisdiction to hear any and all claims and/or controversies related to and/or arising from such agreement. All related witnesses are domiciled in and residents of the State of California, and related businesses are organized under the laws of the State of California, with their principal places of business in Los Angeles, California.

20.     Since receiving its approval from the State Bar of California, Hammer and Nails Law, A Professional Corporation (also referred to herein as "H&N" and "H&N Law") has been using the H&N Marks within California - across various courts located within the State of California as well as

LA10448.0172411192

with its clients' construction-based transactions. Most recently, H&N has appeared as counsel of record before the Los Angeles County Superior Court in a shareholder derivative suit involving two construction companies; is representing a large Southern California developer on a products liability issue involving a new 92-unit, six-story building in Los Angeles; is representing a San-Diego based developer on the construction of a 100-unit affordable housing apartment complex; and was recently retained to act as local counsel for a developer constructing a 1,838-acre luxury destination, featuring three (3) 5-star hotels, luxury residences, a championship golf course, tennis facilities, a sports center, an amphitheater, a medical center, and other world-class amenities. H&N Law has positioned itself as a high-end, boutique law firm providing services to its construction-based clients in the areas of large-scale developments, construction defects, construction lending and finance and construction related corporate and/or shareholder matters.

21.     All uses of the H&N Marks (whether on its business cards, website, email signatures, and pleading papers to courts throughout California) clearly identify Hammer and Nails Law, A Professional Corporation as the exclusive service provider associated with such marks.

22.     On or about December 2, 2024, Plaintiff received a cease-and-desist demand letter from and/or on behalf of the Adler Defendants (the "Adler Demand Letter"), claiming that Plaintiff's applications to register the mark 'Hammer & Nails' and the Hammer & Nails design marks in connection with legal services is "likely to cause confusion" with federal registered trademarks owned by the Adler Defendants.

23.     The Adler Demand Letter (a true and correct copy of which is attached hereto as Exhibit 2) identified their purported marks by the following registration numbers: "U.S. Reg. Nos. 3,503,851; 3,730,395; 6,292,032; 6,383,275; 3,651,822; and 3,644,185" (collectively, the "Adler Marks"). *See*, ¶1 on p. 2 of the Adler Demand Letter.

24.     While no example specimens of the Adler Marks were included in the Adler Demand Letter, the following specimens constitute the Adler Marks identified in the Adler Demand Letter (which each consist of standard characters [i.e. Mark Drawing Type 4 – a standard character mark] without any claim to any particular font style, size or color):

LA10448.017241192

| | |
|---|---|
| THE TEXAS HAMMER | [U.S. Reg. No. 3503851] |
| HAMMER TIME | [U.S. Reg. No. 3644185] |
| HAMMER TV | [U.S. Reg. No. 3651822] |
| THE HAMMER | [U.S. Reg. No. 3730395] |
| THE HAMMER LAW FIRM | [U.S. Reg. No. 6292032] |
| THE HAMMER LAWYER | [U.S. Reg. No. 6383275] |

25.     According to the Adler Demand Letter, Plaintiff's use and registration of the H&N Marks "…is problematic as the marks appropriate the dominant portion of our client's Hammer Marks…" and is "…therefore likely to cause confusion in that consumers will mistakenly believe that [H&N's] legal services are affiliated with or licensed by Adler." *See*, ¶3 on p. 2 of the Adler Demand Letter.

26.     According to the Adler Defendants, the extensive use and promotion of the Adler Marks within the State of Texas created a certain association between the term "hammer" and the Adler Defendants within the personal injury legal practice throughout the State of Texas. *See*, ¶¶18-32 of the First Amended Complaint previously filed by and/or on behalf of the Adler Defendants in the U.S. District Court for the Northern District of Texas (Case No. 3:19-cv-02025-K, commonly referred to as *Adler; el at. v. McNeil Consultants, LLC; et al.*), a true and correct copy of which is attached hereto as part of Exhibit 3 (and beginning at page marked as Evidence Page 016, for purposes of reference), referred to herein as the "FAC".

27.     The Adler Defendants conclude that each of the six (6) above-referenced marks, expressly referenced in the Adler Demand Letter (and collectively referred to herein as the Adler Marks), includes the generic term "hammer." They further claim that, because all these marks use the word "hammer," the Adler Defendants can preclude all others within the legal profession from using

LA10448.017241 1192

the generic term "hammer" within their service marks, trade names and other distinctive designations.

28.     The conclusion made by the Adler Defendants is based on the assumption that use of the generic term "hammer" within the legal profession will likely lead to confusion between the Adler Firm (more formally known as Jim S. Adler, P.C., a professional corporation) and Hammer and Nails Law (also known as H&N Law) among those searching for legal representation.

29.     Finally, the Adler Demand Letter (i) declares that Plaintiff's use and registration of the H&N Marks "…would violate Adler's rights under federal law. See, e.g., 15 U.S.C. §§ 1114(1), 1125(a)" and (ii) demands that Plaintiff both (A) withdraws its trademark applications and (B) "…cease and permanently refrain from using or seeking to register the Hammer & Nails Marks, or any confusingly similar mark." *See*, ¶4 on p. 2 of the Adler Demand Letter. The Adler Defendants requested a response from Plaintiff within ten (10) days of receipt. *Id*. at ¶5.

30.     Notably, while "JIM S. ADLER, P.C." is the proper name of the law firm for which the Adler Defendants work – they commonly refer to their firm as the "The Adler Firm". No use of the generic term "hammer" is contained within any derivation of their law firm name. Rather the Adler Defendants use "The Texas Hammer" as a tagline – not as the name of any law firm.

31.     None of the Adler Defendants (i.e. Defendant JAMES "JIM" ADLER; Defendant WILLIAM "BILL" ADLER nor Defendant JIM S. ADLER, P.C., a professional corporation) are licensed to practice law in the State of California and exclusively practice as mass-market personal injury attorneys. *See*, FAC at ¶12, which describes "The Adler Firm" as a "…Texas personal injury law firm, representing injured parties in all types of personal injury cases, with a particular focus on auto accidents and commercial vehicle / eighteen-wheeler accidents. Jim Adler and the Adler Firm view their practice as "safety law," and focus on trying to help Texas injury victims and their families recover to the greatest extent possible…" *Id*.

32.     The Adler Firm employs approximately 27 lawyers and currently has a total of four (4) offices, which are exclusively localized within the State of Texas – specifically, in Houston, Dallas, San Antonio, and Channelview, Texas. *See*, FAC at ¶14. According to the Adler Defendants, "…Jim Adler has grown the Adler Firm into one of the largest, most widely recognized, and most

LA10448.017241192

successful personal injury law firms in Texas." *See*, FAC at ¶14.

33.    According to the Adler Defendants, "the bulk" of their advertising is contained within "…the three largest markets in Texas—Houston, San Antonio, and Dallas-Fort Worth". FAC at ¶23.

34.    According to the Adler Defendants, while no use of the generic term "hammer" is contained within any derivation of their law firm name, "…Jim Adler and the Adler Firm have consistently and continuously used several trademarks, including JIM ADLER, THE HAMMER, THE TEXAS HAMMER, and EL MARTILLO TEJANO, (collectively, the "ADLER Marks") to identify and promote Jim Adler and the Adler Firm, and the legal services they provide." FAC at ¶19.

35.    The following is a true and correct copy of the home page of the Adler Firm (referred to herein as <u>Exhibit 4</u>) showing (1) the firm's logo in the top left-hand corner; and (2) two individuals holding hammers, inviting potential personal injury clients to "Get a Free Case Review":



36.    As demonstrated by <u>Exhibit 4</u> above, neither the Adler Firm logo nor the website's home page use the written term "hammer" nor use any imagery of a hammer.

37.    The Adler Firm logo is comprised of some manner of a red star and red stripes with the inclusion of a shadow of bird.

LA10448.017241119 2

38.    After three (3) additional scroll sections down from the website's initial landing page, the following "closing page" contains the first use of the generic term "hammer" within the Adler Defendants' website (referred to herein as <u>Exhibit 5</u>):



39.    On or about December 3, 2024, Plaintiff promptly sent the Adler Defendants written confirmation of its receipt of the Adler Demand Letter coupled with a request for further written explanation of the legal positions justifying its requests that Plaintiff withdraw its trademark applications on or before December 9, 2024. No further communication was received by Plaintiff from the Adler Defendants by such date.

40.    <u>*Adler; el at. v. McNeil Consultants, LLC; et al*</u>. (Case No. 3:19-cv-02025-K) [referred to herein as the "McNeil Case"], before the U.S. District Court for the Northern District of Texas (the "District Court") was between the Adler Firm and a lawyer referral service.

41.    In the McNeil Case, the Adler Firm claimed to have purchased certain keyword search advertising to drive internet traffic to its firm, including purchasing keyword ads through Google's search engine. *See*, ¶1 on p. 41 of Findings, Conclusions, and Recommendation of The United States Magistrate Judge, as issued in the McNeil Case [a true and correct copy of which is attached hereto as

LA10448.017241192

part of <u>Exhibit 3</u> (and beginning at page marked as Evidence Page 042, for purposes of reference), referred to herein as the "McNeil Findings". The Adler Firm purchased its own marks or generic terms related to the type of cases they handle. *Id*. For example, The Adler Firm purchased keyword ads for "Jim Adler" or "Texas Hammer" as well as "car accident lawyer" for more generic searches. *Id*. Most of the keyword ads the Adler Firm purchased were for someone searching for the Adler Marks rather than generic terms. *Id*. All search engine advertisements purchased by the Adler Marks prominently included the Adler Marks and clearly identified the Adler Firm as the source of the advertisement(s). *Id*.

42.    Defendant Lauren Von McNeil was the sole owner of McNeil Consultants and Quintessa Marketing (collectively, the "McNeil Defendants"). Both entities operated under the name Accident Injury Legal Center, which includes a lawyer referral website at accidentinjurylegalcenter.com, and an associated call center. ¶2 on p. 42 of McNeil Findings. The Adler Firm accused the McNeil Defendants of engaging "…in a scheme to trade on the goodwill and reputation of Plaintiffs and the Adler Marks in Texas and to deceptively induce prospective clients who are using mobile devices to specifically seek out Jim Adler and the Adler Firm into mistakenly contacting and engaging Defendants instead." *Id*. at ¶1.

43.    The purported scheme was advanced with the McNeil Defendants "…purchasing the marks as keyword ads on mobile devices for use in click-to-call ads because of the likelihood that consumers will be confused and quickly click on Defendants' confusing ad not realizing that the link is not affiliated with [the Adler Firm]." *Id*. at ¶4.

44.    Notably, Defendants' online click-to-call advertisements did not identify a lawyer or law firm as the source of the advertisement. ¶2 on p. 43 of McNeil Findings. Defendants' online advertisements on mobile devices included a click-to-call link but not a link to Defendants' website. ¶2 on p. 44 of McNeil Findings. Consumers who click on the click-to-call link are connected to a call center operated by Defendants. *Id*. "Defendants' ads did not give the consumer the ability to click through to a separate website or garner any further information regarding Defendants before the call is made." *Id*. The FAC alleged that the ads "keep confused consumers, who were specifically searching

LA10448.017241192

for Jim Adler and the Adler Firm, on the phone and talking to [McNeil's] employees as long as possible in a bait-and-switch effort to build rapport with the consumer and ultimately convince [the consumer] to engage lawyers referred through [McNeil] instead."

45.    The advertisements were designed to display generic terms that consumers might associate with any personal injury firm. *Id*. The Adler Firm contended that consumers specifically searching for Jim Adler or the Adler Firm were likely to believe that Defendants' advertisements were for the Adler Firm or that Defendants were affiliated with The Adler Firm.

46.    Defendant JAMES "JIM" ADLER and Defendant JIM S. ADLER, P.C., a professional corporation sued the McNeil Defendants for trademark infringement, false designation of origin and false advertising, unfair competition, dilution, unjust enrichment, misappropriation of name or likeness, misappropriation of business opportunity, and tortious interference. ¶3 on p. 44 of McNeil Findings. The McNeil Defendants filed for dismissal, claiming that the FAC failed to state claims for federal trademark infringement. *Id*. at ¶4.

47.    The District Court initially dismissed the McNeil Case in favor of the McNeil Defendants, after the District Court accepted the McNeil Findings [*see*, Order Accepting Findings…, a true and correct copy of which is attached hereto as part of Exhibit 3 (and beginning at page marked as Evidence Page 098, for purposes of reference). The District Court held, in material part, that (A) "…Defendants do not use Plaintiffs' marks or any portion of Plaintiffs' marks [and] [w]here an advertisement does not incorporate the plaintiff's trademark, there is no likelihood of confusion as a matter of law; and (B) that while Plaintiffs may argue that Defendant's ads are confusing because they "display generic terms that consumers might associate with any personal injury firm" [¶2 on p. 54 of McNeil Findings], "…Plaintiffs have no exclusive right to the use of those generic terms." *Id*.

48.    As reflected in the Adler Demand Letter to Plaintiff, the Adler Defendants argue that because each of six (6) Adler Marks includes the generic term "hammer", use of the generic term "hammer" by Hammer and Nails Law will likely lead to confusion between the Adler Firm (more formally known as Jim S. Adler, P.C., a professional corporation) and Hammer and Nails Law among those searching for legal representation – despite the differing practice areas (i.e. personal injury v.

LA10448.017241192

construction law) and different geographical limitations of each firm's authorized area of practice.

49.    However, the District Court provided the Adler Defendants with a detailed explanation on how "The Lanham Act includes safeguards to prevent the commercial monopolization of language…" [¶1 on p. 55 of McNeil Findings] and that generic terms like a "hammer" are "…regarded by the law as free for all to use." [¶1 on p. 55 of McNeil Findings]. The District Court further emphasized that "…dismissal of trademark infringement claims is appropriate when they are based on the use of generic terms." *Id*. The District Court provided a series of legal authority to support its position, including but not limited to *Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 308 (2d Cir. 1986) (dismissing a trademark infringement claim, stating "[a] trademark holder cannot appropriate generic or descriptive terms for its exclusive use, and a trademark infringement finding thus cannot be based on the use of a generic… term") [¶1 on p. 55 of McNeil Findings]; *Scooter Store, Inc. v. SpinLife.com, LLC*, No. 2:10-cv-18, 2011 WL 6415516, at *1 (S.D. Ohio Dec. 21, 2011), adhered to on denial of reconsideration, 2012 WL 4498904 (S.D. Ohio Sept. 28, 2012) (dismissing trademark infringement claim and finding **no likelihood of confusion analysis necessary** because generic terms "are not protectable and cannot infringe [plaintiff's trademark] based on creating consumer confusion [emphasis added]" [*Id*. at ¶1]; *Kegan v. Apple Computer, Inc*., No. 95 C 1339, 1996 WL 667808, at *1 (N.D. Ill. Nov. 15, 1996) (dismissing trademark infringement claim, holding that the defendant "cannot be said to have infringed on [plaintiff's] MACGUIDE trademark" where the generic term "–guide" is "not protectible and [defendant] should be able to use it freely") [*Id*. at ¶1].

50.    While the U.S. Court of Appeals for the 5th District (the "Appellate Court") reversed the District Court's dismissal, the reasoning underlying the reversal was unique to "search-engine advertising" facts of the McNeil Case and does not undermine the Plaintiff's request for declaratory relief in the above-captioned matter.

51.    In reversing the District Court's ruling, the Appellate Court first noted that "[t]o plead a claim for trademark infringement in violation of the Lanham Act, a plaintiff must allege that: "(1) [the plaintiff] possesses a legally protectable trademark and (2) [the defendant's] use of this trademark

LA10448.0172411192

'creates a likelihood of confusion **as to source, affiliation, or sponsorship** [*emphasis added*].'" ¶3 on p. 5 of Appellate Court's ruling reversing dismissal and remanding for further proceedings, a true and correct copy of which is attached hereto as Exhibit 6, and referred to herein as the "Appellate Ruling".

52.    The Appellate Court then defined the term "initial interest confusion" (as used by the Fifth Circuit) as confusion that "creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998). ¶2 on p.6 of the Appellate Ruling. The Appellate Court observed that while it has previously held that "…initial interest confusion is actionable under the Lanham Act. Id. at 193, 204.", it conceded that the Appellate Court had "…not yet had an opportunity to analyze initial interest confusion in the context of search-engine advertising…" [*Id*. at ¶3] and acknowledged that the "…the Ninth Circuit has continued to refine its understanding of confusion in the context of internet-search cases." ¶3 on p.7 of the Appellate Ruling.

53.    The Appellate Court further observed that "[t]he Ninth Circuit eventually concluded that 'it would be wrong to expand the initial interest confusion theory of infringement beyond the realm of the misleading and deceptive to the context of legitimate comparative and contextual advertising.' *Network Automation, Inc. v. Advanced Sys. Concepts, Inc*., 638 F.3d 1137, 1148 (9th Cir. 2011)." ¶2 on p.8 of the Appellate Ruling.

54.    The Appellate Court also observed that "[t]he author of a leading treatise also agrees with this approach. See J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25A:8 (5th ed. 2021 Update)." ¶2 on p.8 of the Appellate Ruling, noting that the author offered the following analogy:

> "[A]ssume that [a] person shopping for a car types in a search engine the word TOYOTA and finds on the search results web page a clearly labeled advertisement for VOLKSWAGEN. This occurred because, hypothetically, Volkswagen purchased from the search engine the keyword "Toyota." If that computer user then ultimately decides to buy a VOLKSWAGEN instead of a TOYOTA, that is not a purchase made by mistake or as a result of confusion. If that ad and link is clearly

LA10448.0172411192

labeled as an advertisement for VOLKSWAGEN, it is hard to see how the web user and potential car buyer is likely to be confused by the advertising link."

"Conversely, '[i]nitial interest confusion could occur only if the web user mistakenly thought she was going to a web site about TOYOTA cars when she clicked on the keyword link for VOLKSWAGEN. That would depend on how clearly labeled was the advertising link for VOLKSWAGEN.'"

55.    The Appellate Court further held that it "…agree[s] that the likelihood of confusion element requires a fact-specific and contextual inquiry, *see Xtreme Lashes, LLC*, 576 F.3d at 227, but that does not mean that it can never be decided at the motion to dismiss stage. Where the factual allegations regarding consumer confusion are implausible, for example, a district court may dismiss a complaint on the basis that a plaintiff failed to allege a likelihood of confusion. *See, e.g.*, *Eastland Music Grp., LLC v. Lionsgate Ent., Inc.*, 707 F.3d 869, 871 (7th Cir. 2013); *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860-61 (9th Cir. 1996)." ¶2 on p.9 of the Appellate Ruling.

56.    The Appellate Court maintained that the McNeil Case did not present factual allegations regarding consumer confusion that were entirely implausible and therefore further judicial review was warranted. *Id*. at ¶3. Specifically, The Appellate Court found "…that Adler made specific factual allegations describing how the use of the Adler marks as keyword terms — combined with generic, unlabeled advertisements and misleading call-center practices — caused initial interest confusion. This pleading included factual matter beyond the mere purchase of trademarks as keywords for search-engine advertising, and the district court should have considered those allegations." ¶1 on p.10 of the Appellate Ruling.

57.    Notably, the Appellate Court further maintained that the District Court "…concluded that Adler could not plead a likelihood of confusion as a matter of law because McNeil's advertisements were generic." Critically for purposes of deciding the merits of the above-captioned matter, the Appellate Court expressly acknowledged that "[i]t is true that the Lanham Act does not protect generic terms against infringement. *See Small Bus. Assistance Corp. v. Clear Channel Broad.*,

LA10448.017241192

*Inc.*, 210 F.3d 278, 279 (5th Cir. 2000)." However, in the McNeil Case, the Appellate Court found that "…Adler, though, has not alleged trademark infringement solely on the basis of the generic text of the advertisements. Instead, he has alleged trademark infringement based on McNeil's use of the Adler marks, the ownership and validity of which is not disputed. The generic nature of McNeil's advertisements is relevant because it enhances rather than dispels the likelihood of initial interest confusion."

58.     The Ninth Circuit has maintained that generic terms are those that refer to the genus of which the particular product or service is a species, i.e., the name of the product or service itself. In order to determine whether a term is "generic" in a trademark context, **courts look to whether consumers understand the word to refer only to a particular producer's goods/services** or whether the consumer understands the word to refer to the goods themselves. Generic terms cannot be valid marks subject to trademark protection.

59.     To date, Plaintiff has found no fewer than ten (10) law firms in the United States that *currently and actively* use the name "Hammer" in their branding, including five (5) attorneys branding themselves as variations of "The Hammer." These include (i) Darryl Isaacs, "The Kentucky Hammer," a personal injury attorney in Kentucky; (ii) The Illinois Hammer, a personal injury firm in Illinois; (iii) Lowell "The Hammer" Stanley, a personal injury attorney in Virginia; (iv) The Wisconsin Hammer, a personal injury firm in Wisconsin; and (v) Karen K. Koehler, a personal injury attorney in the State of Washington, known as "The Velvet Hammer" ["The Velvet Hammer" 2011 trademark expressly referenced in 'Exhibit 10' to the stipulation entered into by Jim S. Adler, P.C. in the Concurrent Use Proceeding before the USPTO, as more specifically referenced herein in ¶62 below]. Other notable uses of "Hammer" in law firm names include (i) The Hammer Law Firm, a criminal defense practice in St. Louis, Missouri; (ii) Hammers, a personal injury firm in Georgia; (iii) Hammer Law, PLLC, a lemon law firm in Arizona; (iv) Hammer Law, PLLC, a corporate employment attorney in Raleigh, North Carolina; (v) Hammer Law Firm, a general practice law firm in Dubuque, Iowa; and (vi) Hammer Law, a medical malpractice and personal injury firm operating in Virginia and North Carolina.

LA10448.017241 1192

60. The domain name 'www.thehammer.com' directs users to 'theinjurylawyer.com' which features Lowell "The Hammer" Stanley – a Virginia-based personal injury lawyer, as follows:



Lowell "The Hammer" Stanley - Virginia Personal Injury Lawyer

61. Based on the above-referenced concurrent and active uses of the term "hammer" by law firms across the country, it is implausible that consumers understand the word "hammer" to refer only to the legal services of the Adler Defendants. *See, e.g.*, *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860-61 (9th Cir. 1996); *Eastland Music Grp., LLC v. Lionsgate Ent., Inc.*, 707 F.3d 869, 871 (7th Cir. 2013), where the factual allegations regarding consumer confusion are implausible, a district court may dismiss a complaint on the basis that a plaintiff failed to allege a likelihood of confusion.

62. In addition to the above-referenced concurrent and active uses of the term "hammer" by law firms across the country, the Adler Defendants themselves *acknowledge* certain ongoing uses of the term "hammer" by other law firms across the country – and admit that such concurrent use of the mark 'THE HAMMER' in their respective geographic markets have continued "…**without any instances of confusion**." *See*, Stipulation entered into by Jim S. Adler, P.C. in Concurrent Use Proceeding before the United States Patent and Trademark Office In The Trademark Trial and Appeal

LA10448.017241192

Board, a true and correct copy of which is attached hereto as <u>Exhibit 7</u>, concerning Isaacs & Isaacs' trademark for THE KENTUCKY HAMMER for legal services, issued on December 5, 2006. "Over time, Isaacs & Isaacs became known as THE HAMMER, a natural short form of its mark, in its region of use, and has used the mark THE HAMMER in Kentucky, Indiana, and Ohio..." "In August 2007, approximately two years after Isaacs & Isaacs' filed its trademark application for THE KENTUCKY HAMMER, Adler filed trademark applications for the marks THE TEXAS HAMMER, HAMMER TIME, HAMMER TV, and THE HAMMER." *See*, <u>Exhibit </u>7 at page 2.

63.     There is no likelihood of confusion as to source, affiliation, or sponsorship of the H&N Marks, as the H&N Firm clearly designates its construction law offices as the service provider. California construction specialists seeking legal advice in construction law will not even see the Adler Marks, which are isolated to the Texas-based personal injury market. The H&N Marks are used in California – a state where none of the Adler Defendants are authorized to practice. The H&N Marks are used by a construction-based boutique firm – not a mass-market personal injury firm with which the Adler Defendants are associated. The H&N Marks are unique, stylized marks that are comprised of a combination of words that make up parts of the law firm's name, Hammer and Nails Law, A Professional Corporation, including a specialized logo and icon that has acquired meaning within the State of California. In contrast, the Adler Marks are comprised of standard character marks without any claim to any particular font style, size or color which use the generic word "hammer" *as part of the firm's slogan* – not unlike dozens of other current and past law firms across the country have used without any consumer confusion.

64.     Upon information and belief, the Adler Demand Letter was written by attorney Jered Matthysse on behalf of the Pirkey Barber law firm – the same attorney and firm that represented the Adler Defendants in the McNeil Case before the above-referenced District Court [*see*, p. 18 of the FAC] as well as the above-referenced Appellate Court, who are reasonably presumed to know of the above-referenced legal authorities regarding the marks at issue in the above-captioned case.

LA10448.017241192

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests a declaratory judgment whereby the Court declares the respective rights and duties of Plaintiff and the Adler Defendants to their respective marks under California state law and/or common law; that the Court find in favor of Plaintiff that the H&N Marks do not infringe on any of the Adler Marks under California state law and/or common law, as referenced above; that there is no California state law and/or common law trademark infringement and/or counterfeiting; that there is no California state law and/or common law unfair competition & false designation of origin; that there is no California state law and/or common law dilution of any above-referenced trademark; there is no California state law and/or common law trademark infringement by imitating and false advertising and/or other related California state law and/or common law claims, whether in law and/or in equity, which the Adler Defendants may assert based on Plaintiff's registration and/or use of the H&N Marks (including but not limited to unjust enrichment, misappropriation of name or likeness, misappropriation of business opportunity, tortious interference with business opportunity); that the existence of the Adler Marks along with the Plaintiff's registration and/or use of the H&N Marks do not give rise to a breach of contract and/or warranty claim by Griffith Landing against Plaintiff under governing California state law; and enter such other further relief to which Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper (including monies over the $35,000 jurisdictional amount for unlimited jurisdiction).

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

DATED:  December 10, 2024

Respectfully submitted,

LAW OFFICES OF COLE SHERIDAN

By:  /s/Cole Sheridan
_____
COLE R. SHERIDAN
Attorney for Plaintiff

COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT

LA10448.017241192

# CERTIFICATE OF REGISTRATION

## The State Bar of California

certifies that having complied with the requirements of the statutes of the State of California and applicable rules and regulations pertaining to professional corporations,

### Hammer and Nails Law, A Professional Corporation

is registered as a

## Law Corporation

*Leah T. Wilson*

Leah T. Wilson,
Executive Director

Certificate Number:    29240
Date:    July 17, 2024



Mailing Address:
1801 East 6th Street, Suite 300
Austin, TX 78702

Jered Matthysse, Member
jmatthysse@pirkeybarber.com

December 2, 2024

**Via Email: kpuckett@csheridanlaw.com; kstanfill@csheridanlaw.com**

Cole Sheridan
Restoration Earth LLC
1990 South Bundy Drive, Suite 630
Los Angeles, California 90025

Re:     *Violation of Jim S. Adler P.C.'s Trademark Rights*
        (Our Ref. HAMR040)

Dear Mr. Sheridan:

This law firm represents Jim Adler, Bill Adler, and Jim S. Adler, P.C. (together, "Adler") in trademark and unfair competition matters. We write regarding your applications to register the mark Hammer & Nails and the Hammer & Nails design marks shown below (the "Hammer & Nails Marks"), *see* U.S. Ser. Nos. 98/515,823, 98/423,304, and 98/423,825 (the "Applications"), in connection with "legal services."

 

Adler is among the most prominent personal injury attorneys in the United States. Widely recognized by consumers as The Hammer and The Texas Hammer, Adler is known for aggressively representing personal injury victims and their families. Adler's advertisements invariably reference its reputation as The Hammer and The Texas Hammer, and often include other hammer-related references or imagery. Numerous publications have noted Adler's renown. For example, Adler's commercials have been featured on multiple occasions on *Last Week with John Oliver*, an Emmy-award winning HBO show broadcast globally.

Adler's continuous use of the marks The Hammer and The Texas Hammer spans decades. Adler licenses its rights in the mark The Hammer to other attorneys, including The Illinois Hammer and The Wisconsin Hammer. Adler also owns and uses the marks The Hammer Law Firm, The Hammer Lawyer, Hammer Time, and Hammer TV (together with the marks The Hammer and

The Texas Hammer, the "Hammer Marks"). As a result of Adler's extensive use and promotion of the Hammer Marks, as well as that of his licensees, Adler owns strong and enforceable rights in the Hammer Marks. Additionally, Adler owns incontestable federal trademark registrations for the Hammer Marks. *See* U.S. Reg. Nos. 3,503,851; 3,730,395; 6,292,032; 6,383,275; 3,651,822; and 3,644,185.

The goodwill Adler has developed in the Hammer Marks through investment of substantial effort and resources is very important to Adler. Adler cannot permit the unauthorized and unlicensed use by others of the Hammer Marks in a way that is likely to cause confusion with those marks.

Your use and registration of the Hammer & Nails Marks is problematic as the marks appropriate the dominant portion of our client's Hammer Marks, including the nearly identical marks The Hammer Law Firm and The Hammer Lawyer, and cover services identical to those used and registered by Adler in connection with its Hammer Marks (legal services). Your use and registration of the Hammer & Nails Marks is therefore likely to cause confusion in that consumers will mistakenly believe that you or your legal services are affiliated with or licensed by Adler. As such, your use and registration would violate Adler's rights under federal law. *See, e.g.*, 15 U.S.C. §§ 1114(1), 1125(a).

**Accordingly, Adler demands that you: (1) withdraw your Applications; and (2) cease and permanently refrain from using or seeking to register the Hammer & Nails Marks, or any confusingly similar mark.**

We trust you will understand Adler's concerns and ask that you respond to this letter within ten days of receipt. If you would like to discuss this matter further, please feel free to contact me at the phone number or email address listed above.

Very truly yours,

Jered Matthysse

2

No. 20-10936

# In the United States Court of Appeals
## for the Fifth Circuit

---

Jim S. Adler, P.C.; Jim Adler,

*Plaintiffs – Appellants*

v.

McNeil Consultants, L.L.C., doing business as Accident Injury Legal Center;
Lauren Von McNeil; Quintessa Marketing, L.L.C., doing business as
Accident Injury Legal Center,

*Defendants – Appellees*

---

On Appeal from the United States District Court
for the Northern District of Texas, Dallas Division
Civil Action No. 3:19-CV-2025-K-BN

---

### APPELLANTS' RECORD EXCERPTS

---

Jered E. Matthysse
   Texas Bar No. 24007226
   jmatthysse@pirkeybarber.com
Giulio Yaquinto
   Texas Bar No. 24107292
   gyaquinto@pirkeybarber.com
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, Texas 788702
(512) 322-5200
(512) 322-5201 (fax)

Kurt Kuhn
   Texas Bar No. 24002433
   Kurt@KuhnHobbs.com
KUHN HOBBS PLLC
3307 Northland Drive, Suite 310
Austin, Texas 78731
(512) 476-6005
(512) 476-6002 (fax)

COUNSEL FOR APPELLANTS

# TABLE OF CONTENTS

| Tab No. | Document Title | ROA Citation |
|---|---|---|
| Tab 1 | Docket Sheet | ROA.1-6 |
| Tab 2 | First Amended Complaint | ROA.84-108 |
| Tab 3 | Findings, Conclusions, and Recommendation of the United States Magistrate Judge | ROA.189-208 |
| Tab 4 | Findings, Conclusions, and Recommendation of the United States Magistrate Judge | ROA.238-71 |
| Tab 5 | Order Accepting Findings and Recommendation of the United States Magistrate Judge and Denying Motion for Leave to File Amended Complaint | ROA.307-08 |
| Tab 6 | Judgment | ROA.309 |
| Tab 7 | Notice of Appeal | ROA.310-12 |

Evidence Page 005

Dated:  November 9, 2020                 Respectfully submitted,


                                          /s/ Kurt Kuhn
Jered E. Matthysse                          Kurt Kuhn
   Texas Bar No. 24007226                      Texas Bar No. 24002433
   jmatthysse@pirkeybarber.com                 Kurt@KuhnHobbs.com
Giulio Yaquinto                           KUHN HOBBS PLLC
   Texas Bar No. 24107292                 3307 Northland Drive, Suite 310
   gyaquinto@pirkeybarber.com             Austin, Texas  78731
PIRKEY BARBER PLLC                        (512) 476-6005
1801 East 6th Street, Suite 300           (512) 476-6002 (fax)
Austin, Texas 788702
(512) 322-5200
(512) 322-5201 (fax)


                        *Counsel for Plaintiffs-Appellants*


                                    3

Evidence Page 006

**CERTIFICATE OF SERVICE**

I, Kurt Kuhn, do hereby certify that the above and foregoing Record Excerpts has been served via the ECF System on this the 9th day of November, 2020, to:

Christopher J. Schwegmann
David S. Coale
Rebecca L. Adams
Lynn Pinker Hurst
  & Schwegmann, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201

*Attorneys of Record for Defendants-Appellees*

/s/ Kurt Kuhn
Kurt Kuhn

*Counsel for Plaintiffs-Appellants*

Evidence Page 007

# **Tab 1**

APPEAL,CASREF,CLOSED,HORAN,JURY

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:19-cv-02025-K-BN

Adler PC et al v. McNeil Consultants LLC et al
Assigned to: Judge Ed Kinkeade
Referred to: Magistrate Judge David L. Horan
Case in other court:  USCA5, 20-10936
Cause: 15:1051 Trademark Infringement

Date Filed: 08/23/2019
Date Terminated: 08/29/2020
Jury Demand: Plaintiff
Nature of Suit: 840 Property Rights:
Trademark
Jurisdiction: Federal Question

**Plaintiff**

**Jim S Adler PC**                    represented by    **Jered E Matthysse**
                                                         Pirkey Barber PLLC
                                                         1801 East 6th Street
                                                         Suite 300
                                                         Austin, TX 78702
                                                         512/322-5200
                                                         Fax: 512/322-5201
                                                         Email: jmatthysse@pirkeybarber.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Status: Admitted/In Good Standing*

                                                         **Garrett William Mize**
                                                         Jim Adler & Associates
                                                         2711 N Haskell Avenue, Ste 2500 LB40
                                                         Dallas, TX 75204
                                                         214-220-3224
                                                         Fax: 214-220-3245
                                                         Email: gwmize@gmail.com
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Status: Admitted/In Good Standing*

                                                         **Kurt H Kuhn**
                                                         Kuhn Hobbs PLLC
                                                         3307 Northland Drive
                                                         Suite 310
                                                         Austin, TX 78731
                                                         512/476-6005
                                                         Fax: 512/476-6002
                                                         Email: kurt@kuhnhobbs.com
                                                         *ATTORNEY TO BE NOTICED*
                                                         *Bar Status: Admitted/In Good Standing*

**Plaintiff**

**Jim Adler**                        represented by    **Jered E Matthysse**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

*Bar Status: Admitted/In Good Standing*

**Garrett William Mize**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Kurt H Kuhn**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**McNeil Consultants LLC**
*doing business as*
Accident Injury Legal Center

represented by **Christopher J Schwegmann**
Lynn Pinker Hurst & Schwegmann LLP
2100 Ross Avenue, Suite 2700
Dallas, TX 75201
214-981-3800
Fax: 214-981-3839
Email: cschwegmann@lynnllp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Rebecca Lynn Adams**
Lynn Pinker Cox & Hurst LLP
2100 Ross Ave
Suite 2700
Dallas, TX 75201
214-981-3800
Fax: 214-981-3839
Email: radams@lynnllp.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

**Lauren Von McNeil**

represented by **Christopher J Schwegmann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Rebecca Lynn Adams**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Defendant**

represented by

**Quintessa Marketing LLC**
*doing business as*
Accident Injury Legal Center

**Christopher J Schwegmann**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Bar Status: Admitted/In Good Standing

**Rebecca Lynn Adams**
(See above for address)
*ATTORNEY TO BE NOTICED*
Bar Status: Admitted/In Good Standing

| Date Filed | # | Docket Text |
|---|---|---|
| 08/23/2019 | 1 (p.7) | COMPLAINT WITH JURY DEMAND against All Defendants filed by Jim S. Adler, P.C., Jim Adler. (Filing fee $400; Receipt number 0539-10215580) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the  Judges Copy Requirements  is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.7) Exhibit(s) A, # 2 (p.33) Civil Cover Sheet) (Matthysse, Jered) (Entered: 08/23/2019) |
| 08/23/2019 | 2 (p.33) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Jim Adler, Jim S. Adler, P.C.. (Matthysse, Jered) (Entered: 08/23/2019) |
| 08/23/2019 | 3 (p.35) | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Horan). Clerk to provide copy to plaintiff if not received electronically. (aaa) (Entered: 08/26/2019) |
| 08/23/2019 | 4 (p.37) | Summons Issued as to McNeil Consultants LLC, Lauren Von McNeil. (aaa) (Entered: 08/26/2019) |
| 08/27/2019 | 5 (p.41) | Report to Patent/Trademark Office of Initiating Document. Form AO 120 e-mailed to notice_of_suit@uspto.gov. (zkc) (Entered: 08/27/2019) |
| 08/30/2019 | 6 (p.42) | NOTICE of *Plaintiffs' Designation of Local Counsel and Notice of Appearance* filed by Jim Adler, Jim S Adler PC (Matthysse, Jered) (Entered: 08/30/2019) |
| 09/06/2019 | 7 (p.45) | NOTICE of Attorney Appearance by Christopher J Schwegmann on behalf of McNeil Consultants LLC, Lauren Von McNeil. (Filer confirms contact info in ECF is current.) (Schwegmann, Christopher) (Entered: 09/06/2019) |
| 09/06/2019 | 8 (p.47) | SUMMONS Returned Executed as to McNeil Consultants LLC; served on 8/29/2019. (Matthysse, Jered) (Entered: 09/06/2019) |
| 09/06/2019 | 9 (p.50) | SUMMONS Returned Executed as to Lauren Von McNeil; served on 9/3/2019. (Matthysse, Jered) (Entered: 09/06/2019) |
| 09/09/2019 | 10 | Court Request for Recusal: Chief Judge Barbara M. G. Lynn recused. Pursuant to instruction in Special Order 3-249, the Clerk has reassigned the case to Judge Ed |

| | | Kinkeade for all further proceedings. Future filings should indicate the case number as: 3:19-cv-2025-K. (ctf) (Entered: 09/09/2019) |
|---|---|---|
| 09/20/2019 | 11 (p.53) | Agreed Motion for Extension of Time to File Answer *or Otherwise Respond to Plaintiffs' Complaint (Re: Defendant McNeil Consultants, LLC)* filed by Jim Adler, Jim S Adler PC (Attachments: # 1 (p.7) Proposed Order) (Matthysse, Jered) (Entered: 09/20/2019) |
| 09/20/2019 | 12 | ELECTRONIC ORDER granting 11 (p.53) Motion for Extension of Time to File Answer McNeil Consultants LLC answer or response due 10/18/2019. (Ordered by Judge Ed Kinkeade on 9/20/2019) (chmb) (Entered: 09/20/2019) |
| 09/20/2019 | 13 (p.60) | Agreed Motion for Extension of Time to File Answer *or Otherwise Respond to Plaintiffs' Complaint (Re: Defendant Lauren Von McNeil)* filed by Jim Adler, Jim S Adler PC (Attachments: # 1 (p.7) Proposed Order) (Matthysse, Jered) (Entered: 09/20/2019) |
| 09/20/2019 | 14 | ELECTRONIC ORDER granting 13 (p.60) Motion for Extension of Time to File Answer McNeil Consultants LLC answer or response due 10/19/2019; Lauren Von McNeil answer or response due 10/19/2019. (Ordered by Judge Ed Kinkeade on 9/20/2019) (chmb) (Entered: 09/20/2019) |
| 09/23/2019 | 15 | AMENDED ELECTRONIC ORDER: Answer or response due from Lauren Von McNeil on 10/24/2019. (Ordered by Judge Ed Kinkeade on 9/23/2019) (chmb) (Entered: 09/23/2019) |
| 10/18/2019 | 16 (p.67) | Agreed Motion for Extension of Time to File Answer *or Otherwise Respond to Plaintiffs' Complaint (Re: Defendant McNeil Consultants, LLC)* filed by Jim Adler, Jim S Adler PC (Attachments: # 1 (p.7) Proposed Order) (Matthysse, Jered) (Entered: 10/18/2019) |
| 10/18/2019 | 17 (p.74) | Agreed Motion for Extension of Time to File Answer *or Otherwise Respond to Plaintiffs' Complaint (Re: Defendant Lauren Von McNeil)* filed by Jim Adler, Jim S Adler PC (Attachments: # 1 (p.7) Proposed Order) (Matthysse, Jered) (Entered: 10/18/2019) |
| 10/18/2019 | 18 | ELECTRONIC ORDER granting 16 (p.67) Motion for Extension of Time to File Answer or Otherwise Respond. McNeil Consultants LLC answer or response due 11/18/2019. (Ordered by Judge Ed Kinkeade on 10/18/2019) (chmb) (Entered: 10/18/2019) |
| 10/18/2019 | 19 | ELECTRONIC ORDER granting 17 (p.74) Motion for Extension of Time to File Answer or Otherwise Respond. Lauren Von McNeil answer or response due 11/23/2019. (Ordered by Judge Ed Kinkeade on 10/18/2019) (chmb) (Entered: 10/18/2019) |
| 11/15/2019 | 20 (p.81) | NOTICE of *Consent to File Amended Complaint* filed by Jim Adler, Jim S Adler PC (Matthysse, Jered) (Entered: 11/15/2019) |
| 11/15/2019 | 21 (p.84) | AMENDED COMPLAINT WITH JURY DEMAND against All Defendants filed by Jim S Adler PC, Jim Adler. Summons(es) not requested at this time. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.7) Exhibit(s) A, # 2 (p.33) Cover |

| | | |
|---|---|---|
| | | Sheet - Civil) (Matthysse, Jered) (Entered: 11/15/2019) |
| 11/22/2019 | 22 (p.111) | WAIVER OF SERVICE Returned Executed as to Quintessa Marketing, LLC. Waiver sent on 11/20/2019. (Matthysse, Jered) (Entered: 11/22/2019) |
| 11/29/2019 | 23 (p.112) | Unopposed Motion for Extension of Time to File Answer *or Otherwise Respond to Amended Complaint* filed by McNeil Consultants LLC, Quintessa Marketing LLC, Lauren Von McNeil. Party Quintessa Marketing LLC added.Attorney Christopher J Schwegmann added to party Quintessa Marketing LLC(pty:dft) (Schwegmann, Christopher) (Entered: 11/29/2019) |
| 12/02/2019 | 24 | ELECTRONIC ORDER granting 23 (p.112) Motion for Extension of Time to File Answer re 23 (p.112) Unopposed Motion for Extension of Time to File Answer *or Otherwise Respond to Amended Complaint*. McNeil Consultants LLC answer or response due 1/21/2020; Quintessa Marketing LLC answer or response due 1/21/2020; Lauren Von McNeil answer or response due 1/21/2020. There shall be no further extensions of this deadline absent exigent circumstances. (Ordered by Judge Ed Kinkeade on 12/2/2019) (chmb) (Entered: 12/02/2019) |
| 01/21/2020 | 25 (p.115) | MOTION to Dismiss filed by McNeil Consultants LLC, Quintessa Marketing LLC, Lauren Von McNeil Attorney Rebecca Lynn Adams added to party McNeil Consultants LLC(pty:dft), Attorney Rebecca Lynn Adams added to party Quintessa Marketing LLC(pty:dft), Attorney Rebecca Lynn Adams added to party Lauren Von McNeil(pty:dft) (Adams, Rebecca) (Entered: 01/21/2020) |
| 01/22/2020 | 26 | ELECTRONIC ORDER: Before the Court are Plaintiffs' Notice of Consent to File an Amended Complaint (Doc. No. 20) and Amended Complaint (Doc. No. 21). The Court notes that local counsel is listed in the signature block but does not sign the documents. From here forward local counsel is directed to sign all documents filed by plaintiffs in this case, or they will be subject being stricken from the record in this case. (Ordered by Judge Ed Kinkeade on 1/22/2020) (chmb) (Entered: 01/22/2020) |
| 02/11/2020 | 27 (p.144) | RESPONSE filed by Jim Adler, Jim S Adler PC re: 25 (p.115) MOTION to Dismiss (Mize, Garrett) (Entered: 02/11/2020) |
| 02/11/2020 | 28 | (Document Restricted) Attorney Contact Information (Sealed pursuant to SO 19-1, statute, or rule) filed by Jim Adler, Jim S Adler PC (Mize, Garrett) (Entered: 02/11/2020) |
| 02/11/2020 | 29 | (Document Restricted) Defendants' Attorney Contact Information (Sealed pursuant to SO 19-1, statute, or rule) filed by McNeil Consultants LLC, Quintessa Marketing LLC, Lauren Von McNeil (Schwegmann, Christopher) (Entered: 02/11/2020) |
| 02/25/2020 | 30 (p.180) | REPLY filed by McNeil Consultants LLC, Quintessa Marketing LLC, Lauren Von McNeil re: 25 (p.115) MOTION to Dismiss (Adams, Rebecca) (Entered: 02/25/2020) |
| 05/15/2020 | 31 | ELECTRONIC ORDER REFERRING CASE to Magistrate Judge David L. Horan for Pretrial Management. (Ordered by Judge Ed Kinkeade on 5/15/2020) (chmb) (Entered: 05/15/2020) |
| 08/10/2020 | 32 (p.189) | FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE: Because Plaintiffs Jim S. Adler, P.C. and Jim Adler, through an amended complaint, have failed to state a federal claim on which relief may be granted, the Court should dismiss the federal claims in the amended complaint with prejudice and decline to exercise supplemental jurisdiction over the remaining state law claims. (Ordered by Magistrate Judge David L. Horan on |

| | | |
|---|---|---|
| | | 8/10/2020) (ctf) (Entered: 08/10/2020) |
| 08/24/2020 | 33 (p.209) | OBJECTION to 32 (p.189) Findings and Recommendations . (Attachments: # 1 (p.7) Appendix A) (Matthysse, Jered) (Entered: 08/24/2020) |
| 08/24/2020 | 34 (p.272) | MOTION for Leave to File Amended Complaint filed by Jim Adler, Jim S Adler PC with Brief/Memorandum in Support. (Attachments: # 1 (p.7) Exhibit(s) 1 - Second Amended Complaint, # 2 (p.33) Exhibit(s) A to Second Amended Complaint, # 3 (p.35) Proposed Order) (Matthysse, Jered) (Entered: 08/24/2020) |
| 08/29/2020 | 35 (p.307) | ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND DENYING MOTION FOR LEAVE TO FILE AMENDED COMPLAINT - Judge Horan recommended dismissal with prejudice, apparently because the complaint had been amended once but also because amendment could not cure the defect as a matter of law. But Judge Horan did not specifically address why Plaintiffs The Court has reviewed the motion to amend along with Plaintiffs' objections, and, based on the reasoning that Judge Horan included in his FCR and that this Court agrees with and accepts, Plaintiffs' federal claim, even as laid out in the proposed Second Amended Complaint, fails as a matter of law because Plaintiffs' claim is based solely on the purchase of Plaintiffs' trademarks as keywords for search engine advertising and Defendants do not include Plaintiffs' trademarks in their advertisements. Plaintiffs do not address either of those issues in their proposed Second Amended Complaint Accordingly, the Court finds that the Findings and Recommendation of the Magistrate Judge are correct and they are accepted as the Findings, Conclusions, and Recommendation of the Court. The Court grants the Motion to Dismiss, denies as futile the Plaintiff's Opposed Motion for Leave to File Amended Complaint (as to which the Court therefore need not wait for a response), and declines to exercise supplemental jurisdiction over the state law claims. (Ordered by Judge Ed Kinkeade on 8/29/2020) (chmb) (Entered: 08/29/2020) |
| 08/29/2020 | 36 (p.309) | JUDGMENT - It is ORDERED, ADJUDGED, and DECREED that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint or Motion for More Definite Statement [Dkt. No. 25] is GRANTED and this action is dismissed with prejudice. (Ordered by Judge Ed Kinkeade on 8/29/2020) (chmb) (Entered: 08/29/2020) |
| 09/10/2020 | 37 (p.310) | NOTICE OF APPEAL as to 35 (p.307) Order Accepting/Adopting Findings and Recommendations,,,,,, 36 (p.309) Judgment, to the Fifth Circuit by Jim Adler, Jim S Adler PC. Filing fee $505, receipt number 0539-11159490. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Matthysse, Jered) (Entered: 09/10/2020) |
| 09/21/2020 | | USCA Case Number 20-10936 in USCA5 for 37 (p.310) Notice of Appeal filed by Jim S Adler PC, Jim Adler. (svc) (Entered: 09/21/2020) |
| 09/22/2020 | 38 (p.313) | Transcript Order Form: transcript not requested Reminder to appellant: this document must also be filed with the appeals court. (Matthysse, Jered) (Main Document 38 replaced on 9/23/2020) (svc). (Entered: 09/22/2020) |

# Tab 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-02025-K |
| | § | |
| MCNEIL CONSULTANTS, LLC D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | **JURY DEMANDED** |
| QUINTESSA MARKETING, LLC D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| and LAUREN VON MCNEIL, | § | |
| | § | |
| Defendants. | § | |

## FIRST AMENDED COMPLAINT

Plaintiffs Jim S. Adler, P.C. (the "Adler Firm") and Jim Adler, appearing through their undersigned counsel, alleges as follows:

### NATURE OF ACTION AND JURISDICTION

1.      This is an action for trademark infringement and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. §1051 *et seq.* ("Lanham Act"); for trademark dilution under the Texas Business and Commerce Code; and for trademark infringement, unfair competition, misappropriation of name or likeness, misappropriation of a business opportunity, tortious interference, and unjust enrichment under Texas common law.

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. §1121, as well as 28 U.S.C. §§1331 and 1338, and has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367(a).

3.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §§1391(b) and (c) because a substantial part of the events giving rise to the claim occurred in the district and

Defendants have conducted business in the Northern District of Texas and is subject to the Court's personal jurisdiction with respect to this action.

## PARTIES

4.     Plaintiff Jim S. Adler, P.C. is a Texas corporation with a principal place of business at 3D/International Tower, 1900 West Loop South, 20th Floor, Houston, Texas 77027.

5.     Plaintiff Jim Adler is a Texas resident domiciled in Houston.

6.     Upon information and belief, Defendant McNeil Consultants, LLC is an Oklahoma limited liability company with a principal place of business at 7910 Mid America Boulevard, Suite 230, Oklahoma City, Oklahoma 73135.

7.     Upon information and belief, Defendant Quintessa Marketing, LLC is an Oklahoma limited liability company with a principal place of business at 7919 Mid America Boulevard, #230, Oklahoma City, Oklahoma 73135.

8.     Upon information and belief, Defendant Lauren Von McNeil is an individual residing at 13417 Old Iron Road, Edmond, Oklahoma 73013.

## STATEMENT OF THE CASE

9.     This lawsuit arises out of Defendants' intentional use of Plaintiffs' registered trademarks to knowingly deceive and confuse consumers who are searching specifically for Plaintiffs using a mobile device.  Defendants' fraudulent scheme involves buying keyword ads using Plaintiffs' registered marks for Google searches made from mobile devices, and using them in conjunction with confusingly similar or generic "click-to-call" ads.  "Click-to-call" ads are a relatively new tool for search engine advertising.  The "click-to-call" ads target mobile devices and users, and instead of linking to a website, once tapped by a consumer, the ad causes the device to call a predetermined phone number.

10.    To further their objectives in this illegal scheme, Defendants have bid increasingly higher amounts to strategically place their own confusing ads next to—and often before— Plaintiffs' own ads in the search results.  Defendants have done so intentionally, knowing that having their ad appear next to or before Plaintiffs' ad will cause a significant number of consumers specifically searching for Plaintiffs to be confused and contact Defendants instead.

11.    As with all advertising and new technology, there are both legitimate and illegitimate ways in which it can be used.  Defendants' scheme and this lawsuit involve the latter. This is not a case about legitimate comparative advertising.  Rather, Defendants are knowingly and intentionally using Plaintiffs' famous trademarks to deceive and confuse consumers.

## FACTS

### A.    Jim Adler, The Texas Hammer

12.    The Adler Firm is a preeminent Texas personal injury law firm, representing injured parties in all types of personal injury cases, with a particular focus on auto accidents and commercial vehicle / eighteen-wheeler accidents.  Jim Adler and the Adler Firm view their practice as "safety law," and focus on trying to help Texas injury victims and their families recover to the greatest extent possible, while at the same time using the legal system to make society a safer place to live.

13.    The Adler Firm was formed and is led by Jim Adler, who has become widely known in Texas over the course of his fifty-two year (and counting) legal career.  In 1967, Jim Adler graduated from the University of Texas School of Law and was admitted to practice law by the State Bar of Texas.  After brief stints serving in a legal capacity in both the military and law enforcement, in 1973, Jim Adler went into private practice, hanging his own shingle and starting the Adler Firm.

14.    Since beginning as a solo practitioner, Jim Adler has grown the Adler Firm into one of the largest, most widely recognized, and most successful personal injury law firms in Texas. The Adler Firm currently has four offices in Houston, Dallas, San Antonio, and Channelview. The Adler Firm employs approximately 300 people, including 27 lawyers.

15.    The success of Jim Adler and the Adler Firm are the result of decades of hard work, building a strong reputation for aggressively representing Texas injury victims and their families. Over the years, Jim Adler and the Adler Firm have built a strong referral base comprised of several generations of satisfied clients and a strong reputation in the community for aggressively representing Texas injury victims and their families.

16.    This reputation is the result not only of the hard work of Jim Adler and the Adler Firm, but also of the significant effort and expense that Jim Adler and the Adler Firm have incurred in promoting themselves throughout Texas.

17.    In 1977, the United States Supreme Court upheld the right of lawyers to advertise their legal services, holding it was commercial free speech protected under the First Amendment. Shortly after that decision, Jim Adler and the Adler Firm became one of the first lawyers and firms in Texas to advertise on television.  Jim Adler and the Adler Firm's advertising efforts stem from a desire to provide knowledge to and serve members of the community that are unfamiliar with the legal system or otherwise unaware of their legal rights.  That commitment remains one of the driving forces behind Jim Adler and the Adler Firm's practice.

18.    For decades, as the Dallas Business Journal wrote in 2015, "Jim Adler, 'The Texas Hammer,' has used an aggressive, memorable advertising campaign to make his law firm a household name in several areas of the state."  The Dallas Business Journal also noted that, "[a]s far as personal injury lawyers go, Jim Adler might be the most well known in Texas."

-4-

B.    **The ADLER Marks**

19.    Since at least the 1990s, Jim Adler and the Adler Firm have consistently and continuously used several trademarks, including JIM ADLER, THE HAMMER, TEXAS HAMMER, and EL MARTILLO TEJANO, (collectively, the "ADLER Marks") to identify and promote Jim Adler and the Adler Firm, and the legal services they provide.

20.    The ADLER Marks are inherently distinctive and serve to identify and indicate the source of Plaintiffs' services to the consuming public.

21.    The ADLER Marks are famous in the State of Texas under TEX. BUS. & COM. CODE §16.103.  The ADLER Marks became famous in the State of Texas before Defendants' use described herein.

22.    In accordance with the provisions of federal law, Plaintiff Jim S. Adler, P.C. registered the ADLER Marks on the Principal Register of the United States Patent and Trademark Office.  *See* U.S. Reg. Nos. 3,507,257; 3,503,851; 3,503,852; and 3,730,395.  These registrations are valid and subsisting, and each is incontestable under 15 U.S.C. §1065.  True and correct copies of these registrations are attached hereto as **Exhibit A**.

C.    **Jim Adler and the Adler Firm's Well-Known Brand**

23.    In order to build a strong brand for aggressively representing Texas injury victims and their families, Jim Adler and the Adler Firm advertise on television, radio, billboards, and on the internet.  The ADLER Marks are consistently used in Plaintiffs' advertisements across all media formats.  The ads themselves are strategically designed to position Jim Adler and the Adler Firm as leading attorneys capable of handling all types of personal injury claims, with an emphasis on auto and truck accidents.  The bulk of Plaintiffs' advertising is in the three largest markets in Texas—Houston, San Antonio, and Dallas-Fort Worth.

24.     Since 2000, the Adler Firm has spent over $100 million on television, internet, radio, and billboard advertisements targeting the Houston, San Antonio, and Dallas-Fort Worth markets.

25.     For each of these three major Texas markets, Plaintiffs run numerous television advertisements in both English and Spanish on multiple television stations throughout the year.  In Houston, Jim Adler and the Adler Firm run approximately 45,000 television commercials per year.  In San Antonio, they run about 87,000 television commercials per year.  And in Dallas-Fort Worth, Jim Adler and the Adler Firm run approximately 85,000 television commercials per year.

26.     The use of television advertisements in these major Texas markets has allowed Jim Adler and the Adler Firm to reach millions of Texans and build an incredibly strong brand.  The Houston market is the eighth largest television market in the nation, reaching more than 6 million viewers.  The San Antonio market is the thirty-first largest television market in the nation, reaching more than 2.3 million viewers.  The Dallas-Fort Worth market is the fifth largest television market in the nation, reaching more than 6.8 million viewers.  Combined, Plaintiffs' television advertising allows them to reach over 15 million people—more than half of all Texans.

27.     A review of the television advertisements Jim Adler and the Adler Firm ran in these major Texas markets showed that the commercials obtained significant exposure for the Adler Firm.  In 2019, over a four-week period, not including commercials run on cable, television advertisements for Jim Adler and the Adler Firm repeatedly reached a large portion of the 25-to-54-year-old demographic in each of these major markets.  In the Houston market, Plaintiffs' advertisements reached 70.4% of the demographic, with the average viewer seeing each ad 15.2 times, for 29,563,125 total impressions.  In the San Antonio market, their advertisements reached 47.5% of the demographic, with the average viewer seeing each ad 14.0 times, for 6,420,146 total

impressions. And in the Dallas-Fort Worth market, Plaintiffs' advertisements reached 58.7% of the demographic, with the average viewer seeing each ad 13.9 times, for 23,406,564 total impressions.

28.    For each of these major Texas markets, Jim Adler and the Adler Firm run numerous radio advertisements in both English and Spanish on multiple radio stations throughout the year. For Houston, San Antonio, and Dallas-Fort Worth, Jim Adler and the Adler Firm run approximately 23,000 radio commercials per year in each market.

29.    The use of radio advertisements in these major markets has allowed Jim Adler and the Adler Firm to reach millions of Texans and enhance their brand recognition. The Houston market is the sixth-largest radio market in the nation, reaching more than 5 million listeners. The San Antonio market is the twenty-sixth largest radio market in the nation, reaching more than 1.8 million listeners. And the Dallas-Fort Worth market is the fifth-largest radio market in the nation, reaching more than 5.3 million listeners. Combined, Plaintiffs' radio advertising allows them to reach over 12 million Texans.

30.    A review of the radio advertisements Jim Adler and the Adler Firm ran in these major Texas markets showed that the commercials obtained significant exposure for the Adler Firm. In 2019, over a four-week period, radio advertisements for Jim Adler and the Adler Firm repeatedly reached a majority of the 25-to-54-year-old demographic in each of these major markets. In the Houston market, Plaintiffs' radio advertisements reached 87% of the demographic, with the average listener hearing each ad 8.9 times, for 23,519,600 total impressions. In the San Antonio market, their advertisements reached 67% of the demographic, with the average listener hearing each ad 9.2 times, for 6,258,000 total impressions. And in the Dallas-Fort Worth market, Plaintiffs' advertisements reached 56.1% of the demographic, with the average listener hearing

each ad 7.1 times, for 13,133,600 total impressions.

31.    For each of these major Texas markets, Jim Adler and the Adler Firm run numerous billboard advertisements in both English and Spanish.  At any given time, Jim Adler and the Adler Firm have approximately 40 billboard advertisements in the Houston market, 20 in the San Antonio market, and 40 in the Dallas-Fort Worth market.  On average, the billboard advertisements purchased by Jim Adler and the Adler Firm generate 25 to 30 million impressions per week.

32.    Plaintiffs' advertisements, all of which prominently incorporate the ADLER Marks, have enabled Jim Adler and the Adler Firm to develop very strong brand recognition in Texas.  In 2007, the Houston Chronicle wrote that "[e]verybody knows what Adler sounds like from his ceaseless TV commercials."  In 2015, the Dallas Morning News named one of Plaintiffs' television commercials to a list of five of the most memorable attorney ads in Dallas-Fort Worth. More recently, a montage comprised of Plaintiffs' English- and Spanish-language television advertisements was featured on a 2019 episode of *Last Week with John Oliver*, an Emmy-award winning HBO news satire program broadcast around the globe.

33.    As a result of Plaintiffs' long use and promotion of the ADLER Marks, the marks have become distinctive to designate Plaintiffs, to distinguish Plaintiffs and their services from those of others, and to distinguish the source or origin of Plaintiffs' services.  As a result of these efforts by Plaintiffs, the consuming public throughout the United States, including in Texas, widely recognizes and associates the ADLER Marks with Plaintiffs.

34.    As a result of Plaintiffs' long use and promotion of the ADLER Marks, Plaintiffs have acquired valuable and enforceable common law rights in those marks.

**D.    Jim Adler and the Adler Firm's Internet Advertising**

35.    As with their television advertising, Jim Adler and the Adler Firm were also early

leaders among lawyers in using the internet to advertise their legal services.  Since 1997, Jim Adler and the Adler Firm have marketed their legal services through the "jimadler.com" domain.  In 2018, jimadler.com averaged more than 52,000 visitors to the site per month.

36.    Plaintiffs also engage in a substantial amount of online advertising, including purchasing keyword search engine advertising to drive internet traffic to the Adler Firm.  Plaintiffs spend a considerable sum of money each month to advertise online, including by purchasing keyword ads through Google's search engine.  Plaintiffs spend hundreds-of-thousands of dollars every year purchasing keyword ads for its own ADLER Marks.

37.    Jim Adler and the Adler firm only purchase keywords that are their own marks or generic terms related to the type of cases they handle.  For example, Plaintiffs purchase keyword ads for "Jim Adler" or "Texas Hammer," as well as when someone searches more generically for "car accident lawyer."  The vast majority of the keyword ads that Plaintiffs purchase is for someone searching for their own marks, rather than generic terms.  Jim Adler and the Adler Firm do not purchase keywords related to any other lawyer's name, firm, or mark.

38.    All the search engine advertisements purchased by Jim Adler and the Adler Firm prominently include the ADLER Marks and clearly identify the Adler Firm as the source of the advertisement.  Here is an example of one such advertisement, as it appeared from a Google search:



E.     **Defendants' Infringing Click-to-Call Scheme**

39.     Defendants are engaged in a fraudulent scheme to trade on the goodwill and reputation of Plaintiffs and the ADLER Marks in Texas, and to deceptively induce prospective clients who are using mobile devices to specifically seek out Jim Adler and the Adler Firm into mistakenly contacting Defendants and engaging lawyers referred through Defendants instead.

40.     Upon information and belief, Defendant Lauren Von McNeil is the sole owner of Defendant McNeil Consultants, LLC d/b/a Accident Injury Legal Center and Defendant Quintessa Marketing, LLC d/b/a Accident Injury Legal Center, both of which operate a lawyer referral website at accidentinjurylegalcenter.com and a call center associated with that site.  Defendant Lauren Von McNeil directs and controls Defendants' activities and use of the ADLER marks.  As McNeil Consultants' and Quintessa Marketing's sole owner, Defendant Lauren Von McNeil has the authority to bind them in transactions.

41.     Upon information and belief, through the website accidentinjurylegalcenter.com and associated call center, Defendants solicit and refer personally injury cases to lawyers with whom Defendants have a referral agreement.

42.     Upon information and belief, Defendants are paid for referring leads through accidentinjurylegalcenter.com to the lawyers with whom it has referral agreements.

43.     To carry out their scheme, Defendants purchase the ADLER Marks as keyword advertisements on mobile devices through Google's search engine and uses them in conjunction with a "click-to-call" advertisement.  Upon information and belief, Defendants purchase the marks as keyword ads on mobile devices for use in click-to-call ads because of the likelihood that consumers will be confused and quickly click on Defendants' ad not realizing that the link is not affiliated with Plaintiffs.

-10-

44.     As a result, Google searches for "JIM ADLER," "THE TEXAS HAMMER," and "EL MARTILLO TEJANO" on mobile devices result in search pages that display Defendants' advertisement and accidentinjurylegalcenter.com, often directly below one or more of the ADLER Marks, as shown directly below:



45.     As shown above, Defendants' online click-to-call advertisements do not identify a particular lawyer or law firm as the source of the advertisement. Instead, the advertisements are designed to display generic terms that consumers might associate with any personal injury firm. Consumers specifically searching for Jim Adler or the Adler Firm are likely to believe that Defendants' advertisements are actually for the Adler Firm or that Defendants are somehow affiliated with Plaintiffs. This is particularly true on mobile devices, where consumers are quickly searching, often when dealing with the stressful aftermath of an accident, the typeface of the ads is much smaller, and the only content displayed on the screen is an advertisement directly below one or more of the ADLER Marks, which consumers have entered as a search term.

46.     Also as part of their scheme, Defendants are bidding increasingly higher amounts for the ADLER Marks as keyword advertisements. The effect of Defendants' increasingly higher bids is not only to drive up the cost for Plaintiffs to purchase their own marks for keyword searches, but also to allow Defendants' advertisements to appear next to or before Plaintiffs' own ads. By having their generic or confusing ads appear next to or before Plaintiffs' ads, Defendants are able

to confuse consumers and cause a higher number of consumers searching specifically for Jim Adler or the Adler Firm to instead mistakenly call Defendants.

47.    As also shown above, Defendants' online advertisements on mobile devices include a click-to-call link rather than a link to Defendants' website.  Consumers who click on the click-to-call link (intentionally or not) are connected to the call center operated by Defendants.  Defendants' ads do not give the consumer the ability to click through to a separate website or garner any further information regarding Defendants before the call is made.

48.    Upon information and belief, Defendants' employees who answer such calls are instructed to answer the call with a generic greeting such as "did you have an accident" or "tell me about your accident."  This continues Defendants' scheme of deceiving consumers into believing that they have contacted the Adler Firm and are speaking with the Adler Firm, or someone affiliated with the Adler Firm.  Defendants' scheme is to keep confused consumers, who were specifically searching for Jim Adler and the Adler Firm, on the phone and talking to their own employees as long as possible in a bait-and-switch effort to build rapport with the consumer and ultimately convince them to engage lawyers referred through Defendants instead.

49.    In this manner, Defendants wrongfully induces prospective clients trying to reach Plaintiffs into engaging competitive lawyers and law firms.  The nature of their scheme leaves little doubt as to Defendants' bad-faith intent to trade on Plaintiffs' goodwill and reputation.

50.    Defendants have used and are using the ADLER Marks in commerce, including in Texas.  Defendants' use of these marks began long after Plaintiffs developed rights in the ADLER Marks and after the ADLER Marks became famous in Texas.

51.    Defendants are not affiliated with or sponsored by Plaintiffs and have not been authorized by Plaintiffs to use the ADLER Marks, or any mark confusingly similar to the ADLER

Marks.

**F.    Effect of Defendants' Scheme**

52.    Defendants' unauthorized use of the ADLER Marks is likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties, at least as to some affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval of Defendants' services by Plaintiffs.

53.    Defendants' unauthorized use of the ADLER Marks falsely designates the origin of their services and falsely and misleadingly describes and represents facts with respect to Defendants and their services.

54.    Defendants' unauthorized use of the ADLER Marks enables Defendants to trade on and receive the benefit of goodwill built up at great labor and expense by Plaintiffs over the years, and to gain acceptance for their services not solely on their own merits, but on the reputation and goodwill of Plaintiffs, the ADLER Marks, and Plaintiffs' services.

55.    Defendants' unauthorized use of the ADLER Marks allows it to appropriate Jim Adler's name or likeness and the value associated with that name or likeness.  Significantly, Jim Adler is identifiable from Defendants' advertising in that one or several of ADLER Marks are displayed in proximity to the ads after a prospective consumer uses the marks as search terms.

56.    Defendants' unauthorized use of the ADLER Marks allows Defendants to appropriate the product of Plaintiffs' efforts in developing extensive advertising materials and executing costly marketing efforts, thereby enabling Defendants to gain a special advantage in competing with Plaintiffs through avoiding the costs and burden incurred by Plaintiffs in cultivating their strong reputation among the public.

57.     Defendants' unauthorized use of the ADLER Marks is likely to dilute the famous ADLER Marks as their use weakens the ability of the marks to clearly and unmistakably distinguish the source of Plaintiffs' services.

58.     Defendants' unauthorized use of the ADLER Marks unjustly enriches Defendants at Plaintiffs' expense.  Defendants have been and continue to be unjustly enriched by obtaining a benefit from Plaintiffs by taking undue advantage of Plaintiffs and their goodwill.  Specifically, Defendants have taken undue advantage of Plaintiffs by trading on and profiting from the goodwill in the ADLER Marks developed and owned by Plaintiffs, resulting in Defendants wrongfully obtaining a monetary and reputational benefit for their own business and services.

59.     Defendants' unauthorized use of the ADLER Marks removes from Plaintiffs the ability to control the nature and quality of the services provided under the ADLER Marks, and places the valuable reputation and goodwill of Plaintiffs in the hands of Defendants, over whom Plaintiffs have no control.

60.     Defendants' unauthorized use of the ADLER Marks has prevented an otherwise-likely business relationship from forming between Plaintiffs and their prospective consumers. Since Defendants began using the ADLER Marks, the rate at which Plaintiffs convert prospective consumers into clients through keyword advertising is measurably lower, and that marked decrease coincides with Defendants' unauthorized use of the ADLER Marks.  The nature of Defendants' scheme demonstrates that they intended to interfere with Plaintiffs' prospective relationships, and that they knew their use of the ADLER Marks was certain or substantially certain to prevent Plaintiffs from forming business relationships with prospective customers.  Such interference and misappropriation has harmed and damaged Plaintiffs.

-14-

61.     Unless these acts of Defendants are restrained by this Court, they will continue, and they will continue to cause irreparable injury to Plaintiffs and to the public for which there is no adequate remedy at law.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

62.     Plaintiffs repeat the allegations above as if fully set forth herein.

63.     The acts of Defendants complained of herein constitute infringement of the federally registered ADLER Marks in violation of 15 U.S.C. §1114(1).

64.     Defendants' acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of Plaintiffs' rights in the ADLER Marks, and with intent to cause confusion and to trade on Plaintiffs' vast goodwill in the ADLER Marks.  In view of the egregious nature of Defendants' infringement, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

## COUNT II: VIOLATION OF LANHAM ACT SECTION 43(a)

65.     Plaintiffs repeat the allegations above as if fully set forth herein.

66.     The acts of Defendants complained of herein constitute trademark infringement, false designation of origin, false or misleading descriptions or representations of fact and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

67.     Plaintiffs have been damaged by Defendants' acts of trademark infringement, false designation or origin, false or misleading descriptions or representations of fact and unfair competition.

## COUNT III: COMMON LAW TRADEMARK INFRINGEMENT

68.     Plaintiffs repeat the allegations above as if fully set forth herein.

69.     The acts of Defendants complained of herein constitute trademark infringement in

violation of the common law of the State of Texas.

## COUNT IV: COMMON LAW UNFAIR COMPETITION

70.    Plaintiffs repeat the allegations above as if fully set forth herein.

71.    The acts of Defendants complained of herein constitute unfair competition in violation of the common law of the State of Texas.

## COUNT V: DILUTION UNDER TEXAS LAW

72.    Plaintiffs repeat the allegations above as if fully set forth herein.

73.    The acts of Defendants complained of herein constitute dilution by blurring of Plaintiffs' famous ADLER Marks in violation of Texas Business and Commerce Code §16.103.

74.    Defendants willfully intended to trade on the recognition of the famous ADLER Marks.

## COUNT VI: UNJUST ENRICHMENT

75.    Plaintiffs repeat the allegations above as if fully set forth herein.

76.    The acts of Defendants complained of herein constitute unjust enrichment of Defendants at the expense of Plaintiffs.

## COUNT VII: MISAPPROPRIATION OF NAME OR LIKENESS

77.    Plaintiffs repeat the allegations above as if fully set forth herein.

78.    The acts of Defendants complained of herein constitute misappropriation of name or likeness in violation of the common law of the State of Texas.

## COUNT VIII: MISAPPROPRIATION OF BUSINESS OPPORTUNITY

79.    Plaintiffs repeat the allegations above as if fully set forth herein.

80.    The acts of Defendants complained of herein constitute misappropriation of a business opportunity (also known as unfair competition by misappropriation) in violation of the

-16-

common law of the State of Texas.

**COUNT IX: TORTIOUS INTERFERENCE**

81.    Plaintiffs repeat the allegations above as if fully set forth herein.

82.    The acts of Defendants complained of herein constitute tortious interference with a prospective business opportunity.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray that:

(a)    Defendants, as well as their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be permanently enjoined and restrained from using the ADLER Marks and any other mark or name confusingly similar to or likely to cause dilution of the ADLER Marks, including by purchasing the ADLER Marks or any confusingly similar marks as keyword advertisements, from misappropriating Jim Adler's name or likeness and Plaintiffs' business opportunities, and from any attempt to retain any part of the goodwill misappropriated from Plaintiffs, including but not limited to by purchasing the ADLER Marks as keywords;

(b)    Defendants, as well as their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be required to deliver up and destroy all internet postings and advertisements, and any other materials bearing or using the ADLER Marks and/or any other mark or name that is confusingly similar to or likely to dilute the ADLER Marks;

(c)    Defendants be ordered to file with this Court and to serve upon Plaintiffs, within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and

-17-

under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(d)      Plaintiffs recover all damages they have sustained as a result of Defendants' activities, and that said damages be trebled;

(e)      An accounting be directed to determine Defendants' profits resulting from their activities and that such profits be paid over to Plaintiffs, increased as the Court finds to be just under the circumstances of this case;

(f)      Plaintiffs recover their reasonable attorneys' fees;

(g)      Plaintiffs recover their costs of this action and prejudgment and post-judgment interest; and

(h)      Plaintiffs recover such other relief as the Court may deem appropriate.

## **JURY DEMAND**

Plaintiffs demand a jury trial in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

Date:  November 15, 2019

_s/ Jered E. Matthysse_
Jered E. Matthysse
Texas Bar No. 24072226
Giulio Yaquinto
Texas Bar No. 24107292
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, Texas 78702
Telephone: (512) 322-5200
Fax: (512) 322-5201
jmatthysse@pirkeybarber.com
gyaquinto@pirkeybarber.com

Kurt Kuhn
Texas Bar No. 24002433
KUHN HOBBS PLLC

-18-

3307 Northland Drive, Suite 310
Austin, Texas 78731
Telephone: (512) 476-6005
Fax: (512) 476-6002
Kurt@KuhnHobbs.com

Garrett W. Mize
Texas Bar No. 24089610
JIM S. ADLER AND ASSOCIATES
The Tower at City Place
2711 North Haskell Avenue, Suite 2500
Dallas, Texas 75204
(214) 220-3224
(214) 220-3233 (fax)
gmize@jimadler.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 15, 2019, a true and correct copy of the foregoing was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the court's local rules.


                             *s/ Jered E. Matthysse*        

# EXHIBIT A

Int. Cl.: 45

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Reg. No. 3,507,257

Registered Sep. 30, 2008

## SERVICE MARK
### PRINCIPAL REGISTER

# JIM ADLER

JIM S. ADLER, P.C. (TEXAS CORPORATION)
1900 WEST LOOP SOUTH, 20TH FLOOR
HOUSTON, TX 770273214

    FOR: LEGAL SERVICES, IN CLASS 45 (U.S. CLS. 100 AND 101).

    FIRST USE 8-2-2002; IN COMMERCE 8-2-2002.

    THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

    THE NAME "JIM ADLER" IDENTIFIES A LIVING INDIVIDUAL WHOSE CONSENT IS OF RECORD.

    SER. NO. 77-257,385, FILED 8-16-2007.

MARK RADEMACHER, EXAMINING ATTORNEY

Int. Cl.: 45

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Reg. No. 3,503,851

Registered Sep. 23, 2008

## SERVICE MARK
### PRINCIPAL REGISTER

# THE TEXAS HAMMER

JIM S. ADLER, P.C. (TEXAS CORPORATION)

1900 WEST LOOP SOUTH, 20TH FLOOR

HOUSTON, TX 770273214

   FOR: LEGAL SERVICES, IN CLASS 45 (U.S. CLS. 100 AND 101).

   FIRST USE 8-2-2002; IN COMMERCE 8-2-2002.

   THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

   NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TEXAS", APART FROM THE MARK AS SHOWN.

   SER. NO. 77-257,396, FILED 8-16-2007.

MARK RADEMACHER, EXAMINING ATTORNEY

**Int. Cl.: 45**

**Prior U.S. Cls.: 100 and 101**

**United States Patent and Trademark Office**

Reg. No. 3,503,852
Registered Sep. 23, 2008

**SERVICE MARK**
**PRINCIPAL REGISTER**

# EL MARTILLO TEJANO

JIM S. ADLER, P.C. (TEXAS CORPORATION)
1900 WEST LOOP SOUTH, 20TH FLOOR
HOUSTON, TX 770273214

    FOR: LEGAL SERVICES, IN CLASS 45 (U.S. CLS. 100 AND 101).

    FIRST USE 8-2-2002; IN COMMERCE 8-2-2002.

    THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

    NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TEJANO", APART FROM THE MARK AS SHOWN.

    THE FOREIGN WORDING IN THE MARK TRANSLATES INTO ENGLISH AS THE TEXAS HAMMER.

    SER. NO. 77-257,407, FILED 8-16-2007.

MARK RADEMACHER, EXAMINING ATTORNEY



# THE HAMMER

**Reg. No. 3,730,395**
Registered Dec. 29, 2009

JIM S. ADLER, P.C. (TEXAS CORPORATION)
1900 WEST LOOP SOUTH, 20TH FLOOR
HOUSTON, TX 770273214

**Int. Cl.: 45**

FOR: LEGAL SERVICES, IN CLASS 45 (U.S. CLS. 100 AND 101).

**SERVICE MARK
PRINCIPAL REGISTER**

FIRST USE 3-4-2009; IN COMMERCE 3-4-2009.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

SER. NO. 77-245,818, FILED 8-2-2007.

MARK RADEMACHER, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

# Tab 3

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:19-cv-2025-K-BN |
| | § | |
| MCNEIL CONSULTANTS, LLC D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| QUINTESSA MARKETING, LLC, D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| and LAUREN VON MCNEIL, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge

for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference

from United States District Judge Ed Kinkeade. *See* Dkt. No. 31.

Defendants McNeil Consultants, LLC d/b/a Accident Injury Legal Center,

Quintessa Marketing, LLC d/b/a Accident Injury Legal Center and Lauren Von

McNeil have filed a Motion to Dismiss Plaintiffs' First Amended Complaint or

Alternative Motion for a More Definite Statement. *See* Dkt. No. 25. Plaintiffs Jim S.

Adler, P.C. (the "Adler Firm") and Jim Adler have filed a response, *see* Dkt. No. 27,

and Defendants have filed a reply, *see* Dkt. No. 30.

For the reasons and to the extent explained below, the undersigned

recommends that the Court should grant the motion to dismiss and deny the motion

for more definite statement.

1

## Background

This is a trademark infringement case between a personal injury law firm and a lawyer referral service. Plaintiffs contend Defendants intentionally use their trademarks to confuse consumers using mobile device to search online for Plaintiffs.

The Adler Firm is a Texas personal injury firm, representing injured parties in all types of personal injury cases, with a focus on auto accidents and commercial vehicle/eighteen-wheeler accidents. The Adler Firm was formed and is led by Jim Adler, who has practiced law in Texas for over fifty years. It currently has four offices in Houston, Dallas, San Antonio, and Channelview.

Jim Adler and the Adler Firm became one of the first lawyers and law firms to advertise on television after the United States Supreme Court upheld the right of lawyers to advertise their legal services in 1977. They currently advertise on television, radio, billboards, and the internet. In 2015, the Dallas Business Journal wrote that "Jim Adler, 'The Texas Hammer,' has used an aggressive, memorable advertising campaign to make his law firm a household name in several areas of the state" and noted that, "[a]s far as personal injury lawyers go, Jim Adler might be the most well known in Texas." Dkt. No. 21 at 4.

Jim Adler and the Adler Firm have consistently and continuously used several trademarks, including JIM ADLER, THE HAMMER, THE TEXAS HAMMER, and EL MARTILLO TEJANO (collectively, the "Adler Marks"), in advertising across all media formats. The Adler Marks are registered with the United States Patent and Trademark Office.

2

This lawsuit involves use of the Adler Marks in internet advertising.

Plaintiffs purchase keyword search advertising to drive internet traffic to the Adler Firm, including purchasing keyword ads through Google's search engine. Plaintiffs purchase their own marks or generic terms related to the type of cases they handle. For example, Plaintiffs purchase keyword ads for "Jim Adler" or "Texas Hammer" as well as "car accident lawyer" for more generic searches. Most of the keyword ads Plaintiffs purchase are for someone searching for the Adler Marks rather than generic terms. All search engine advertisements purchased by Plaintiffs prominently include the Adler Marks and clearly identify the Adler Firm as the source of the advertisement, as shown in this example:



Dkt. No. 21 at 9.

Plaintiffs allege Defendants are engaged in a scheme to trade on the goodwill and reputation of Plaintiffs and the Adler Marks in Texas and to deceptively induce prospective clients who are using mobile devices to specifically seek out Jim Adler and the Adler Firm into mistakenly contacting and engaging Defendants instead.

Lauren Von McNeil is the sole owner of McNeil Consultants and Quintessa Marketing, both doing business as Accident Injury Legal Center and both of which operate a lawyer referral website at accidentinjurylegalcenter.com and a call center associated with that site. Lauren Von McNeil directs and controls Defendants' activities and use of the Adler Marks.

Through the website accidentinjurylegalcenter.com and associated call center, Defendants solicit and refer personal injury cases to lawyers with whom Defendants have a referral agreement. Defendants are paid for referring leads through accidentinjurylegalcenter.com to the lawyers with whom it has referral agreements.

Defendants purchase the Adler Marks as keyword advertisements through Google's search engine on mobile devices and use them in conjunction with a click-to-call advertisements. Defendants allegedly purchase the marks as keyword ads on mobile devices for use in click-to-call ads because of the likelihood that consumers will be confused and quickly click on Defendants' confusing ad not realizing that the link is not affiliated with Plaintiffs.

As a result, Google searches for "Jim Adler," "The Texas Hammer," and "El Martillo Tejano" result in search pages that display Defendants' advertisements, often directly below one or more of the Adler Marks as shown by these examples:



*Id.* at 11.

Defendants' online click-to-call advertisements do not identify a lawyer or law firm as the source of the advertisement. Instead, the advertisements are designed to display generic terms that consumers might associate with any personal injury firm. Plaintiffs contend that consumers specifically searching for Jim Adler or the Adler Firm are likely to believe that Defendants' advertisements are for the Adler Firm or that Defendants are affiliated with Plaintiffs and that this is particularly true on mobile devices, where consumers are quickly searching, often when dealing with the stressful aftermath of an accident, where the typeface of the ads is much smaller, and where the only content displayed on the screen is an advertisement directly below one or more of the Adler Marks, which consumers have entered as a search term.

Defendants are bidding increasingly higher bid amounts for the Adler Marks as keyword advertisements. The effect of Defendants' increasingly higher bids is not only to drive up the cost for Plaintiffs to purchase their own marks for keyword

searched, but also to allow Defendants' advertisements to appear next to or before Plaintiffs' own ads. By having their generic ads appear next to or before Plaintiffs' ads, Defendants confuse consumers and cause a higher number of consumers specifically searching for Jim Adler or the Adler Firm to instead mistakenly call Defendants.

Defendants' online advertisements on mobile devices include a click-to-call link but not a link to Defendants' website. Consumers who click on the click-to-call link are connected to a call center operated by Defendants. Defendants' ads do not give the consumer the ability to click through to a separate website or garner any further information regarding Defendants before the call is made. Defendants' employees are directed to answer the calls with a generic greeting like "did you have an accident" or "tell me about your accident" instead of identifying Defendants.

Plaintiffs sued Defendants for trademark infringement, false designation of origin and false advertising, unfair competition, dilution, unjust enrichment, misappropriate of name or likeness, misappropriation of business opportunity, and tortious interference. *See* Dkt. No. 21.

Defendants seeks dismissal of Plaintiffs' claims under Federal Rule of Civil Procedure Rule 12(b)(6). Defendant contends that Plaintiffs fail to state claims for federal trademark infringement for four reasons.

First, Plaintiffs have not plead any fact to support a claim against McNeil individually.

Second, Defendants argue that their use of Plaintiffs' marks as search engine keywords does not infringe Plaintiffs' trademark rights as a matter of law.

Third, Defendants argue that Plaintiffs fail to plead facts to show that their use of Plaintiffs' marks creates a likelihood of confusion.

And, fourth, Defendants argue that the amended complaint is an improper shotgun pleading that fails to plead the necessary elements and facts supporting numerous claims.

Defendants also seeks dismissal of the pendent state law claims. Alternatively, Defendants asks that Plaintiffs be required to file a more definite statement.

## Legal Standards

### I.  <u>Motion to Dismiss</u>

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.'*

## II.    Motion for More Definite Statement

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response," and "[t]he motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." FED. R. CIV. P. 12(e). "A motion for a more definite statement under Rule 12(e) is available where the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013) (quoting FED. R. CIV. P. 12(e)). "Motions for a more definite statement are generally disfavored." *Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790-D, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (internal quotation marks omitted). "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Id.* (internal quotation marks omitted).

## Analysis

## I.    The Court should grant the Motion to Dismiss.

### A.    Plaintiffs allege claims against Lauren Von McNeil individually.

Plaintiffs allege that Lauren Von McNeil is the sole owner of McNeil Consultants and Quintessa Marketing, directs and controls their activities and use of the Adler Marks and has authority to bind them in transactions. *See* Dkt. No. 21

at ¶ 40. Defendants contend these statements are insufficient to state a claim against McNeil individually.

A corporate officer may be personally liable for trademark infringement when an individual performs the act or does the things that the patent or trademark law protects against. *See Taylor Made Golf Co., Inc. v. MJT Consulting Group, LLC.*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003); *John Crane Prod. Solutions., Inc. v. R2R & D, LLC,* No. 3:11-cv-3237-D, 2012 WL 1571080, at * 2 n.2 (N.D. Tex. May 4, 2012) (listing cases). Thus, "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." *Id.* (quoting *Mead Johnson & Co. v. Baby's Formula Serv., Inc.,* 402 F.2d 19, 23 (5th Cir. 1968)); *see also* J. THOMAS MCCARTHY, 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 25:24 (5th ed.) ("To be personally liable, corporate officers must do more than merely control corporate affairs: they must personally take part in infringing activities or specifically direct employees to do so."). "The thrust of the general rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity." *Tempur-Pedic Intern., Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 378 (N.D. Tex. 2010) (quoting *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 174 (5th Cir. 1985)).

Here, Plaintiffs allege McNeil directs and controls Defendants' activities and use of the Adler Marks and she is the sole owner of both McNeil Consultants and Quintessa Marketing. Moreover, Plaintiffs' allegations refer to Defendants collectively, which includes McNeil. *See Liquid Manna, LLC v. GLN Glob. Light Network, LLC*, No. 14-cv-1123, 2015 WL 4068623, at *3 (W.D. Tex. July 2, 2015) (rejecting dismissal where "Plaintiff's Complaint, which refers to Dartez and GLN collectively as 'Defendants,' asserts that Dartez and GLN each engaged in the conduct alleged and are thus each liable on the stated cause of action"); *Advantage Media Grp. v. Smart Discipline, LLC*, No. 9-cv-320, 2010 WL 11538262, at *5 (M.D. La. Jan. 12, 2010) (allegations against "the Koenig Defendants (which include Dr. Koenig individually)" were sufficient to state a claim for personal liability).

B. <u>Plaintiffs fail to state claims for violations of the Lanham Act.</u>

Plaintiffs assert claims for federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. §§ 1114(1), and false designation of origin, false or misleading descriptions or representations of fact and unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). *See* Dkt. No. 21 at 1. The same test for trademark infringement applies to both. *See John Crane,* 2012 WL 1571080, at * 2 n.2 (citing *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 236 n.8 (5th Cir. 2010)).

"To prevail on a claim of federal trademark infringement under the Lanham Act…a plaintiff must show (1) ownership of a legally protectible mark and (2) a

likelihood of confusion created by an infringing mark." *All. for Good Gov't v. Coal. For Better Gov't,* 901 F.3d 498, 505 (5th Cir. 2018).

Defendants do not dispute that Plaintiffs own legally protected marks. They challenge only the likelihood-of-confusion element.

1. Plaintiffs' claims are based on Defendants' use of the Adler Marks as keyword <u>search terms.</u>

The purchase of a competitor's trademark as a keyword for search-engine advertising, without more, is insufficient for a claim of trademark infringement. *See Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 F. App'x 403, 414 (5th Cir. 2010) (clarifying that the purchase of a competitor's brand as a search-engine keyword to summon sponsored-link advertising "does not compel a finding of likelihood of confusion under the relevant Fifth Circuit law"); *Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, Civil Action H-17-1068, 2017 WL 2957912, at *7-*8 (S.D. Tex. July 11, 2017) ("The mere purchase of AdWords alone, without directing a consumer to a potentially confusing web page, is not sufficient for a claim of trademark infringement."); *see also* 5 MCCARTHY § 25A:7 ("Almost all District Courts have found that no likelihood of confusion was caused by the purchase of keywords alone.").

But that is precisely what Plaintiffs allege here. Although they make conclusory statements in their complaint alleging that Defendants' advertisements are confusing, they assert no facts to support those claims. And Plaintiffs seemingly concede so in their response. They make no substantive response to this issue but detour to address Defendants' one-paragraph argument that Plaintiffs did not state

a false advertising claim. The undersigned acknowledges that Plaintiffs did not assert a claim for false advertising.

   2.   Plaintiffs fail to plead a likelihood of confusion.

A defendant's use of a plaintiff's marks in keyword search engine ads to direct users to the defendant may be unlawful if it causes consumer confusion. *See, e.g.*, *Abraham v. Alpha Chi Omega*, 781 F. Supp. 2d 396, 423 (N.D. Tex. 2011). Liability for trademark infringement depends on how the defendant is using the mark, "as every use of a mark is different." *Mary Kay, Inc. v. Weber,* 601 F. Supp. 2d 632, 646 (N.D. Tex. 2009). The crux of the issue is whether a defendant's keyword purchases, combined with the look and placement of the ads, creates a search results page that misleads, confuses, or misdirects a consumer searching for a brand to the website of a competitor. *See TSI Prods., Inc. v. Armor All/STP Prods.*, Co., No. 3:17-cv-1331, 2019 WL 4600310, at *5 (D. Conn. Sept. 23, 2019) (denying motion to dismiss based on argument that "the purchase of a competitor's marks as keywords alone, without additional behavior that confuses consumers, is not actionable "because "[d]rawing all reasonable inferences in favor of" plaintiff, the Court found that the complaint "states a plausible claim that [defendant's] keyword purchases, combined with the look and placement of that defendant's advertisement, create a search results page which misleads, confuses or misdirects a consumer searching for a trademarked brand to the website of a competitor in a manner in which the source of the products offered for sale by the competitor is unclear.") (citing *See Edible Arrangements*, *LLC*

*v. Provide Commerce, Inc.,* No. 3:14-cv-250, 2016 WL 4074121, at *1 (D. Conn. July 29, 2016)).

Generally, when a protected mark is used in an advertisement, the court must consider the "digits of confusion" to determine whether the advertising "creates a likelihood of confusion as to affiliation or endorsement." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *see also All. For Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 508 (5th Cir. 2018). But Plaintiffs do not allege Defendants have used any of Plaintiffs' marks in Defendants' advertisements. And the examples of allegedly infringing advertisements included in the amended complaint show Defendants do not use Plaintiffs' marks or any portion of Plaintiffs' marks:



Where an advertisement does not incorporate the plaintiff's trademark, there is no likelihood of confusion as a matter of law. *See, e.g., 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242-49 (10th Cir. 2013) (affirming summary judgment dismissing plaintiff's trademark infringement claim where the evidence could not sustain a finding of likelihood of confusion because, although the defendant bid on plaintiff's trademarks as search terms, defendant's resulting advertisements

did not contain plaintiff's trademark); *Infogroup, Inc. v. Database LLC,* 95 F. Supp. 3d 1170, 1191 (D. Neb. 2015) (denying motion for preliminary injunction based, in part, on no showing of a likelihood of confusion where the advertisements at issue did not use the plaintiff's trademarks and the ad was plainly labeled as a sponsored advertisement); *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC,* 1256 F. Supp. 3d 1256, 1268 (S.D. Fla. 2016) (denying motion for preliminary injunction based on no likelihood of confusion where the defendant purchased the plaintiff's trademarks as advertising keywords but the defendant's advertisements did not display the trademarks); *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.,* No. 12-cv-61853, 2013 WL 12036430, at *6-7 (S.D. Fla. Jan. 28, 2013) (finding defendant's use of plaintiff's name in Google AdWords not confusingly similar because plaintiff's name did not appear in ad, the ad was offset as a sponsored ads section, and the ad clearly identified defendant as the provider); *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC,* CIV.A.06-0597, 2007 WL 30115, at *2, *8 (E.D. Pa. Jan. 4, 2007) (granting defendant's motion to dismiss plaintiff's trademark infringement claim under Lanham Act based on the court's finding that there was no likelihood of confusion as a matter of law where the defendant's advertisements and links did not incorporate the plaintiff's trademarks in any way).

Plaintiffs argue that Defendants' ads are confusing because they "display generic terms that consumers might associate with any personal injury firm." Dkt. No. 1 at ¶ 45. But Plaintiffs have no exclusive right to the use of those generic terms.

The Lanham Act includes safeguards to prevent the commercial monopolization of language. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 201 (1985). "'Generic names are regarded by the law as free for all to use. They are in the public domain.'" *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1170 (7th Cir. 1996) (quoting 2 MCCARTHY § 12.01[2]). And dismissal of trademark infringement claims is appropriate when they are based on the use of generic terms. *See, e.g., Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 308 (2d Cir. 1986) (dismissing trademark infringement claim, stating "[a] trademark holder cannot appropriate generic or descriptive terms for its exclusive use, and a trademark infringement finding thus cannot be based on the use of a generic . . . term"); *Scooter Store, Inc. v. SpinLife.com, LLC*, No. 2:10-cv-18, 2011 WL 6415516, at *1 (S.D. Ohio Dec. 21, 2011), *adhered to on denial of reconsideration*, 2012 WL 4498904 (S.D. Ohio Sept. 28, 2012) (dismissing trademark infringement claim and finding no likelihood of confusion analysis necessary because generic terms "are not protectable and cannot infringe [plaintiff's trademark] based on creating consumer confusion"); *Kegan v. Apple Computer, Inc.*, No. 95 C 1339, 1996 WL 667808, at *1 (N.D. Ill. Nov. 15, 1996) (dismissing trademark infringement claim, holding that the defendant "cannot be said to have infringed on [plaintiff's] MACGUIDE trademark" where the generic term "–guide" is "not protectible and [defendant] should be able to use it freely").

Because Defendants do not use any portion of Plaintiffs' marks in their ads, and Plaintiffs base their infringement claim on the use of generic terms, consideration of the "digits of confusion" is not necessary to determine that Plaintiffs fail to allege

a likelihood of confusion, and, as a matter of law, fail to state a claim for violation of the Lanham Act.

Accordingly, the undersigned recommends Plaintiffs' claims for violations of the Lanham Act be dismissed with prejudice.

> C. The Court should decline to exercise supplemental jurisdiction over Plaintiffs' pendent state law claims.

In addition to their claims under the Lanham Act, Plaintiffs allege state-law claims for common law trademark infringement and unfair competition, dilution, unjust enrichment, misappropriation of name or likeness, misappropriation of business opportunity, and tortious interference. *See* Dkt. No. 1 at 19-20. While the Lanham Act claims confer federal question jurisdiction under 28 U.S.C. § 1331, the state-law claims come in under the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *see also Noble v. White,* 996 F.2d 797, 799 (5th Cir.1993). Among the factors to be considered in exercising this discretion are judicial economy, convenience, fairness, federalism, and comity. *See Rosado v. Wyman,* 397 U.S. 397, 403–04 (1970). When all federal claims are dismissed prior to trial, these factors weigh heavily in favor of declining to exercise jurisdiction. *See Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir.1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."). In view of the undersigned's

recommendation to dismiss Plaintiffs' claims for trademark infringement, false designation of origin, false or misleading descriptions or representations of fact and unfair competition under the Lanham Act, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See Baker v. DeShong*, 90 F. Supp. 3d 659, 665 (N.D. Tex. 2014) (declining to exercise supplement jurisdiction over state law claims after dismissing federal trademark infringement claims).

## Recommendation

Because Plaintiffs Jim S. Adler, P.C. and Jim Adler, through an amended complaint, have failed to state a federal claim on which relief may be granted, the Court should dismiss the federal claims in the amended complaint with prejudice and decline to exercise supplemental jurisdiction over the remaining state law claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: August 10, 2020

 

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

# Tab 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:19-cv-2027-K-BN |
| | § | |
| ANGEL L. REYES & ASSOCIATES PC | § | |
| D/B/A REYES BROWNE REILLY, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade. *See* Dkt. No. 14.

Defendant Angel L. Reyes & Associates d/b/a Reyes Brown Reilley has filed a Motion to Dismiss Plaintiffs' Complaint or Alternative Motion for a More Definite Statement. *See* Dkt. No. 10. Plaintiffs Jim S. Adler, P.C. (the "Adler Firm") and Jim Adler have filed a response, *see* Dkt. No. 11, and Defendant has filed a reply, *see* Dkt. No. 12.

For the reasons and to the extent explained below, the undersigned recommends that the Court grant in part and deny in part the motion to dismiss and motion for more definite statement.

**Background**

This is a trademark infringement case between two personal injury law firms.

1

Plaintiffs contend that Defendant intentionally uses its trademarks to confuse consumers using mobile device to search online for Plaintiffs.

The Adler Firm is a Texas personal injury firm, representing injured parties in all types of personal injury cases, with a focus on auto accidents and commercial vehicle/eighteen-wheeler accidents. The Adler Firm was formed and is led by Jim Adler, who has practiced law in Texas for over fifty years. It currently has four offices in Houston, Dallas, San Antonio, and Channelview.

Jim Adler and the Adler Firm became one of the first lawyers and law firms to advertise on television after the United States Supreme Court upheld the right of lawyers to advertise their legal services in 1977. They currently advertise on television, radio, billboards, and the internet. In 2015, the Dallas Business Journal wrote that "Jim Adler, 'The Texas Hammer,' has used an aggressive, memorable advertising campaign to make his law firm a household name in several areas of the state" and noted that, "[a]s far as personal injury lawyers go, Jim Adler might be the most well known in Texas." Dkt. No. 1 at 4.

Jim Adler and the Adler Firm have consistently and continuously used several trademarks, including JIM ADLER, THE HAMMER, THE TEXAS HAMMER, and EL MARTILLO TEJANO (collectively, the "Adler Marks"), in advertising across all media formats. The Adler Marks are registered with the United States Patent and Trademark Office.

This lawsuit involves use of the Adler Marks in internet advertising.

Plaintiffs purchase keyword search advertising to drive internet traffic to the Adler Firm, including purchasing keyword ads through Google's search engine. Plaintiffs purchase their own marks or generic terms related to the type of cases they handle. For example, Plaintiffs purchase keyword ads for "Jim Adler" or "Texas Hammer" as well as "car accident lawyer" for more generic searches. Most of the keyword ads Plaintiffs purchase are for someone searching for the Adler Marks rather than generic terms. All search engine

advertisements purchased by Plaintiffs prominently include the Adler Marks and clearly identify the Adler Firm as the source of the advertisement, as shown in this example:



Dkt. No. 1 at

Plaintiffs allege Defendant is engaged in a scheme to trade on the goodwill and reputation of Plaintiffs and the Adler Marks in Texas and to deceptively induce prospective clients who are using mobile devices to specifically seek out Jim Adler and the Adler Firm into mistakenly contacting and engaging Defendant instead.

Defendant is a personal injury law firm in Dallas, Texas and through its website at reyeslaw.com advertises itself as "Personal Injury Attorneys & Car Accident Lawyers." Defendant operates a call center associated with that site through which Defendant solicits personal injury cases, including from calls it receives based on its website and search engine advertisements.

Defendant purchases the Adler Marks as keyword advertisements through Google's search engine on mobile devices and uses them in conjunction with similar ads that incorporate Plaintiffs' marks into the text of Defendant's advertisement. According to Plaintiffs, "Defendant purchases the marks as keyword ads on mobile devices because of the likelihood that consumers will be confused and quickly click on Defendant's ad, including the click-to-call button, not realizing that the link is not affiliated with Plaintiffs." Dkt. No. 1 at 10 ¶ 39.

As a result, Google searches for "Jim Adler," "The Texas Hammer," and "El Martillo Tejano" result in search pages that display Defendant's advertisements, often directly below one or more of the Adler Marks – and before Plaintiffs' own similar ads – while often incorporating Plaintiffs' marks into the text of Defendant's advertisements, as shown by these examples:

Example Ad #1



Example Ad #2



Example Ad #3



Dkt. No. 1 at 11-12.

Plaintiffs contend that these examples show that Defendant's online advertisements do not always specifically name a lawyer or law firm as the source of the advertisement. They include headers in larger and distinct font that allegedly incorporate the Adler Marks in phrases such as "We Hammer Insurance Companies" or "Need a Hammer for Your Case?" In the smaller text of the body of the advertisement, the firm name is not provided or is referred by the initials "RBR," and the text of the ad includes the Adler Marks. For example, the text of Example Ad #2 reads "RBR will **hammer** the insurance company to ensure you get every dollar you deserve. Don't let them **hammer** your case down."

6

Plaintiffs allege that, by including the Adler Marks in the text of its ads, Defendant ensures that, when someone searches with the Adler Marks, the marks will appear in bold in Defendant's ads in the search results. Plaintiffs also allege that the landing page to which the consumer is directed when it clicks on one of the offending ads includes the "Hammer" mark but that Defendant's main website page does not.

Plaintiffs contend that consumers specifically searching for Jim Adler or the Adler Firm are likely to believe that Defendant's advertisements are for the Adler Firm or that Defendant is affiliated with Plaintiffs and that this is particularly true on mobile devices, where consumers are quickly searching, often when dealing with the stressful aftermath of an accident, where the typeface of the ads is much smaller, and where the only content displayed on the screen is an advertisement directly below one or more of the Adler Marks, which consumers have entered as a search term.

Defendant's mobile search engine ads often include both a link to its website and a "click-to-call" button that, when tapped, causes the mobile device to call a predetermined phone number for a call center operated by Defendant.

Example #4



Dkt. No. 1 at 14. Defendant's employees are directed to answer the calls with a generic greeting like "did you have an accident" or "tell me about your accident" instead of identifying Defendant.

Plaintiffs sued Defendant for trademark infringement, false designation of origin and false advertising, unfair competition, dilution, unjust enrichment, misappropriate of name or likeness, misappropriation of business opportunity, and tortious interference. *See* Dkt. No. 1.

Defendant seeks dismissal of Plaintiffs' claims under Federal Rule of Civil Procedure Rule 12(b)(6). Defendant contends that Plaintiffs fail to state claims for federal trademark infringement for three reasons.

First, Defendant argues that its use of Plaintiffs' marks as search engine keywords does not infringe Plaintiffs' trademark rights as a matter of law.

Second, Defendant argues that Plaintiffs fail to plead sufficient facts to show that its use of Plaintiffs' marks creates a likelihood of confusion.

And, third, Defendant argues that its use of the word "hammer" is protected by the fair use doctrine.

Defendant also seeks dismissal of the pendent state law claims. Alternatively, Defendant asks that Plaintiffs be required to file a more definite statement.

## Legal Standards

I.   Motion to Dismiss

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "A claim for relief is implausible on its face

when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank*

*of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.'*

II.    <u>Motion for More Definite Statement</u>

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response," and "[t]he motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." FED. R. CIV. P. 12(e). "A motion for a more definite statement under Rule 12(e) is available where the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013) (quoting FED. R. CIV. P. 12(e)). "Motions for a more definite statement are generally disfavored." *Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790-D, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (internal quotation marks omitted). "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Id.* (internal quotation marks omitted).

## Analysis

I.    The Motion to Dismiss should be denied.

A.    Plaintiffs have stated claims for federal trademark infringement.

Plaintiffs assert claims for federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. §§ 1114(1), and unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). *See* Dkt. No. 1 at 18. The same test for trademark infringement applies to both. *See John Crane Prod. Solutions., Inc. v. R2R*

*& D, LLC,* No. 3:11-cv-3237-D, 2012 WL 1571080, at * 2 n.2 (N.D. Tex. May 4, 2012) (citing *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 236 n.8 (5th Cir. 2010)).

"To prevail on a claim of federal trademark infringement under the Lanham Act…a plaintiff must show (1) ownership of a legally protectible mark and (2) a likelihood of confusion created by an infringing mark." *All. for Good Gov't v. Coal. For Better Gov't,* 901 F.3d 498, 505 (5th Cir. 2018).

Defendant does not dispute that Plaintiffs own legally protected marks. It challenges only the likelihood-of-confusion element.

1. <u>Plaintiffs allege more than Defendant's purchase of its trademarks.</u>

Defendant argues that Plaintiffs fail to state a claim for trademark infringement and unfair competition, as a matter of law, because "Adler's trademark infringement claim is based on the allegation that Reyes purchased trademarked keyword advertisements through Google's search engine." Dkt. No 10 at 10. The purchase of a competitor's trademark as a keyword for search-engine advertising, without more, is not sufficient for a claim of trademark infringement. *See Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, Civil Action H-17-1068, 2017 WL 2957912, at *7-*8 (S.D. Tex. July 11, 2017) ("The mere purchase of AdWords alone, without directing a consumer to a potentially confusing web page, is not sufficient for a claim of trademark infringement.'); *see also* J. THOMAS MCCARTHY, 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 25A:7 (5th ed.) ("Almost all

District Courts have found that no likelihood of confusion was caused by the purchase of keywords alone.").

But Plaintiffs allege more than simply the purchase of a competitor's trademarks. Plaintiffs allege that Defendant: (1) used confusing advertisements with Adler keywords, often incorporating the Adler marks into the text of the ads in conspicuous fonts, *see* Dkt. No. 1 at ¶¶ 7, 39-41; (2) bid increasing higher amounts so that its ads were placed near or before Plaintiffs' ads, *see id*. at ¶¶ 8, 40, 45; (3) created special landing pages incorporating the Adler marks for those who clicked on the infringing ads, *see id*. at ¶ 42; (4) used click-to-call technology in the ads to cause consumers searching for Plaintiffs to mistakenly call Defendant before obtaining further information, *see id*. at ¶ 44; and (5) had call-center operators follow scripts designed to further confuse callers seeking Plaintiffs in the hopes of keeping them on the phone and ultimately convincing them to hire Defendant instead of Plaintiffs, *see id*. at ¶¶ 46-47.

2.  <u>Plaintiffs adequately plead a likelihood of confusion.</u>

A defendant's use of a plaintiff's marks in keyword search engine ads to direct users to the defendant may be unlawful if it causes consumer confusion. *See, e.g.*, *Abraham v. Alpha Chi Omega*, 781 F. Supp. 2d 396, 423 (N.D. Tex. 2011). Liability for trademark infringement depends on how the defendant is using the mark, "as every use of a mark is different." *Mary Kay, Inc. v. Weber,* 601 F. Supp. 2d 632, 646 (N.D. Tex. 2009). The crux of the issue is whether a defendant's keyword purchases, combined with the look and placement of the ads, creates a search results page that

misleads, confuses, or misdirects a consumer searching for a brand to the website of a competitor. *See TSI Prods., Inc. v. Armor All/STP Prods.*, Co., No. 3:17-cv-1331, 2019 WL 4600310, at *5 (D. Conn. Sept. 23, 2019) (denying motion to dismiss based on argument that "the purchase of a competitor's marks as keywords alone, without additional behavior that confuses consumers, is not actionable "because "[d]rawing all reasonable inferences in favor of" plaintiff, the Court found that the complaint "states a plausible claim that [defendant's] keyword purchases, combined with the look and placement of that defendant's advertisement, create a search results page which misleads, confuses or misdirects a consumer searching for a trademarked brand to the website of a competitor in a manner in which the source of the products offered for sale by the competitor is unclear.") (citing *See Edible Arrangements*, *LLC v. Provide Commerce, Inc.,* No. 3:14-cv-250, 2016 WL 4074121, at *1 (D. Conn. July 29, 2016)).

Courts consider a nonexhaustive list of eight factors to determine whether a party has established likelihood of confusion: (1) strength of the mark; (2) mark similarity; (3) product or service similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers. *See All. For Good Gov't*, 901 F.3d at 508. "'The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the ... factors.'" *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 & n.19 (5th

Cir. 2008) (quoting *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)).

At the pleading stage, the court need not fully weigh all the factors − the test is simply whether the complaint's allegations, taken as true, show the claim of likelihood of confusion is plausible. *See John Crane*, 2012 WL 1571080, at *3 (citing *Twombly*, 550 U.S. at 570).

The first digit of confusion is the strength of the mark allegedly infringed. "Two separate considerations are relevant − the conceptual strength and the commercial strength of the mark." *Firebirds Int'l, LLC v. Firebird Rest. Grp.*, 397 F. Supp. 3d 846, 860 (N.D. Tex. 2019). Conceptual strength "considers where the mark falls on a spectrum: 'Marks may be classified as generic, descriptive, suggestive, or arbitrary and fanciful.... Within this spectrum the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks." *Id*. (quoting *Am. Rice*, 518 F.3d at 330 (quoting *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984))). Commercial strength is the standing of the mark in the marketplace. *See id*.

Plaintiffs state facts showing that the Adler Marks are both conceptually and commercially strong. In addition to stating that the Adler Marks are inherently distinctive and famous in the State of Texas, *see* Dkt. No. 1 at ¶¶ 18, 19, Plaintiffs also allege:

> 22. In order to build a strong brand for aggressively representing Texas injury victims and their families, Jim Adler and the Adler Firm advertise on television, radio, billboards, and on the internet. The ADLER Marks are consistently used in Plaintiffs' advertisements across

all media formats. The ads themselves are strategically designed to position Jim Adler and the Adler Firm as leading attorneys capable of handling all types of personal injury claims, with an emphasis on auto and truck accidents. The bulk of Plaintiffs' advertising is in the three largest markets in Texas – Houston, San Antonio, and Dallas-Fort Worth.

22. Since 2000, the Adler Firm has spent over $100 million on television, internet, radio, and billboard advertisements targeting the Houston, San Antonio, and Dallas-Fort Worth markets.

23. For each of these three major Texas markets, Plaintiffs run numerous television advertisements in both English and Spanish on multiple television stations throughout the year. In Houston, Jim Adler and the Adler Firm run approximately 45,000 television commercials per year. In San Antonio, they run about 87,000 television commercials per year. And in Dallas-Fort Worth, Jim Adler and the Adler Firm run approximately 85,000 television commercials per year.

24. The use of television advertisements in these major Texas markets has allowed Jim Adler and the Adler Firm to reach millions of Texans and build an incredibly strong brand. The Houston market is the eighth largest television market in the nation, reaching more than 6 million viewers. The San Antonio market is the thirty-first largest television market in the nation, reaching more than 2.3 million viewers. The Dallas-Fort Worth market is the fifth largest television market in the nation, reaching more than 6.8 million viewers. Combined, Plaintiffs' television advertising allows them to reach over 15 million people – more than half of all Texans.

25. A review of the television advertisements Jim Adler and the Adler Firm ran in these major Texas markets showed that the commercials obtained significant exposure for the Adler Firm. In 2019, over a four-week period, not including commercials run on cable, television advertisements for Jim Adler and the Adler Firm repeatedly reached a large portion of the 25-to-54-year-old demographic in each of these major markets. In the Houston market, Plaintiffs' advertisements reached 70.4% of the demographic, with the average viewer seeing each ad 15.2 times, for 29,563,125 total impressions. In the San Antonio market, their advertisements reached 47.5% of the demographic, with the average viewer seeing each ad 14.0 times, for 6,420,146 total impressions. And in the Dallas-Fort Worth market, Plaintiffs' advertisements reached 58.7% of the demographic, with the average viewer seeing each ad 13.9 times, for 23,406,564 total impressions.

26. For each of these major Texas markets, Jim Adler and the Adler Firm run numerous radio advertisements in both English and Spanish on multiple radio stations throughout the year. For Houston, San Antonio, and Dallas-Fort Worth, Jim Adler and the Adler Firm run approximately 23,000 radio commercials per year in each market.

27. The use of radio advertisements in these major markets has allowed Jim Adler and the Adler Firm to reach millions of Texans and enhance their brand recognition. The Houston market is the sixth-largest radio market in the nation, reaching more than 5 million listeners. The San Antonio market is the twenty-sixth largest radio market in the nation, reaching more than 1.8 million listeners. And the Dallas-Fort Worth market is the fifth-largest radio market in the nation, reaching more than 5.3 million listeners. Combined, Plaintiffs' radio advertising allows them to reach over 12 million Texans.

28. A review of the radio advertisements Jim Adler and the Adler Firm ran in these major Texas markets showed that the commercials obtained significant exposure for the Adler Firm. In 2019, over a four-week period, radio advertisements for Jim Adler and the Adler Firm repeatedly reached a majority of the 25-to-54-year-old demographic in each of these major markets. In the Houston market, Plaintiffs' radio advertisements reached 87% of the demographic, with the average listener hearing each ad 8.9 times, for 23,519,600 total impressions. In the San Antonio market, their advertisements reached 67% of the demographic, with the average listener hearing each ad 9.2 times, for 6,258,000 total impressions. And in the Dallas-Fort Worth market, Plaintiffs' advertisements reached 56.1% of the demographic, with the average listener hearing each ad 7.1 times, for 13,133,600 total impressions.

29. For each of these major Texas markets, Jim Adler and the Adler Firm run numerous billboard advertisements in both English and Spanish. At any given time, Jim Adler and the Adler Firm have approximately 40 billboard advertisements in the Houston market, 20 in the San Antonio market, and 40 in the Dallas-Fort Worth market. On average, the billboard advertisements purchased by Jim Adler and the Adler Firm generate 25 to 30 million impressions per week.

30. Plaintiffs' advertisements, all of which prominently incorporate the ADLER Marks, have enabled Jim Adler and the Adler Firm to develop very strong brand recognition in Texas. In 2007, the Houston Chronicle wrote that "[e]verybody knows what Adler sounds like from his ceaseless

TV commercials." In 2015, the Dallas Morning News named one of Plaintiffs' television commercials to a list of five of the most memorable attorney ads in Dallas-Fort Worth. More recently, a montage comprised of Plaintiffs' English- and Spanish-language television advertisements was featured on a 2019 episode of *Last Week with John Oliver*, an Emmy-award winning HBO news satire program broadcast around the globe.

31. As a result of Plaintiffs' long use and promotion of the ADLER Marks, the marks have become distinctive to designate Plaintiffs, to distinguish Plaintiffs and their services from those of others, and to distinguish the source or origin of Plaintiffs' services. As a result of these efforts by Plaintiffs, the consuming public throughout the United States, including in Texas, widely recognizes and associates the ADLER Marks with Plaintiffs.

*Id.* at ¶¶21-31.

The second digit of confusion is similarity of the marks. Defendant argues that there is no similarity of use because it does not use any of the Adler Marks within the text of its Google advertisements. But "[i]n the Fifth Circuit trademark visibility has not been recognized to support a finding of likelihood of confusion." *Am. Can! v. Car Donations Found.*, No. 3:18-cv-1709-G, 2019 WL 1112667, at *10 (N.D. Tex. Mar. 11, 2019). "Further, the precedent of this court does not suggest that lack of visibility is determinative in keyword advertising cases, which similarly concern visible search results placement caused by invisible use of a trademark." *Id.* Plaintiffs allege that Defendant uses terms similar to Plaintiffs' registered trademarks and uses the identical marks as keywords to manipulate search engine results and confuse consumers, including using Alder's marks in the ads themselves.

The third digit of confusion is similarity of the products or services. Plaintiffs and Defendant are personal injury lawyers in the same markets. The fact the

defendant is a competitor providing the same class of services weighs heavily in favor of a finding the defendant's use of the plaintiff's mark is likely to cause confusion. *See Edible Arrangements*, 2016 WL 4074121, at *8. Likewise, use of a competing law firm's marks in keyword ads when the parties provide the same type of legal services is strong evidence of likelihood of confusion. *See Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172, 1176 (C.D. Cal. 2011).

The fourth digit of confusion is the identity of the consumers. Defendant does not dispute Plaintiffs are close competitors or that they compete to reach the same consumers: Texas personal injury plaintiffs and their families. *See* Dkt. No. 10 at 17; Dkt. No. 1 at ¶¶ 10, 38. When a competing law firm uses another's marks for keyword advertising to reach the same potential clients, there is strong evidence of likelihood of confusion. *See Binder*, 772 F. Supp. 2d at 1176.

The fifth digit of confusion is the identity of the advertising media used. Plaintiffs and Defendant both purchase and display keyword ads on mobile devices. When two competing law firms both use the internet to market their services and rely on it to obtain clients, this factor weighs in favor of finding the likelihood of confusion. *See id.*

The sixth digit of confusion is the defendant's intent. In their complaint, Plaintiffs state that Defendant uses the Adler marks in an intentional scheme to confuse consumers specifically searching for Plaintiffs and, as a result, divert consumers to Defendant. A defendant's intended use of allegedly infringing marks with knowledge of the plaintiff's prior use of mark may give rise to a presumption

that the defendant intended to cause public confusion. *See Conan*, 752 F.2d at 151 n.2. This factor weighs in favor of a finding of likelihood of confusion or, at the very least, is sufficient to create a question of fact on intent and the likelihood of confusion.

The seventh digit of confusion is evidence of actual confusion. Consideration of this factor is premature because Plaintiffs are not required to plead or provide evidence of actual confusion at the motion to dismiss stage.

The eighth digit of confusion is the degree of care exercised by potential purchasers. Plaintiffs state that Defendants purchase the Adler Marks primarily for internet advertising targeting consumers searching those marks from mobile devices because those consumers are more likely to be confused by Defendant's ads. *See* Dkt. No. 1 at ¶¶ 39, 44.

Taking as true the allegations of Plaintiffs' complaint and considering them in the light most favorable to Plaintiffs as measured against the eight digits, Plaintiffs plausibly show that there is a likelihood of confusion.

3. Defendant has not shown that Plaintiffs' trademark infringement claims are precluded by the fair use defense as a matter of law.

Defendant argues that its use of the word "hammer" is protected by the Lanham Act's statutory fair-use defense. *See* Dkt. No. 10 at 11-19. To assert a successful fair use defense to a trademark infringement claim, the defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith. *See* 15 U.S.C. § 1115(b)(4). Because fair use is an affirmative defense, it often requires consideration of facts outside of the complaint and thus is inappropriate to resolve on a motion to dismiss. But affirmative

defenses may be adjudicated at the pleading stage where the facts necessary to establish the defense are evident on the face of the complaint. *See Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017). Plaintiffs, in rebutting Defendants' arguments, are held only to the usual burden of a motion to dismiss: they must plead sufficient facts to plausibly suggest that they are entitled to relief. *See Iqbal*, 556 U.S. at 678.

Plaintiffs contend that Defendant's use of the word "hammer" constitutes use as a mark. Plaintiffs allege Defendant uses the Adler Marks "The Hammer" and "The Texas Hammer" as marks in the text of its internet search results pages and provides images of examples: "We Hammer Insurance Companies," "Need a Hammer for Your Case?" and "RBR will **hammer** the insurance companies to ensure you get every dollar you deserve. Don't let then **hammer** your case value down." Dkt. No. 1 at 11-12 (emphasis in original). "We Hammer Insurance Companies" and "Need a Hammer for Your Case?" are in large print and the word "hammer" also appears in bold. *See* MCCARTHY § 3.4 ("Some of the common markers of whether a word, phrase or picture is being used as a trademark are: larger-sized print, all capital letters or initial capital letters, distinctive or different print style, color, and prominent position on label or in advertising.").

Defendant asserts that it uses the word "hammer" generically within its ordinary, dictionary meaning and distinguishes its use of the word "hammer" from Plaintiffs'. Defendant argues that it uses the word "hammer" as a noun or verb in sentences to "convey[ ] to internet users that it will pursue its client's case strenuously, forcefully and compellingly." In contrast, it argues that Plaintiffs use the

word "hammer" as a trademark or source identifier and, specifically, "as part of a proper noun, title or moniker." Dkt. No. 10 at 14.

And Defendant observes that the Alder Marks "The Hammer" and "The Texas Hammer" include the article "the," whereas its use of the word "hammer" does not. But the inclusion of articles in the registered trademark is "insignificant in determining the likelihood of confusion." *In re Norwood Prods, Inc.,* 223 U.S.P.Q. 1034, 1034 (T.T.A.B. 1984).

Defendant also argues that the mere fact that someone owns a mark that contains a particular word or phrase does not grant the holder the exclusive right to use that word or phrase commercially:

> Then what new rights does the trademark confer? It does not confer a right to prohibit the use of the word or words. It is not a copyright…A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his…When the mark is used in a way that does not deceive the public, we see no such sanctity in the word to prevent its being used to tell the truth. It is not taboo.

Dkt. No. 10 at 11 (quoting *G.D. Searle & Co. v. Hudson Pharm. Corp.*, 715 F.3d 837, 843 (3d Cir. 1983)). But, here, Plaintiffs allege that Defendant uses the word "hammer" in a way that deceives internet consumers searching for the Adler Marks on mobile phones. In the mobile-ad context, which requires ads occupy minimal screen space and use only small amounts of screen space, they allege that Defendant's use of the term "hammer" multiple times in a single ad deceptively directs consumers searching the Adler Marks away from Plaintiffs to Defendant. *See* Dkt. No. 1 at § 40.

Defendants contend that they acted in good faith because the Professional Ethics Committee for the State Bar of Texas – addressing the question "Does a lawyer violate the Texas Disciplinary Rules of Professional Conduct by using the name of a competing lawyer or law firm as a keyword in the implementation of an advertising service offered by a major search-engine company?" – concluded that "given the general use by all sorts of businesses of names of competing businesses as keywords in search-engine advertising, such use by Texas lawyers in their advertising is neither dishonest nor fraudulent nor deceitful and does not include misrepresentation." PROFESSIONAL ETHICS COMMITTEE FOR THE STATE BAR OF TEXAS, Opinion 661 (July 2016). The Committee noted that its opinion addressed only whether the use of a competitor's name in internet search-engine advertising programs violates the Texas Disciplinary Rules of Professional Conduct. And it explained that, "depending on the circumstances, a Texas lawyer advertising through keywords on internet search engines may be subject to other requirements or prohibitions imposed by federal or state law or by professional ethics rules of other jurisdictions." *Id.* at 3.

The facts necessary to establish the fair use doctrine are not evident on the face of the complaint, and, taking Plaintiffs' allegations as true, Plaintiffs have sufficiently pleaded plausible facts to show that they are entitled to relief. At this stage of the proceedings, Plaintiffs have stated claims for federal trademark infringement and unfair competition.

B. <u>Plaintiffs adequately pleaded state law claims.</u>

24

Plaintiffs bring claims for common law trademark infringement and unfair competition, dilution under Texas law, unjust enrichment, misappropriation of name or likeness, misappropriation of business opportunity, and tortious interference. *See* Dkt. No. 1 at 19-20.

1. **Plaintiffs state common law trademark infringement and unfair competition claims.**

For the reasons stated above, the Court should deny the motion to dismiss as to Plaintiffs common law trademark and unfair competition claims because "[a] determination of a likelihood of confusion under federal law is the same as the determination of a likelihood of confusion under Texas law for a trademark infringement claim." *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998).

2. **Plaintiffs state a claim for dilution under Texas law**

Under Texas law, "'the owner of a mark that is famous and distinctive ... in this state is entitled to enjoin another person's commercial use of a mark ... if use of the mark ... is likely to cause the dilution of the famous mark.'" *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, 3:17-cv-54-B, 2018 WL 1806500, at *5-*6 (N.D. Tex. Apr. 17, 2018) (quoting TEX. BUS. & COM. CODE § 16.103(b)). A mark is famous under Texas law if it

> is widely recognized by the public throughout this state or in a geographic area in this state as a designation of source of the goods or services of the mark's owner. In determining whether a mark is famous, a court may consider factors including:

25

(1) the duration, extent, and geographic reach of the advertisement and publicity of the mark in this state, regardless of whether the mark is advertised or publicized by the owner or a third party;

(2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in this state;

(3) the extent of actual recognition of the mark in this state; and

(4) whether the mark is registered in this state or in the United States Patent and Trademark Office.

*Id.*

Defendant contends that Plaintiffs' Texas dilution claim fails because "fame in only a limited geographical area … will not support a dilution claim." Dkt. No. 10 at 19. Defendant's argument is built on cases decided under the Federal Trademark Dilution Act. *See id.* at 25-27; 15 U.S.C. § 1125(c)(2)(A) ("[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.").

But, unlike the federal statute, a plaintiff can succeed on a dilution claim under the Texas statute if its mark is famous in a smaller geographic region. *See YETI Coolers, LLC v. JDS Indus., Inc.,* 300 F. Supp. 3d 899, 914 n.7 (W.D. 2018) ("Texas law imposes the same requirement, albeit with a different geographic scope."); *De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*, No. 3:12-cv-1462-L, 2015 WL 5033893, at *3 (N.D. Tex. Aug. 25, 2015) (noting the possibility the scope of a dilution claim under the Texas statute could be limited to a single city); *Emerald City Mgmt., LLC v. Kahn*, No. 4:14-cv-358, 2016 WL 98751 (E.D. Tex. Jan. 8, 2016) (denying

summary judgment based on factual dispute as to whether the mark "was famous in the Dallas/Fort Worth region of Texas.").

Plaintiffs have stated a claim for dilution under the Texas statute. Plaintiffs allege use of the mark JIM ADLER for more than fifty years and use of the other Adler Marks for more than twenty years. *See* Dkt. No. 1 at ¶¶ 11-12, 17. The Adler Firm, which was founded in 1973, employees more than 300 persons and has four offices throughout the state in Houston, Dallas, San Antonio and Channelview. *See id.* at ¶12. Plaintiffs own federal registrations for the Adler Marks, all of which are incontestable under 15 U.S.C. § 1065. *See id.* at ¶ 20. Media outlets have recognized Jim Adler as a public figure, describing him as a "household name" and observing that "as far as personal injury lawyers go, Jim Adler might be the most well known in Texas." *Id.* at ¶ 16. Plaintiffs have spent more than $100 million on television, internet, radio, and billboard advertisements targeting the Houston, San Antonio, and Dallas/Fort Worth markets. *See id.* at ¶ 22. Plaintiffs purchase television, radio, and billboard ads in both English and San Antonio. *See id.* at ¶¶ 23, 26, 29. Plaintiffs run approximately 45,000 television commercials in Houston, 87,000 in San Antonio, and 85,000 in Dallas each year, and, between the three markets, the commercials reach more than half of the Texas population. *See id.* at ¶¶ 23-24.

3. <u>Plaintiffs state a claim for unjust enrichment.</u>

Defendant contends that Plaintiffs' enrichment claim should be dismissed because it is "subsumed" by their other claims for trademark infringement and unfair competition. *See* Dkt. No. 10 at 20-21; *Mary Kay*, 601 F. Supp. 2d at 864 ("where there

27

are other, more specific theories of recovery available–namely, trademark infringement and tortious interference–unjust enrichment should similarly not apply."). Other courts disagree. *See Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.,* No. CV H-17-1068, 2018 WL 4316427, at *5 (S.D. Tex. July 13, 2018 (refusing dismissal based on argument that an "[u]njust enrichment is not actionable because [plaintiff] has available legal causes of action that cover the same subject"); *RPost Holding., Inc. v. Readnotify.com Pty. Ltd.*, No. 2:11-cv-16-JRG, 2012 WL 3201898, at *2 (E.D. Tex. June 29, 2012) ("The Court agrees with Plaintiffs that unjust enrichment may be recovered based on a violation of federal and/or common law trademark infringement, where supported by the fact.").

Despite those disagreements, in cases addressing motions for summary judgment, courts routinely allow unjust enrichment claims to proceed past the motion-to-dismiss stage alongside claims for trademark infringement and unfair competition. *See YETI*, 2017 WL 2199012, at *7; *Primesource Bldg. Prod., Inc. v. Hillman Grp., Inc.,* No. 3:14-cv-2521-B, 2015 WL 11120882, at *8 (N.D. Tex. Mar. 31, 2015).

Because Plaintiffs may plead in the alternative, *see* FED. R. CIV. P. .8, their claim for unjust enrichment should not be dismissed at this stage of the proceedings.

4.  Plaintiffs do not state a claim for misappropriation of business opportunity or of name and likeness.

Plaintiffs assert state law claims for misappropriation of name or likeness and misappropriation of business opportunity. Defendants contend that both claims should be dismissed with prejudice because "misappropriation of a trademark is not

a cause of action under Texas law." *Buc-cee's, Ltd. v. Shepherd Retail, Inc.*, No. 4:15-cv-3704, 2017 WL 4221461, at * 12 (S.D. Tex. July 21, 2017) (report and recommendation adopted in part, rejected in part on other grounds sub nom. *Buc-cee's, Ltd. v. Punjwani*, 4:15-cv-3704, 2017 WL 4221461 (S.D. Tex. Sept. 21, 2017).

Misappropriation is a state common law offshoot of the general law of unfair competition and invoked when the plaintiff creates a valuable "thing" that the defendant has "appropriated" at little cost. *Id.* (quoting MCCARTHY, § 10.07). The "thing" that the plaintiff seeks to protect must not otherwise be protected by another theory of recovery − and specifically, not by traditional common law theories of unfair competition, such as trademark infringement. *See id.* (quoting MCCARTHY, §§ 10.47–48); *accord Mueller Co. v. U.S. Pipe & Foundry Co.*, No. 03–cv–170, 2003 WL 22272135, at *3 (D.N.H. Oct. 2, 2003) ("the misappropriation theory [ ] has been reserved for the vindication of commercial rights left unprotected by trademark principles"). The *Buc-cee's* Court notes that "numerous other courts have rejected the theory of misappropriation of a trademark under state common law." *Id.* at 13 (listing cases).

Plaintiffs respond that the *Buc-cee's* decision is inapplicable because their misappropriation claims are not premised on their rights in the Adler Marks. Instead, they argue, the misappropriation of name or likeness claim is based on Jim Adler's privacy interest in the exclusive use of his identity, and their misappropriation of business opportunity claim is based on Jim Adler's sweat-equity interest in the time it took to develop his extensive commercial reputation.

The tort of misappropriation of one's name or likeness is generally referred to as the "Right of Publicity" and is based on section 652C of the Restatement of Torts which reads, "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Henley v. Dillard Dep't Stores*, 46 F. Supp. 3d 587, 590 (N.D. Tex. 1999) (quoting Restatement (Second) of Torts § 652C (1977)). The Fifth Circuit has specifically identified three elements a plaintiff must prove to recover for the tort of misappropriation of name and likeness in Texas: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *See Matthews v. Wozencraft,* 15 F.3d 432, 437 (5th Cir.1994).

The objective of the tort of misappropriation of business opportunity is to "protect the labor − the so-called 'sweat equity' − that goes into creating a work" or product. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 788 (5th Cir. 1999). To state a claim for unfair competition by misappropriation, a plaintiff must allege: (i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (*i.e.,* a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff. *See U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App. − Waco 1993, writ denied).

Plaintiffs fail to allege facts to support either a misappropriation of name or likeness or misappropriation of business opportunity claims. The facts and allegations in the complaint are more akin to a claim for misappropriation of a trademark and, thus, precluded as a matter of law. Accordingly, the Court should dismiss Plaintiffs' misappropriation claims with prejudice.

5.  <u>Plaintiffs state a claim for tortious interference.</u>

Defendant argues that Plaintiffs fail to allege facts to support any element of their tortious interference with a prospective business opportunity claim. *See* Dkt. No. 1 at 20. To prevail on a claim for tortious interference with prospective business relations, the plaintiff must establish that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *See Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

In their complaint, Plaintiffs allege that they have expended significant resources in marketing and promoting their services across the state of Texas and, as a result of those efforts, have generated substantial revenue and profits. See Dkt. No. 1 at ¶¶ 21-36. They allege that Defendant committed numerous independent torts – trademark infringement, unfair competition, and common law misappropriation –

31

and diverted customers seeking Plaintiffs' services through unlawful means. *See id.* at ¶¶ 37-39. They also allege that Defendant knew of and exploited Jim Adler's reputation to divert customers, that those efforts were successful, and that Plaintiffs suffered actual harm in the form of lost profits. *See id.* These allegations are sufficient to state a plausible tortious interference claim.

II.    <u>The Motion for More Definite Statement should be denied.</u>

Defendant argues that Plaintiffs' complaint should be summarily dismissed as an improper shotgun pleading or, alternatively, that Plaintiffs should be required to make a more definite statement.

What makes a pleading a "shotgun" pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired. *See Bates v. Laminack*, 938 F. Supp. 2d 649, 667 (S.D. Tex. 2013). Defendant contends that Plaintiffs complaint is a "classic example" of a shotgun pleading, where "each count ... adopts the allegations of all preceding counts. Consequently, allegations of fact that may be material to a determination of count one, but not count four, are nonetheless made a part of count four.... [I]t is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126 (11th Cir. 2014) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Florida Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 2014). Plaintiffs recite 18 pages of factual allegations and then incorporate all prior allegations into each count. *See* Dkt. No. 1.

But this is not a case in which "the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick." *Roe v. Johnson County, Tex.*, 3:18-cv-2497-B-BN, 2019 WL 5031357, at \*5 (N.D. Tex. July 29, 2019). Nor are the facts alleged by Plaintiffs irrelevant or unrelated to Plaintiffs' allegations of a fraudulent scheme actionable under each claim included in the complaint.

Plaintiffs' complaint should not be dismissed as an improper shotgun pleading.

If the Court does not dismiss Plaintiffs' complaint in its entirety, Defendants alternatively argue that Plaintiffs should be required to file a more definite statement under Rule 12(e). *See* FED. R. CIV. P. 12(e) ("A party may move for a more definite statement of a pleading…which is so vague and ambiguous that the party cannot reasonably prepare a response."). It argues that the complaint contains vague, indefinite, ambiguous, and conclusory allegations, which violate Federal Rule of Civil Procedure 8's basic pleading requirements and deprive Defendant of fair and adequate notice of Plaintiffs' claims. It further argues that Plaintiffs' claims do not provide allegations specifically definite to determine the specific factual and legal bases for each claim.

For the reasons discussed above, the undersigned disagrees and recommends that the Court deny the motion for more definite statement.

## Recommendation

Defendant's Motion to Dismiss Plaintiffs' Complaint or Alternative Motion for a More Definite Statement [Dkt. No. 10] should be granted in part and denied in part. The Court should grant the motion as to Plaintiffs' claims for misappropriation of

name or likeness and misappropriation of business opportunity and dismiss those claims with prejudice. Otherwise, the motion should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 7, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

# Tab 5

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:19-cv-2025-K-BN |
| | § | |
| MCNEIL CONSULTANTS, LLC D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| QUINTESSA MARKETING, LLC, D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| and LAUREN VON MCNEIL, | § | |
| | § | |
| Defendants. | § | |

**ORDER ACCEPTING FINDINGS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE AND DENYING
<u>MOTION FOR LEAVE TO FILE AMENDED COMPLAINT</u>**

Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint or

Motion for More Definite Statement. *See* Dkt. No. 25. On August 10, 2020, United

States Magistrate Judge David L. Horan filed Findings, Conclusions, and

Recommendation ("FCR"). *See* Dkt. No. 32. Plaintiffs filed both objections to the FCR

and an Opposed Motion for Leave to File Amended Complaint on August 24, 2020.

*See* Dkt. Nos. 33 & 34.

Judge Horan recommended dismissal with prejudice, apparently because the

complaint had been amended once but also because amendment could not cure the

defect as a matter of law. But Judge Horan did not specifically address why Plaintiffs

should not be allowed to amend, and Plaintiffs have now filed a motion for leave to file a Second Amended Complaint.

The Court has reviewed the motion to amend along with Plaintiffs' objections, and, based on the reasoning that Judge Horan included in his FCR and that this Court agrees with and accepts, Plaintiffs' federal claim, even as laid out in the proposed Second Amended Complaint, fails as a matter of law because Plaintiffs' claim is based solely on the purchase of Plaintiffs' trademarks as keywords for search engine advertising and Defendants do not include Plaintiffs' trademarks in their advertisements. Plaintiffs do not address either of those issues in their proposed Second Amended Complaint

Accordingly, the Court finds that the Findings and Recommendation of the Magistrate Judge are correct and they are accepted as the Findings, Conclusions, and Recommendation of the Court.   The Court grants the Motion to Dismiss, denies as futile the Plaintiff's Opposed Motion for Leave to File Amended Complaint (as to which the Court therefore need not wait for a response), and declines to exercise supplemental jurisdiction over the state law claims.

**SO ORDERED.**

**Signed August 29th, 2020.**

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE

# Tab 6

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JIM S. ADLER, P.C. and JIM ADLER,  §
                                        §
      Plaintiffs,                   §
                                         §
V.                                      §            No. 3:19-cv-2025-K-BN
                                         §
MCNEIL CONSULTANTS, LLC D/B/A  §
ACCIDENT INJURY LEGAL CENTER,  §
QUINTESSA MARKETING, LLC, D/B/A  §
ACCIDENT INJURY LEGAL CENTER,  §
and LAUREN VON MCNEIL,        §
                                         §
      Defendants.                  §

## JUDGMENT

The Court has entered its Findings in the case, accepting the Findings, Conclusions, and Recommendation of the United States Magistrate Judge. Therefore,

It is ORDERED, ADJUDGED, and DECREED that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint or Motion for More Definite Statement [Dkt. No. 25] is GRANTED and this action is dismissed with prejudice.

The Clerk shall transmit to the parties a true copy of this Judgment and the Order adopting the Findings, Conclusions, and Recommendation of the United States Magistrate Judge.

SO ORDERED.

Signed August 27th, 2020.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

# Tab 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:19-cv-2025-K-BN |
| | § | |
| MCNEIL CONSULTANTS, LLC D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| QUINTESSA MARKETING, LLC D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| and LAUREN VON MCNEIL, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' NOTICE OF APPEAL

Pursuant to Federal Rules of Appellate Procedure 3 and 4, notice is hereby given that Plaintiffs Jim S. Adler, P.C. and Jim Adler appeal this Cause No. 3:19-cv-2025-K-BN; *Jim S. Adler, P.C. And Jim Adler, v. McNeil Consultants, LLC D/B/A Accident Injury Legal Center, Quintessa Marketing, LLC D/B/A Accident Injury Legal Center, and Lauren Von McNeil.* Plaintiffs Jim S. Adler, P.C. and Jim Adler hereby appeal the Court's August 29, 2020 Order Accepting Findings and Recommendation of the United States Magistrate Judge and Denying Motion for Leave to File Amended Complaint [Dkt. No. 35], and the Court's Judgment [Dkt. No. 36] also entered on August 29, 2020. This appeal is taken to the United States Court of Appeals for the Fifth Circuit.

1

Dated:  September 10, 2020                    Respectfully submitted,


                                             /s/ Kurt Kuhn
                                             Kurt Kuhn
                                                Texas Bar No. 24002433
                                                Kurt@KuhnHobbs.com
                                             Kuhn Hobbs PLLC
                                             3307 Northland Drive, Suite 310
                                             Austin, Texas 78731
                                             (512) 476-6005
                                             (512) 476-6002 (fax)


                                             /s/ Jered E. Matthysse
                                             Jered E. Matthysse
                                                Texas Bar No. 24007226
                                                jmatthysse@pirkeybarber.com
                                             Giulio Yaquinto
                                                Texas Bar No. 24107292
                                                gyaquinto@pirkeybarber.com
                                             PIRKEY BARBER PLLC
                                             1801 East 6th Street, Suite 300
                                             Austin, Texas 788702
                                             (512) 322-5200
                                             (512) 322-5201 (fax)


                                             /s/ Garrett W. Mize
                                             Garrett W. Mize
                                                Texas Bar No. 24089610
                                                gmize@jimadler.com
                                             JIM S. ADLER AND ASSOCIATES
                                             The Tower at City Place
                                             2711 North Haskell Avenue, Suite 2500
                                             Dallas, Texas 75204
                                             (214) 220-3224
                                             (214) 220-3233 (fax)


                                             COUNSEL FOR PLAINTIFFS



                                                  2

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, a true and correct copy of the foregoing Notice of Appeal was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the court's local rules.


/s/ Jered E. Matthysse

3

EXHIBIT 4



EXHIBIT 5



# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 10, 2021

Lyle W. Cayce
Clerk

No. 20-10936

JIM S. ADLER, P.C.; JIM ADLER,

*Plaintiffs—Appellants*,

*versus*

MCNEIL CONSULTANTS, L.L.C., *doing business as* ACCIDENT INJURY LEGAL CENTER; LAUREN VON MCNEIL; QUINTESSA MARKETING, L.L.C., *doing business as* ACCIDENT INJURY LEGAL CENTER,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2025

Before JONES, SOUTHWICK, and COSTA, *Circuit Judges*.

LESLIE H. SOUTHWICK, *Circuit Judge*:

Plaintiffs allege that Defendants purchased trademark terms as keywords for search-engine advertising, then placed generic advertisements that confused customers as to whether the advertisements belonged to or were affiliated with the Plaintiffs. The district court dismissed the complaint for failure to state a claim and denied Plaintiffs' motion for leave to amend

the complaint. We REVERSE the dismissal, VACATE the denial of leave to amend, and REMAND for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Because this is an appeal from a Rule 12(b)(6) dismissal, we recount the facts as alleged in Plaintiffs' complaint. Plaintiffs are Jim S. Adler P.C., a personal injury law firm in Texas, and Jim Adler, the firm's founder and lead attorney (collectively, "Adler"). Adler has offices in Houston, Dallas, San Antonio, and Channelview and employs approximately 300 people, including 27 lawyers.

Adler spends significant amounts of money to market his law practice. In his marketing on television, radio, and billboards, Adler has consistently used several trademarks, including JIM ADLER, THE HAMMER, TEXAS HAMMER, and EL MARTILLO TEJANO (collectively, the "Adler marks").

Adler also uses these marks in internet advertisements. Adler purchases Google "keyword ads" using the Adler marks as search terms. When a consumer performs a Google search using an Adler mark as a search term, Adler's advertisements appear alongside the results produced by the search engine's algorithm.

The Defendants are two entities, McNeil Consultants, LLC and Quintessa Marketing, LLC, both of which do business as Accident Injury Legal Center, and their sole owner, Lauren Von McNeil (collectively, "McNeil"). McNeil operates a lawyer-referral website and call center. McNeil solicits and refers personal injury cases to lawyers with whom McNeil has a referral agreement that provides for compensation for referrals.

Evidence Page 108

Like Adler, McNeil advertises on the internet. Also like Adler, McNeil purchases Google keyword ads for the Adler marks. This ensures that an advertisement for McNeil's services appears when a user performs a Google search using an Adler mark as a search term. McNeil bids increasingly higher amounts to ensure that her advertisements appear next to or before Adler's advertisements. McNeil's advertisements "do not identify a particular lawyer or law firm as the source of the advertisement. Instead, the advertisements are designed to display generic terms that consumers might associate with any personal injury firm."

McNeil purchases what is known as a "click-to-call" advertisement. If a user clicks on the advertisement using a mobile phone, the advertisement causes the user's phone to make a call rather than visit a website. McNeil's representatives answer the telephone using a generic greeting. The complaint alleges that the ads "keep confused consumers, who were specifically searching for Jim Adler and the Adler Firm, on the phone and talking to [McNeil's] employees as long as possible in a bait-and-switch effort to build rapport with the consumer and ultimately convince [the consumer] to engage lawyers referred through [McNeil] instead."

Adler sued McNeil, alleging claims for trademark infringement in violation of the Lanham Act and claims under Texas law. McNeil moved to dismiss the complaint for failure to state a claim.

A magistrate judge recommended granting McNeil's motion. The magistrate judge construed Adler's claims as based solely on McNeil's purchase of the Adler marks as keywords for search-engine advertisements. He found that the allegations regarding the bait-and-switch scheme were "conclusory."

The magistrate judge also concluded that Adler could not plead a likelihood of confusion as a matter of law because McNeil's advertisements

Evidence Page 109

are generic and do not incorporate the Adler marks. He recommended that the district court decline to exercise supplemental jurisdiction over Adler's state law claims.

Adler objected to the magistrate judge's findings, conclusions, and recommendation. Adler also filed a motion for leave to amend the complaint and a proposed second amended complaint. In that motion, Adler explained that he commissioned a double-blind survey of 400 Texas residents. That survey purportedly shows that "between 34% and 44% of participants clicked McNeil's ad believing it to be put out by, affiliated or associated with, or approved by Adler."

The district court adopted the findings, conclusions, and recommendation of the magistrate judge and dismissed the complaint. The court denied Adler's motion for leave to amend the complaint on the grounds of futility. The court concluded that the Lanham Act claims in the proposed second amended complaint would fail as a matter of law, even if amended, because they would be "based solely on the purchase of [Adler's] trademarks as keywords for search engine advertising" and because they did not visibly incorporate Adler's trademarks. Adler appealed.

## DISCUSSION

### I.    *Dismissal*

We review *de novo* a district court's ruling on a motion to dismiss under Rule 12(b)(6). *Wampler v. S.W. Bell Tel. Co.*, 597 F.3d 741, 744 (5th Cir. 2010). In our review, we "accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (*en banc*). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as

true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

Adler has alleged claims for trademark infringement in violation of Sections 32 and 43 of the Lanham Act, which are codified at 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a). Section 32 creates a cause of action for infringement of registered marks; Section 43 creates a cause of action for infringement of unregistered marks. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.8 (5th Cir. 2010). The same elements apply to both causes of action. *Id.* at 235–36 & n.8.

To plead a claim for trademark infringement in violation of the Lanham Act, a plaintiff must allege that: "(1) [the plaintiff] possesses a legally protectable trademark and (2) [the defendant's] use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). For purposes of the motion to dismiss, McNeil does not dispute the ownership or validity of the Adler marks, nor does McNeil dispute the use of the Adler marks. The sole issue is whether Adler adequately alleged a likelihood of confusion.

A.    *Likelihood of confusion and search-engine advertising*

A likelihood of confusion is "[t]he gravamen for any action of trademark infringement." *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 225 (5th Cir. 1995) (quoting *Marathon Mfg. Co. v. Enerlite Prods.*, 767 F.2d 214, 217 (5th Cir. 1985)). To evaluate whether there is a likelihood of confusion, our circuit uses a non-exhaustive list of factors known as the "digits of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). The initially identified digits are: "(1) the type of trademark; (2) mark similarity; (3) product similarity;

(4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id.* Besides being simply examples, those eight digits also are fact-specific and flexible, and "[n]o digit is dispositive." *Id.*

For trademark infringement claims in the context of internet searches, plaintiffs often allege a specific type of confusion known as initial interest confusion, as Adler has done here. Initial interest confusion is confusion that "creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998). We have held that initial interest confusion is actionable under the Lanham Act. *Id.* at 193, 204.

We have not yet had an opportunity to analyze initial interest confusion in the context of search-engine advertising, but we find some useful guidance. In one nonprecedential opinion,[1] we analyzed initial interest confusion in the context of so-called "meta tags," which are "essentially programming code instructions given to on-line search engines." *Southwest Recreational Indus., Inc. v. FieldTurf, Inc.*, No. 01-50073, 2002 WL 32783971, at *7 & n.27 (5th Cir. Aug. 13, 2002). Meta tags are "normally invisible to the Internet user," but they "are detected by search engines and increase the likelihood that a user searching for a particular topic will be directed to that Web designer's page." *Id.* at *7 n.27 (quoting *Nat'l A-1 Adver., Inc. v. Network Sols., Inc.*, 121 F. Supp. 2d 156, 164 (D.N.H. 2000)). Because meta tags direct internet traffic and are invisible to the internet user (absent the user taking additional steps), meta tags are similar to keyword advertising.

---

[1] We discuss *Southwest Recreational* here notwithstanding its nonprecedential value. We do so because of the dearth of relevant cases — published or unpublished — in this circuit, and the nuances of the opinion's discussion of the issues are informative. For similar reasons, we also discuss a few Ninth Circuit opinions.

*See Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1034 (9th Cir. 2004) (Berzon, J., concurring).

The claim in *Southwest Recreational* was that the defendant's use of trademark terms in meta tags on its website violated the Lanham Act because such use created initial interest confusion. *Southwest Recreational Indus., Inc.*, 2002 WL 32783971, at *7. A jury found against the plaintiff on this claim, and the district court denied the plaintiff's request for a permanent injunction. *Id.* at *2. On appeal, the plaintiff argued that the district court erred because "meta tagging another company's trademark necessarily constitutes trademark infringement." *Id.* at *7. We rejected that argument. In support, we cited Ninth Circuit cases and explained that "[t]he meta tag cases in which our sister circuits have found trademark infringement involve either evidence of customer confusion or evidence that the meta tags were used illegitimately." *Id.* (discussing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1061–65 (9th Cir. 1999) and *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 804 (9th Cir. 2002)). Finding no evidence of either, a panel of this court held that "the district court's refusal to find trademark infringement was not clearly erroneous." *Id.* at *8.

Since then, the Ninth Circuit has continued to refine its understanding of confusion in the context of internet-search cases. In one opinion, that court held that the use of trademarks as keywords for search-engine advertisements could create initial interest confusion if consumers searching for trademark terms initially believe that "unlabeled banner advertisements" are links to sites that belong to or are affiliated with the trademark owner. *Playboy Enters., Inc.*, 354 F.3d at 1025–27. A separate concurrence urged the court to distinguish between claims alleging confusion and those alleging distraction:

> There is a big difference between hijacking a customer to another website by making the customer think he or she is

visiting the trademark holder's website (even if only briefly), which is what may be happening in this case when the banner advertisements are not labeled, and just distracting a potential customer with another choice, when it is clear that it is a choice.

*Id.* at 1035 (Berzon, J., concurring).

The Ninth Circuit eventually adopted Judge Berzon's concurrence, concluding that "it would be wrong to expand the initial interest confusion theory of infringement beyond the realm of the misleading and deceptive to the context of legitimate comparative and contextual advertising." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1148 (9th Cir. 2011). The author of a leading treatise also agrees with this approach. *See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25A:8 (5th ed. 2021 Update). That author offered an analogy:

> [A]ssume that [a] person shopping for a car types in a search engine the word TOYOTA and finds on the search results web page a clearly labeled advertisement for VOLKSWAGEN. This occurred because, hypothetically, Volkswagen purchased from the search engine the keyword "Toyota." If that computer user then ultimately decides to buy a VOLKSWAGEN instead of a TOYOTA, that is not a purchase made by mistake or as a result of confusion. If that ad and link is clearly labeled as an advertisement for VOLKSWAGEN, it is hard to see how the web user and potential car buyer is likely to be confused by the advertising link.

*Id.* Conversely, "[i]nitial interest confusion could occur only if the web user mistakenly thought she was going to a web site about TOYOTA cars when she clicked on the keyword link for VOLKSWAGEN. That would depend on how clearly labeled was the advertising link for VOLKSWAGEN." *Id.*

We agree with *Southwest Recreational*, the Ninth Circuit opinions, and the treatise author that in the context of internet searches and search-engine

Evidence Page 114

advertising in particular, the critical issue is whether there is consumer confusion. Distraction is insufficient.

### B.    Adler's claims

We now turn to Adler's trademark infringement claims. As a threshold issue, Adler argues that because the likelihood of confusion element requires a fact-dependent evaluation, whether it has been alleged cannot be decided on a motion to dismiss. We agree that the likelihood of confusion element requires a fact-specific and contextual inquiry, *see Xtreme Lashes, LLC*, 576 F.3d at 227, but that does not mean that it can never be decided at the motion to dismiss stage. Where the factual allegations regarding consumer confusion are implausible, for example, a district court may dismiss a complaint on the basis that a plaintiff failed to allege a likelihood of confusion. *See, e.g.*, *Eastland Music Grp., LLC v. Lionsgate Ent., Inc.*, 707 F.3d 869, 871 (7th Cir. 2013); *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860-61 (9th Cir. 1996).

This is not such a case. Adler alleges that McNeil's advertisements use generic text and are not clearly labeled as belonging to McNeil. When McNeil's advertisements appear in response to an internet search of the Adler marks, Adler alleges that a consumer is likely to believe that the unlabeled advertisements belong to or are affiliated with Adler.

Adler further alleges that McNeil's use of click-to-call advertisements exacerbates this confusion. Instead of being directed to a clearly labeled website, users who click on McNeil's advertisement are connected by telephone to a call center. McNeil employees answer the phone without identifying who they are, then seek to build a rapport with the customer before disclosing McNeil's identity. Thus, for the initial portion of the conversation, callers are unaware that they are not talking to an Adler representative.

9

In determining that Adler's claims failed, the district court first concluded that Adler's claims were based "solely on the purchase of Plaintiffs' trademarks as keywords for search engine advertising." The court determined that the allegations regarding the bait-and-switch scheme were conclusory and, apparently for that reason, declined to consider them. We disagree and find that Adler made specific factual allegations describing how the use of the Adler marks as keyword terms — combined with generic, unlabeled advertisements and misleading call-center practices — caused initial interest confusion. This pleading included factual matter beyond the mere purchase of trademarks as keywords for search-engine advertising, and the district court should have considered those allegations.

Second, the district court concluded that Adler could not plead a likelihood of confusion as a matter of law because McNeil's advertisements were generic. It is true that the Lanham Act does not protect generic terms against infringement. *See Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*, 210 F.3d 278, 279 (5th Cir. 2000). Adler, though, has not alleged trademark infringement solely on the basis of the generic text of the advertisements. Instead, he has alleged trademark infringement based on McNeil's use of the Adler marks, the ownership and validity of which is not disputed. The generic nature of McNeil's advertisements is relevant because it enhances rather than dispels the likelihood of initial interest confusion.

Third, the district court concluded that Adler's claims fail as a matter of law because McNeil's use of the Adler marks is not visible to the consumer. We find no Fifth Circuit authority for such a rule of law, and we disagree with it. Such a rule would undermine the requirement that, in evaluating whether use of a trademark creates a likelihood of confusion, no single factor is dispositive. *See Xtreme Lashes, LLC*, 576 F.3d at 227.

Evidence Page 116

No. 20-10936

In support of its conclusion that the use of a trademark must be visible to a consumer, the district court[2] relied on *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242–49 (10th Cir. 2013). In that case, though, the Tenth Circuit explicitly avoided deciding whether a Lanham Act claim requires that the use of a trademark be visible to the consumer. The district court in the case had observed that a user who sees sponsored advertisements has no way of knowing whether the defendant reserved a trademark or a generic term. *Id.* at 1242–43. The district court explained that "it would be anomalous to hold a competitor liable simply because it purchased a trademarked keyword when the advertisement generated by the keyword is the exact same from a consumer's perspective as one generated by a generic keyword." *Id.* at 1243.

The Tenth Circuit noted that the argument had "some attraction" but then stated that "if confusion does indeed arise, the advertiser's choice of keyword may make a difference to the infringement analysis even if the consumer cannot discern that choice." *Id.* The Tenth Circuit's reasoning reflects that the absence of the trademark could be one but not the only factor to consider in evaluating the likelihood of confusion. Ultimately, that court concluded that it "need not resolve the matter because 1–800's direct-infringement claim fails for lack of adequate evidence of initial-interest confusion." *Id.*

We conclude that whether an advertisement incorporates a trademark that is visible to the consumer is a relevant but not dispositive factor in determining a likelihood of confusion in search-engine advertising cases.

Adler's complaint contains sufficient factual matter, accepted as true, to state a Lanham Act claim that is plausible on its face. *See Iqbal*, 556 U.S.

---

[2] The discussion of *1-800 Contacts* appears in the magistrate's findings, conclusions, and recommendation, which the district court adopted.

11

at 678.  We express no opinion on the merits of Adler's claims, which would require, among other things, an evaluation of the digits of confusion and any other relevant factors.  *See Xtreme Lashes, LLC*, 576 F.3d at 227.

## II.    *Motion for leave to amend*

Where a district court denies leave to amend on the basis of futility, as the district court did here, we review that decision *de novo*.  *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).

Adler requested leave to amend his complaint to add evidence of actual consumer confusion.  The district court denied the motion for leave to amend, concluding that any amendment would be futile because Adler's claims failed as a matter of law.  In light of our conclusion as to the sufficiency of the current complaint, we VACATE the order denying leave to amend. Whether an amendment is still requested is a decision for Adler, and whether to allow it is for the district court to reconsider.

We REVERSE the order dismissing the complaint under Rule 12(b)(6), VACATE the order denying leave to amend, and REMAND for further proceedings.

Evidence Page 118

*Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov*

| ESTTA Tracking number: | **ESTTA423191** |
|---|---|
| Filing date: | **08/03/2011** |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| Proceeding | 94002464 |
|---|---|
| Party | Applicant<br>Isaacs & Isaacs P.S.C. |
| Correspondence Address | JENNIFER L. KOVALCIK<br>STITES & HARBISON, PLLC<br>400 W MARKET ST STE 1800<br>LOUISVILLE, KY 40202-3352<br>UNITED STATES<br>jkovalcik@stites.com |
| Submission | Other Motions/Papers |
| Filer's Name | Jennifer L. Kovalcik |
| Filer's e-mail | jkovalcik@stites.com, cryan@stites.com, chretienm@gtlaw.com |
| Signature | /jennifer l. kovalcik/ |
| Date | 08/03/2011 |
| Attachments | THE HAMMER Combined Stipulation for Issuance of Concurrent Use Registratino.pdf.pdf ( 15 pages )(608857 bytes )<br>THE HAMMER Exhibits.pdf ( 57 pages )(2440620 bytes ) |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## IN THE TRADEMARK TRIAL AND APPEAL BOARD

Isaacs & Isaacs P.S.C.                          **Concurrent Use Proceeding No.**
                                                      **94002464**
      Applicant

v.

Jim S. Adler, P.C.

      Registrant

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMBINED STIPULATION FOR ISSUANCE OF CONCURRENT USE REGISTRATION AND JOINT MOTION TO DISSOLVE PROCEEDING WITH RESPECT TO U.S. REGISTRATION NUMBERS 3644185 AND 3651822

Applicant, Isaacs & Isaacs P.S.C. ("Isaacs & Isaacs"), and Registrant, Jim S. Adler ("Adler"), submit this stipulation for issuance of a concurrent use registration and joint motion to dissolve the proceeding with respect to U.S. Registration Numbers 3644185 and 3651822. The parties have concurrently used the mark THE HAMMER in their respective geographic markets without any instances of confusion. Moreover, the parties' have entered into a Concurrent Use Agreement and Consent to Registration that: (i) recognizes there is no likelihood of confusion between the parties' respective uses, (ii) divides geographic territories between the parties based on prior use, and (iii) establishes restrictions on each party's use to avoid any consumer confusion. Accordingly, and for the additional reasons set forth herein, the parties respectfully request the Trademark Trial & Appeal Board allow Isaacs & Isaacs' concurrent use application for the mark

- 1 -

THE HAMMER and dissolve the proceedings with respect to U.S. Registration Numbers 3644185 and 3651822.

I.    Background

The history between the parties predates the current proceeding. On August 29, 2005, Isaacs & Isaacs filed a trademark application for THE KENTUCKY HAMMER for legal services. A registration for the mark issued on December 5, 2006. Exhibit 1. Isaacs & Isaacs has used the mark THE KENTUCKY HAMMER in connection with its legal services since at least as early as October 2005. Over time, Isaacs & Isaacs became known as THE HAMMER, a natural short form of its mark, in its region of use, and has used the mark THE HAMMER in Kentucky, Indiana, and Ohio since at least as early as January 2009.

In August 2007, approximately two years after Isaacs & Isaacs' filed its trademark application for THE KENTUCKY HAMMER, Adler filed trademark applications for the marks THE TEXAS HAMMER, HAMMER TIME, HAMMER TV, and THE HAMMER. The U.S. Patent and Trademark Office ("PTO") cited no similar registered or pending marks that would bar registration of Adler's applications for THE TEXAS HAMMER, HAMMER TIME, and HAMMER TV, and registrations issued in due course for these marks. Adler's application for THE HAMMER, however, was refused under Lanham Act §2(d) based on a likelihood of confusion with Isaacs & Isaacs' prior registered trademark THE KENTUCKY HAMMER. Exhibit 2.

Following the refusal to register Adler's application for THE HAMMER, the parties conferred regarding their respective uses of THE HAMMER. The parties determined that they each would limit use of the mark to a non-overlapping geographic territory and that in the substantial length of time of the parties' concurrent use of the

- 2 -

mark, there had been no conflict or evidence of consumer confusion.  Specifically, Isaacs & Isaacs' use of its mark is limited to the States of Indiana and Ohio and the Commonwealth of Kentucky, whereas Adler's use of his mark is largely in Texas and is otherwise limited to the territory outside and exclusive of Isaacs & Isaacs' market.

Accordingly, on November 11, 2009, the parties entered into a Concurrent Use Agreement and Consent to Registration.  Exhibit 3 ("Concurrent Use Agreement" or "Agreement").  The Concurrent Use Agreement sets forth the parties' understanding that there is no likelihood of confusion between the parties' respective uses because of, *inter alia*, the geographic remoteness of their use of the mark and the length of time of concurrent use without conflict or confusion.  Further, the Agreement restricts each party's geographic use of the mark based on its prior use and establishes restrictions to avoid any consumer confusion.

Following execution of the Concurrent Use Agreement and pursuant to the terms therein, Adler continued to prosecute his application for THE HAMMER, for which he had filed an ex parte appeal with the Trademark Trial and Appeal Board ("TTAB").  Adler filed a Request for Remand and Amendment to Seek Concurrent Use Registration of the mark THE HAMMER with Isaacs and Isaacs.  *See* Exhibit 4.  Adler's request noted an exception to his exclusive right to use the mark THE HAMMER, specifically identifying Isaacs & Isaacs' use of the mark THE HAMMER for legal services in Indiana, Kentucky, and Ohio since at least as early as January 2009.  Accordingly, Adler requested to amend his application to a Concurrent Use Application limited to the territory outside and exclusive of Isaacs & Isaacs' territory of Indiana, Kentucky, and Ohio.

- 3 -

The TTAB granted Adler's request to remand the application, and the PTO then accepted Adler's request to amend the application to a Concurrent Use Application, withdrawing the likelihood of confusion refusal based on Isaacs & Isaacs' prior registration for THE KENTUCKY HAMMER. *See* Exhibit 5, April 25, 2009 Office Action, and Exhibit 6, August 17, 2009 Amendment And Response.

About the same time, Isaacs & Isaacs filed its own Concurrent Use Application for the mark THE HAMMER, limited to its exclusive territory comprised of Indiana, Kentucky, and Ohio, and identifying Adler's right to use the mark THE HAMMER in the states outside and exclusive of Indiana, Kentucky, and Ohio. The PTO issued an Office Action citing Adler's then-pending trademark applications for THE HAMMER, HAMMER TIME, and HAMMER TV against Isaacs & Isaacs' application. In response, Isaacs & Isaacs cited its Concurrent Use Agreement with Adler in support of Isaacs & Isaacs' concurrent use application. Separately, Isaacs & Isaacs argued against the refusal to register with respect to Adler's applications for HAMMER TIME and HAMMER TV and requested withdrawal because there was no likelihood of confusion between these marks. Notably, Isaacs & Isaacs' prior registration for THE KENTUCKY HAMMER was not cited against either of Adler's applications for HAMMER TIME and HAMMER TV. Moreover, Isaacs & Isaacs submitted Adler's specific consent to registration of Isaacs & Isaacs' mark THE HAMMER over Adler's marks HAMMER TIME and HAMMER TV. This consent detailed the parties' mutual belief and understanding that there was no likelihood of confusion from the use of their respective marks.

This Concurrent Use proceeding followed on October 2, 2010, regarding Isaacs & Isaacs' application for the mark THE HAMMER and Adler's registration for the mark

Evidence Page 123

THE HAMMER.  However, Adler's registrations for the marks HAMMER TIME and HAMMER TV were also included in the proceeding by the Interlocutory Attorney. Although already aware of the prosecution of Isaacs & Isaacs' application, Adler was provided notice of the proceeding as well as Isaacs & Isaacs' application, mark drawing, and specimens.  On November 11, 2010, Adler submitted a statement under Trademark Rule 2.99 consenting to Isaacs & Isaacs' concurrent use of the mark THE HAMMER and citing the parties' existing Concurrent Use Agreement.  Adler further submitted that his registrations for HAMMER TIME and HAMMER TV should not be included in the concurrent use proceeding and requested that these registrations be removed from the proceeding.  Adler separately stated his consent to registration of the mark over the latter registrations.  Isaacs & Isaacs supported and did not object to this statement.

On May 17, 2011, after numerous phone calls between counsel and the Interlocutory Attorney seeking clarification of what would be further required to resolve this matter and approve Isaacs & Isaacs' application for concurrent registration, the parties participated in a telephone conference with the Interlocutory Attorney regarding the status of the proceeding and the parties' desire to settle this matter.  On May 18, 2011, the proceeding was suspended to allow the parties to: (i) jointly submit their Concurrent Use Agreement and settle this matter with respect to the Adler registration for THE HAMMER and (ii) jointly move to dissolve the proceeding with respect to the Adler registrations for HAMMER TIME and HAMMER TV.

The parties now submit again their Concurrent Use Agreement and stipulate to the concurrent use registrations of the mark THE HAMMER by Adler and Isaacs & Isaacs. Further, the parties' jointly move to dissolve the proceeding with respect to the

- 5 -

HAMMER TIME and HAMMER TV registrations which neither party understands to be at issue or to pose a likelihood of confusion. Additionally, to further clarify this matter and comply with the parties' Concurrent Use Agreement, Adler submits herewith a motion to amend his registration for THE HAMMER to reflect the parties' concurrent use and the geographic restrictions on Adler's use of the mark. Although Adler previously requested amendment of his registration, the Certificate of Registration does not display the geographic restrictions.

II.   The Parties Stipulate to Issuance of Concurrent Use Registrations for the mark THE HAMMER

    A.   Legal Standard

Concurrent use proceedings are governed by Section 2(d) of the Lanham Act. Section 2(d) provides that where, as here, the owner of a registration consents to the grant of a concurrent registration to the applicant, then concurrent registrations may be issued if "confusion, mistake, or deception is not likely to result from the continued use" of the marks by the parties. 15 U.S.C. § 1052(d). In issuing concurrent registrations, conditions and limitations are prescribed as to the mode or place of use of the mark or the goods on or in connection with which such mark is registered. *Id.*

In assessing the likelihood of confusion, several factors are important. *Amalgamated Bank of New York v. Amalgamated Trust & Savings Bank*, 842 F.2d 1270, 1273 (Fed. Cir. 1988)(citing *In re E.I. Du Pont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973)). Among the relevant factors here are (i) the geographic restrictions on each party's use of its mark, (ii) the strength of the marks, (iii) the substantial length of time during which there has been concurrent use by the parties without evidence of actual confusion, and perhaps most importantly, (iv) the parties' agreement recognizing there is

- 6 -

no likelihood of confusion and establishing restrictions to avoid any such confusion. *See Du Pont*, 476 F.2d at 1361. Each of these factors weighs against any likelihood of confusion from the parties' continued use of their marks and supports concurrent registration of the marks.

      B.    <u>The Parties Agree There is No Likelihood of Confusion From the Continued Concurrent Use of the Marks</u>

      The parties entered into a Concurrent Use Agreement which recognizes that there is no likelihood of confusion from the parties' concurrent use of the mark THE HAMMER and further establishes various restrictions on each party's use of its mark in order to avoid potential confusion. *See* Exhibit 3. The parties agreement to such limitations on continued use of the mark to avoid confusion is one of the most pivotal factors to consider in evaluating the likelihood of confusion. *Amalgamated Bank of New York*, 842 F.2d at 1273. The Federal Circuit, and other courts, have emphasized that agreements between parties designed to avoid confusion should be given ***substantial*** weight in evaluating the likelihood of confusion. *Id.*

> The weight to be given more detailed agreements of the type presented here should be substantial. It can be safely taken as fundamental that reputable businessmen-users of valuable trademarks have no interest in causing public confusion. …
> Thus when those most familiar with use in the marketplace and most interested in precluding confusion enter agreements designed to avoid it, the scales of evidence are clearly tilted. It is at least difficult to maintain a subjective view that confusion will occur when those directly concerned say it won't. A mere assumption that confusion is likely will rarely prevail against uncontroverted evidence from those on the firing line that it is not.

*Du Pont*, 476 F.2d at 1362-63; *see also Amalgamated Bank of New York*, 842 F.2d at 1273-75 (holding a detailed agreement "would necessitate according substantial weight to the views expressed by the parties"); *Bongrain Int'l Corp. v. Delice de France Inc.*, 811

- 7 -

F.2d 1479, 1484-85 (Fed. Cir. 1987)("[The parties] are in a much better position to know the real life situation than bureaucrats or judges and therefore such agreements may, depending on the circumstances, carry great weight, as was held in *DuPont*."); *Beatrice Foods*, 429 F.2d at 1311 ("[T]here can be no better assurance of the absence of any likelihood of confusion, mistake or deception than the parties' promises to avoid any activity which might lead to such likelihood.").

The Concurrent Use Agreement provides that each party is geographically restricted in the use of its mark to a distinct territory. *See* Exhibit 3 at ¶ 7. Namely, Isaacs & Isaacs is restricted to use of the mark THE HAMMER in the territory comprising the States of Indiana and Ohio and the Commonwealth of Kentucky where Isaacs & Isaacs also uses the mark THE KENTUCKY HAMMER; whereas Adler, primarily located in Texas where Adler uses the mark THE TEXAS HAMMER, is restricted to use of the mark in the territory outside and exclusive of Isaacs & Isaacs' territory. Moreover, the agreement provides neither party shall use the mark in any manner specifically directed to consumers located within the other party's territory and to the extent a party's advertising methods result in "spillover," that party shall make reasonable efforts to avoid any likelihood of confusion by such advertising, including, for example, by using geographically descriptive terms in association with the mark and issuing disclaimers of association with the other party. *Id.*

These are the exact types of provisions that the Federal Circuit and its predecessor court have held to carry substantial weight in establishing there is no likelihood of confusion between the parties' concurrent use. *E.g.*, *Dupont*, 476 F.2d at 1363 (according substantial weight to the parties' agreement which restricted each party to its

- 8 -

respective market); *Amalgamated Bank of New York*, 842 F.2d at 1274 (according substantial weight to the parties' consent agreement which delineated the markets in which each party's mark would function). The parties are in the best position to evaluate the marketplace and have determined there is no likelihood of confusion from their concurrent use of the mark in their respective geographic territories and have further agreed to restrictions to avoid any such confusion in the future. *See Dupont*, 476 F.2d at 1362-63. Accordingly, "confusion, mistake, or deception is not likely to result from the continued use" of the mark by the parties and concurrent registrations for the mark may be issued with the parties' agreed geographic territory restrictions. 15 U.S.C. § 1052(d).

C.     The Parties Operate in Different Geographic Markets

The differences in the parties' trade channels, namely, the parties' non-overlapping geographic markets, is a relevant factor weighing against any likelihood of confusion. *Dupont*, 476 F.2d at 1361. The parties have concurrently used the mark THE HAMMER in their respective geographic markets for a number of years without overlapping use or conflict or confusion.

Isaacs & Isaacs' use of its mark is limited to Indiana, Kentucky, and Ohio. Isaacs & Isaacs began using its registered mark THE KENTUCKY HAMMER in these geographic markets at least as early as October 2005. It became known by the short form THE HAMMER in these markets and began using THE HAMMER at least as early as January 2009.

Adler's use of his mark is limited to the territory outside and exclusive of Isaacs & Isaacs' market. Adler began using his registered mark THE TEXAS HAMMER, largely in the Texas market, at least as early as August 2002. *See* Exhibit 7, U.S. Trademark Reg. No. 3,503,851. At least as early as March 2009, Adler began using the

- 9 -

short form THE HAMMER, still largely in Texas and outside and exclusive of the geographic territories of Isaacs & Isaacs' use.

The remoteness of the parties' geographic markets is particularly relevant in light of the nature of the parties' services, namely, legal services. Consumers typically seek and obtain legal services in their geographic market. Thus, consumers located in Texas are likely to obtain legal services in Texas, whereas consumers located in Kentucky are likely to obtain legal services in Kentucky. Thus, the parties' remote geographic markets make consumer confusion highly unlikely.

The Concurrent Use Agreement memorializes the geographic restrictions of each party's use and provides that each party shall continue to geographically restrict its use of the mark thereby continuing to avoid any consumer confusion. The explicit restrictions on the parties' geographic use of the mark preclude any likelihood of confusion and support concurrent use registration by Isaacs & Isaacs and Adler consistent with Adler's existing concurrent use registration.

D.    The Parties' Have Used the Marks Concurrently Without Confusion

Finally, as recognized in the Concurrent Use Agreement, each party has made use of the mark THE HAMMER in its respective territory for years without any conflict or evidence of consumer confusion. This substantial length of concurrent use without confusion indicates there is no likelihood of confusion from the parties' continued concurrent use and supports concurrent registration of Applicant's mark. *See Dupont*, 476 F.2d at 1361.

E.    Concurrent Use Registration is Warranted

The parties' have entered into a Concurrent Use Agreement and Consent to Registration that: (i) recognizes there is no likelihood of confusion between the parties'

- 10 -

use of the mark, (ii) divides geographic territories between the parties based on prior use, and (iii) establishes restrictions on each party's use to avoid any consumer confusion. Further, the parties have concurrently used the mark THE HAMMER in their respective geographic markets for years without conflict or confusion. For all of these reasons, the parties maintain there is no likelihood of confusion from their concurrent use of the mark THE HAMMER and stipulate to the issuance of a concurrent use registration to Isaacs & Isaacs for the mark limited to use in Indiana, Kentucky, and Ohio.

III.    Joint Motion to Dissolve the Proceeding With Respect to HAMMER TIME and HAMMER TV

Isaacs & Isaacs filed its application for THE HAMMER as a concurrent use application only with respect to Adler's mark THE HAMMER, and the parties' stipulate to and request concurrent use registration of this mark as set forth above. Adler's other marks, HAMMER TIME and HAMMER TV, were cited against Isaacs & Isaacs' application and then unilaterally inserted into this concurrent use proceeding without request by either party. The parties agree that the marks HAMMER TIME and HAMMER TV are not at issue in this concurrent use proceeding. Adler already requested these marks be removed from the proceeding in his statement filed November 11, 2010 under Trademark Rule 2.99. The parties now jointly move to dissolve the proceeding with respect to HAMMER TIME and HAMMER TV.

Isaacs & Isaacs' mark THE HAMMER is sufficiently dissimilar in sound, connotation, appearance, and commercial impression to avoid consumer confusion with Adler's registered marks HAMMER TIME and HAMMER TV. Thus, these marks are not likely to cause consumer confusion and do not need to be subject to concurrent use registrations. Isaacs & Isaacs has used the mark THE HAMMER since at least as early

- 11 -

as January 2009, and Adler has used the mark HAMMER TIME since at least as early as April 2009, and HAMMER TV since at least as early as March 2009, all without conflict or confusion. Adler executed a Consent to Registration (separate from the parties' Concurrent Use Agreement) that states the parties mutual agreement and belief that no appreciable likelihood of confusion exists between Isaacs & Isaacs' mark THE HAMMER and Adler's HAMMER TIME and HAMMER TV marks, and further stated Adler's consent to registration of Isaacs & Isaacs' mark. *See* Exhibit 8. All of these factors weigh against any likelihood of confusion between these marks. *See In re E.I. Du Pont de Nemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973).

Moreover, other marks incorporating the term "HAMMER" are registered for similar legal services and are already in use and co-exist with the registered marks without confusion—further evidence warranting dissolution of this proceeding with respect to the registered marks HAMMER TIME and HAMMER TV. Consumers are not likely to be confused between Applicant's mark THE HAMMER and Registrant's marks HAMMER TIME and HAMMER TV. *See, e.g.*, TMEP 1207.01(d)(iii) (quoting *Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee en 1772*, 73 USPQ2D 1689 (Fed Cir. 2005); J. THOMAS MCCARTHY, 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §23:48 (4th ed. 2010); *see also* TMEP 1207.01(b)(ix).

Among the other registered "HAMMER" marks for legal services is Applicant Isaacs & Isaacs' own trademark registration for THE KENTUCKY HAMMER (U.S. Reg. No. 3180035). Exhibit 1. Isaacs & Isaacs' registration for THE KENTUCKY HAMMER issued on December 5, 2006, years prior to the use or registration of Registrant Adler's HAMMER TIME and HAMMER TV marks. Notably, Applicant

- 12 -

Isaacs & Isaacs' registration for THE KENTUCKY HAMMER was not cited by the PTO against Registrant Adler's applications for HAMMER TIME and HAMMER TV during prosecution of those applications and these marks registered over Applicant Isaacs & Isaacs' prior registration. Similarly here, there is no likelihood of confusion between these marks and Applicant Isaacs & Isaacs' mark THE HAMMER.

In addition, there is a registered trademark for GOOD HAMMER for legal services (U.S. Trademark Registration No. 3786310, Exhibit 9). The application for GOOD HAMMER was filed prior to the parties' applications for THE HAMMER and Adler's applications for HAMMER TIME, HAMMER TV, and THE TEXAS HAMMER, but the GOOD HAMMER mark was not cited against any of the later-filed applications. There is also a recently filed in-use application for THE VELVET HAMMER for legal consultation services (U.S. App. Serial No. 85294029, attached as Exhibit 10, together with printouts from the owner's website).

In light of the additional existing uses of the term "HAMMER" for marks used in connection with legal services, consumers are capable of distinguishing between the applied-for mark and the registered marks HAMMER TIME and HAMMER TV. Maintaining these registrations in this concurrent use proceeding would be inconsistent with the pre-existing "HAMMER" marks for legal services which currently co-exist without need for concurrent use registrations.

The parties agree that the registrations for HAMMER TIME and HAMMER TV are not at issue in the concurrent use proceeding and furthermore do not pose a likelihood of confusion with Isaacs & Isaacs' pending application for THE HAMMER for legal services. *See* Adler's Statement Under Trademark Rule 2.99 requesting registrations for

- 13 -

HAMMER TIME AND HAMMER TV be removed from this concurrent use proceeding and separately noting his consent to registration of Isaacs & Isaacs THE HAMMER mark over the registered marks . The marks are dissimilar in appearance, sound, connotation, and commercial impression and as such, are not subject to a concurrent use proceeding and are not likely to cause consumer confusion.  Accordingly, the parties move to dissolve the proceeding with respect to U.S. Registration Numbers 3644185 for HAMMER TIME and 3651822 for HAMMER TV.

IV.     <u>Conclusion</u>

For all of the foregoing reasons, the parties respectfully request dissolution of the proceedings with respect to U.S. Trademark Registration Numbers 3644185 and 3651822 and issuance of a concurrent use registration to Isaacs & Isaacs for the mark THE HAMMER.

- 14 -

Respectfully submitted jointly by:

By: s/ markgchretien/                        By: s/ jennifer l. kovalcik/
    Ben D. Tobor                              Jennifer L. Kovalcik
    Mark G. Chretien                          STITES & HARBISON PLLC
    GREENBERG TRAURIG LLP                      400 West Market Street,
    1000 Louisiana Street, Suite 1700         Suite 1800
    Houston, Texas  77002                     Louisville, Kentucky 40202
    Tel: 713-374-3528                         Tel:  502-587-3400
    Fax:  713-754-7528                        Fax: 502-587-6391
    Email:  cretianm@gtlaw.com                Email: jkovalcik@stites.com

    **Attorneys for Registrant**              **Attorney for Applicant**


## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2011 a copy of the foregoing COMBINED STIPULATION FOR ISSUANCE OF CONCURRENT USE REGISTRATION AND MOTION TO DISSOLVE PROCEEDING WITH RESPECT TO U.S. REGISTRATION NUMBERS 3644185 AND 3651822 was filed electronically with the Board and served on counsel for Registrant, electronically per agreement to:

Ben D. Tobor
Mark G. Chretien
Greenberg Traurig LLP
1000 Louisiana Street, Suite 1700
Houston, Texas  77002

                s/ Jennifer L. Kovalcik
                Jennifer L. Kovalcik

Evidence Page 134

# EXHIBIT 1

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

## United States Patent and Trademark Office

Reg. No. 3,180,035
Registered Dec. 5, 2006

### SERVICE MARK
### PRINCIPAL REGISTER

## THE KENTUCKY HAMMER

ISAACS & ISAACS P.S.C. (KENTUCKY COR-
PORATION)

900 CHEROKEE ROAD

LOUISVILLE, KY 40204

FOR: LEGAL SERVICES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 10-3-2005; IN COMMERCE 10-3-2005.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "KENTUCKY", APART FROM
THE MARK AS SHOWN.

SER. NO. 78-702,310, FILED 8-29-2005.

EDWARD NELSON, EXAMINING ATTORNEY

# EXHIBIT 2

| | |
|---|---|
| **To:** | Jim S. Adler, P.C. (laipmail@gtlaw.com) |
| **Subject:** | TRADEMARK APPLICATION NO. 77245818 - THE HAMMER - 104311.01090 |
| **Sent:** | 11/16/2007 4:43:52 PM |
| **Sent As:** | ECOM114@USPTO.GOV |
| **Attachments:** | |

# UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO:**     77/245818

**MARK:** THE HAMMER

**CORRESPONDENT ADDRESS:**
    BEN D. TOBOR
    GREENBERG TRAURIG LLP
    1000 LOUISIANA ST STE 1800
    HOUSTON, TX 77002-5018

# *77245818*

**RESPOND TO THIS ACTION:**
**http://www.uspto.gov/teas/eTEASpageD.htm**

**GENERAL TRADEMARK INFORMATION:**
**http://www.uspto.gov/main/trademarks.htm**

**APPLICANT:**     Jim S. Adler, P.C.

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
    104311.01090
**CORRESPONDENT E-MAIL ADDRESS:**
    laipmail@gtlaw.com

## OFFICE ACTION

TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE ISSUE/MAILING DATE.

**ISSUE/MAILING DATE: 11/16/2007**

The assigned examining attorney has reviewed the referenced application and determined the following.

### Section 2(d) - Likelihood of Confusion Refusal

Registration of the proposed mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 3180035. Trademark Act Section 2(d), 15 U.S.C. §1052(d); TMEP §§1207.01 *et seq.* See the enclosed registration.

Trademark Act Section 2(d) bars registration where an applied-for mark so resembles a registered mark that it is likely, when applied to the goods and/or services, to cause confusion, mistake or to deceive the potential consumer as to the source of the goods and/or services. TMEP §1207.01. The Court in *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973), listed the principal factors to consider in determining whether there is a likelihood of confusion. Among these factors are the similarity of the marks as to appearance, sound, meaning and commercial impression, and the relatedness of the goods and/or services. The overriding concern is to prevent buyer confusion as to the source of the goods and/or services. *In re Shell Oil Co.,* 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt as to the existence of a likelihood of confusion must be resolved in favor of the registrant. *In re Hyper Shoppes (Ohio), Inc.,* 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir. 1988); *Lone Star Mfg. Co. v. Bill Beasley, Inc.,* 498 F.2d 906, 182 USPQ 368 (C.C.P.A. 1974).

Each mark is used with legal services. Therefore the likelihood of confusion analysis focuses on the marks. If the goods or services of the respective parties are closely related, the degree of similarity between marks required to support a finding of likelihood of confusion is not as great as would apply with diverse goods or services. *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 877, 23 USPQ2d 1698, 1701 (Fed. Cir. 1992), *cert. denied* 506 U.S. 1034 (1992); *In re J.M. Originals Inc.,* 6 USPQ2d 1393 (TTAB 1987); *ECI Division of E-Systems, Inc. v. Environmental Communications Inc.,* 207 USPQ 443 (TTAB 1980); TMEP §1207.01(b).

Applicant is attempting to register THE HAMMER. The mark THE KENTUCKY HAMMER is registered. The marks are nearly the same in terms of sound, meaning, appearance and overall commercial impression by nature of the shared core phrase THE HAMMER. In essence applicant's mark merely omits the disclaimed geographically descriptive term KENTUCKY. Consumers of the services are likely to perceive applicant's mark as the short form of THE HAMMER. This in conjunction with use of the marks on the same services is likely to lead to consumer confusion or mistake as to the source of the services.

If applicant chooses to respond to the refusal(s) to register, then applicant must also respond to the following requirement(s).

**Classification**

The services are classified incorrectly. Applicant must amend the application to classify the services in International Class 45. 37 C.F.R. §§2.32 (a)(7) and 2.85; TMEP §§1401.02(a) and 1401.03(b).

Although the trademark examining attorney has refused registration, applicant may respond to the refusal to register by submitting evidence and arguments in support of registration.

If applicant has questions about its application or needs assistance in responding to this Office action, please telephone the assigned trademark examining attorney directly at the number below.

/Mark Rademacher/
Examining Attorney
Law Office 114
Trademarks
United States Patent and Trademark Office
Ph: (571) 272-9723

**RESPOND TO THIS ACTION:** If there are any questions about the Office action, please contact the

assigned examining attorney. A response to this Office action should be filed using the form available at http://www.uspto.gov/teas/eTEASpageD.htm. If notification of this Office action was received via e-mail, no response using this form may be filed for 72 hours after receipt of the notification. **Do not attempt to respond by e-mail as the USPTO does not accept e-mailed responses**.

If responding by paper mail, please include the following information: the application serial number, the mark, the filing date and the name, title/position, telephone number and e-mail address of the person signing the response. Please use the following address: Commissioner for Trademarks, P.O. Box 1451, Alexandria, VA 22313-1451.

**STATUS CHECK:** Check the status of the application at least once every six months from the initial filing date using the USPTO Trademark Applications and Registrations Retrieval (TARR) online system at http://tarr.uspto.gov. When conducting an online status check, print and maintain a copy of the complete TARR screen. If the status of your application has not changed for more than six months, please contact the assigned examining attorney.

| To: | Jim S. Adler, P.C. (taipmail@gtlaw.com) |
|-----|------------------------------------------|
| Subject: | TRADEMARK APPLICATION NO. 77245818 - THE HAMMER - 104311.01090 |
| Sent: | 11/16/2007 4:43:54 PM |
| Sent As: | ECOM114@USPTO.GOV |
| Attachments: | |

# IMPORTANT NOTICE
## USPTO OFFICE ACTION HAS ISSUED ON 11/16/2007 FOR APPLICATION SERIAL NO. 77245818

Please follow the instructions below to continue the prosecution of your application:

**VIEW OFFICE ACTION:** Click on this link **http://portal.uspto.gov/external/portal/tow?DDA=Y&serial_number=77245818&doc_type=OOA&ma** (or copy and paste this URL into the address field of your browser), or visit **http://portal.uspto.gov/external/portal/tow** and enter the application serial number to **access** the Office action.

**PLEASE NOTE:** The Office action may not be immediately available but will be viewable within 24 hours of this notification.

**RESPONSE MAY BE REQUIRED:** You should carefully review the Office action to determine (1) if a response is required; (2) how to respond; and (3) the applicable **response time period**. Your response deadline will be calculated from 11/16/2007.

**Do NOT hit "Reply" to this e-mail notification, or otherwise attempt to e-mail your response, as the USPTO does NOT accept e-mailed responses. Instead, the USPTO recommends that you respond online using the Trademark Electronic Application System response form at http://www.uspto.gov/teas/eTEASpageD.htm.**

**HELP:** For *technical* assistance in accessing the Office action, please e-mail **TDR@uspto.gov**. Please contact the assigned examining attorney with questions about the Office action.

# WARNING
## 1. The USPTO will NOT send a separate e-mail with the Office action attached.

## 2. Failure to file any required response by the applicable deadline will result in the ABANDONMENT of your application.

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2011-07-05 12:17:29 ET

**Serial Number:** 77257396 Assignment Information          Trademark Document Retrieval

**Registration Number:** 3503851

**Mark**

# THE TEXAS HAMMER

**(words only):** THE TEXAS HAMMER

**Standard Character claim:** Yes

**Current Status:** Registered. The registration date is used to determine when post-registration maintenance documents are due.

**Date of Status:** 2008-09-23

**Filing Date:** 2007-08-16

**Transformed into a National Application:** No

**Registration Date:** 2008-09-23

**Register:** Principal

**Law Office Assigned:** LAW OFFICE 114

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 650 -Publication And Issue Section

**Date In Location:** 2008-09-23

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Jim S. Adler, P.C.

**Address:**
Jim S. Adler, P.C.
1900 West Loop South, 20th Floor
Houston, TX 770273214
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Texas

---

## GOODS AND/OR SERVICES

**International Class:** 045
**Class Status:** Active
Legal services
**Basis:** 1(a)
**First Use Date:** 2002-08-02
**First Use in Commerce Date:** 2002-08-02

---

## ADDITIONAL INFORMATION

**Disclaimer:** "TEXAS"

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

**NOTE: To view any document referenced below, click on the link to "Trademark Document Retrieval" shown near the top of this page.**

2008-09-23 - Registered - Principal Register

2008-07-08 - Published for opposition

2008-06-18 - Notice of publication

2008-06-05 - Law Office Publication Review Completed

2008-06-05 - Assigned To LIE

2008-06-05 - Approved for Pub - Principal Register (Initial exam)

2008-05-19 - Teas/Email Correspondence Entered

2008-05-19 - Communication received from applicant

Evidence Page 143
7/5/2011 12:20 PM

2008-05-19 - TEAS Response to Office Action Received

2007-11-19 - Non-final action mailed

2007-11-16 - Non-Final Action Written

2007-11-07 - Assigned To Examiner

2007-08-21 - New Application Entered In Tram

---

## ATTORNEY/CORRESPONDENT INFORMATION

**Attorney of Record**
Ben D. Tobor

**Correspondent**
BEN D. TOBOR
GREENBERG TRAURIG LLP
1000 LOUISIANA ST STE 1800
HOUSTON, TX 77002-5018
Phone Number: 713-374-3568

---

# EXHIBIT 3

## CONCURRENT USE AGREEMENT
## AND CONSENT TO REGISTRATION

THIS AGREEMENT is by and between Jim S. Adler, P.C., a corporation of Texas, having its principal place of business at 1900 West Loop South, 20th Floor, Houston, Texas, 77027-3214 (hereinafter "Jim Adler"), and Isaacs & Isaacs P.S.C., a corporation of Kentucky, with its principal place of business at 900 Cherokee Road Louisville, Kentucky 40204(hereinafter "Isaacs & Isaacs") (each a "Party" and together the "Parties");

WHEREAS, Isaacs & Isaacs is the owner of U.S. Registration No. 3,180,035 for the mark THE KENTUCKY HAMMER for "legal services" (the "Isaacs & Isaacs Registration");

WHEREAS, Jim Adler is the owner of U.S. Registration No. 3,503,851 for the mark THE TEXAS HAMMER and U.S. Application Serial No. 78/245,818 for the mark THE HAMMER, both for use in connection with "legal services" (the "Jim Adler Registration" and the "Jim Adler Application" respectively);

WHEREAS, Isaacs & Isaacs provides legal services in the territory comprising the States of Indiana and Ohio and the Commonwealth of Kentucky (the "Isaacs & Isaacs Territory");

WHEREAS, Jim Adler provides legal services in the territory comprising the forty-seven (47) States outside and exclusive of the Isaacs & Isaacs Territory (the "Jim Adler Territory");

WHEREAS, Jim Adler and Isaacs & Isaacs have each used the mark THE HAMMER for some time in their respective territories, without conflict or confusion, in

connection with the promotion of their respective legal services, and have acquired goodwill in the mark THE HAMMER in their respective territories;

WHEREAS, the Parties are sophisticated in the marketing of the respective services, and desirous of avoiding confusion of the public as to the source of the services provided in connection with the respective marks in the respective territories;

WHEREAS Jim Adler and Isaacs & Isaacs each wish to continue to use the mark THE HAMMER in connection with their respective services in the respective territories, in a manner calculated to avoid any appreciable likelihood of confusion, and each wishes to obtain federal registration of its mark under the Lanham Act;

NOW, THEREFORE, in view of the premises and of the mutual covenants expressed hereinafter, IT IS HEREBY AGREED by and between the parties as follows:

1. Jim Adler agrees that Isaacs & Isaacs has the exclusive right to use the mark THE KENTUCKY HAMMER throughout the United States in connection with the services listed in the Isaacs & Isaacs Registration.

2. Jim Adler hereby consents to the use and registration by Isaacs & Isaacs of the mark THE KENTUCKY HAMMER in connection with the services listed in the Isaacs & Isaacs Registration and agrees that it will not petition to cancel the Isaacs & Isaacs Registration.

3. Isaacs & Isaacs agrees that Jim Adler has the exclusive right to use the mark THE TEXAS HAMMER throughout the United States in connection with the services listed in the Jim Adler Registration.

-2-

4.    Isaacs & Isaacs hereby consents to the use and registration by Jim Adler of the mark THE TEXAS HAMMER in connection with the services listed in the Jim Adler Registration and agrees that it will not petition to cancel the Jim Adler Registration.

5.    Jim Adler agrees that, as between the parties, Isaacs & Isaacs has the exclusive right to use the mark THE HAMMER in the Isaacs & Isaacs Territory in connection with providing legal services.

6.    Isaacs & Isaacs agrees that, as between the parties, Jim Adler has the exclusive right to use the mark THE HAMMER in the Jim Adler Territory in connection with providing legal services.

7.    Neither Party shall use the mark THE HAMMER in the other Party's respective territory, except in the event that a Party's advertising using the mark THE HAMMER is disseminated by means that do not allow that Party to limit dissemination to its respective territory, such as advertising in national editions of magazines, newspapers, the Internet, or television broadcasts; or advertising on broadcast stations based in the respective territory but whose signal may reach persons outside the respective territory.  Notwithstanding, in no event shall either Party be permitted to use the mark THE HAMMER in any manner, including but not limited to the Internet or printed publications, specifically directed to consumers located within the other Party's respective territory.  Party using advertising methods with any permissible "spillover" shall make reasonable efforts to avoid the likelihood of confusion caused by such advertising.  Such efforts may include, without limitation, the use of geographically descriptive terms in association with the mark, disclaimers of association with the other Party, or any other commercially reasonable means.  The Parties agree that if any

-3-

confusion does arise, they will take immediate and effective steps to alleviate said confusion or any further likelihood thereof.

8.    Each Party consents to the concurrent use and registration of the mark THE HAMMER by the other Party as set forth above, under the conditions set forth above, and agrees that it will neither oppose the other's application to register THE HAMMER with the United States Patent and Trademark Office, nor petition to cancel any registration resulting therefrom if such application or registration is compliant herewith.

9.    Jim Adler agrees to amend the Jim Adler Application to seek a Concurrent Use Registration restricted to the Jim Adler Territory in accordance with the terms of this Agreement.    Such request shall identify Isaacs & Isaacs by setting forth its name and address, and identifying its proposed application, its geographic area of use, the services with which its mark is used, the mode of use, and the periods of use, pursuant to 37 CFR §2.42.

10.    Isaacs & Isaacs agrees that any application it files to register the mark THE HAMMER shall be a Concurrent Use Application restricted to the Isaacs & Isaacs Territory in accordance with the terms of this Agreement.    Such request shall identify Jim Adler by setting forth its name and address, and identifying the Jim Adler Application, its geographic area of use, the services with which its mark is used, the mode of use, and the periods of use, pursuant to 37 CFR §2.42.

11.    Based upon the foregoing, the Parties agree and conclude that no appreciable likelihood of confusion will be caused by their respective use of the Mark THE HAMMER under the terms and conditions set forth above, and that each Party is to

-4-

enjoy the full benefit of the right to use and enforce the Mark THE HAMMER within its own respective territory.

12.    Should the United States Patent & Trademark Office and/or the Trademark Trial and Appeal Board reject this Agreement, reject either Party's Application or amendment thereto, or require further documentation from either Party, and so long as such deficiencies can be corrected without altering the general purposes and substance of this Agreement, each Party agrees to execute and provide to the other Party any such further needed documentation.

13.    This Agreement is binding upon and inures to the benefit of any successors and assignees of the Parties.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement as of the respective dates shown below.

| ISAACS & ISAACS, P.S.C. | JIM S. ADLER, P.C. |
|---|---|
| By: _____ | By: _____ |
| Name: Daryl Isaacs | Name: JIM S. ADLER |
| Title: VP | Title: ATTORNEY |
| Date: 3-6-09 | Date: 3-20-09 |

-5-

Evidence Page 150

# EXHIBIT 4

**TTAB**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
TRADEMARK TRIAL AND APPEAL BOARD

| | | |
|---|---|---|
| Mark: | THE HAMMER | ) |
| | | ) |
| | | ) Trademark Examining Attorney: |
| | | ) Mark Rademacher |
| Applicant: | Jim S. Adler, P.C. | ) |
| | | ) Law Office: 114 |
| Serial No.: | 77/245,818 | ) |
| | | ) |
| Filed: | August 2, 2007 | ) Attorney Docket No.: |
| | | 104311.010900 |

## REQUEST FOR REMAND AND AMENDMENT TO SEEK CONCURRENT USE REGISTRATION

Commissioner for Trademarks
P. O. Box 1451
Alexandria, Virginia 22313-1451

<table>
<tr><td colspan="2" align="center"><b>CERTIFICATE OF MAILING</b><br>37 C.F.R. § 1.8</td></tr>
<tr><td colspan="2">I hereby certify that this correspondence is being deposited with the U.S. Postal Service, First Class Postage prepaid, the envelope addressed to: Commissioner for Trademarks, P. O. Box 1451, Alexandria, Virginia 22313-1451, on the date below.</td></tr>
<tr><td>3-23-09<br>Date</td><td><i>Linda Guice</i><br>Linda Guice</td></tr>
</table>

Dear Madame:

Applicant Jim S. Adler, P.C. (hereinafter "Applicant") hereby submits this Request For Remand and Amendment to Seek Concurrent Use Registration (the "Request") in connection with the above indicated application.

**03-25-2009**

U S Patent & TMOfce/TM Mail Rcpt Dt #32

*HOU 406,602,156v1*

## AMENDMENT

Please amend the present application to a Concurrent Use application.

An exception to Applicant's right to exclusive use is as follows:

Isaacs & Isaacs P.S.C., a corporation of Kentucky, with its principal place of business at 900 Cherokee Road Louisville, Kentucky 40204, who, to Applicant's knowledge, alleges to be using the mark THE HAMMER in interstate commerce to advertise legal services in class 42, and specifically in the following geographic regions of use:  the States of Indiana and Ohio and the Commonwealth of Kentucky, from at least as early as January 9, 2009, and for which no application for federal registration has been filed as of the date hereof.

Applicant Jim S. Adler, P.C.'s area of exclusive use shall be the following:  the forty-seven (47) States outside and exclusive of Kentucky, Indiana and Ohio.

No one else except as specified in the application has the right to use the mark.

## REMARKS

Applicant is requesting suspension of the present appeal and remand of this case to the Trademark Examining Attorney for further examination of the decision refusing registration on the Principal Register of the above referenced mark, THE HAMMER (the "Mark").

Applicant filed its Notice of Appeal on December 6, 2008, with the Trademark Trial and Appeal Board (the "Board").  A request for extension of time was filed on January 30, 2009, and extensions of time was granted until April 4, 2009.

2

A final refusal was issued under Section 2(d) on June 6, 2008. The application was rejected based on an existing registration for THE KENTUCKY HAMMER, U.S. Reg. No. 3,180,035, issued December 5, 2006.

Applicant contacted Isaacs & Isaacs P.S.C., the owner of Registration No. 3,180,035, and requested that the parties enter into a consent agreement, whereby both parties agree that there has been no actual confusion between their respective marks and further agree to take all necessary steps to prevent any possible confusion from arising in the future, such that both registrations may peacefully co-exist.

The parties have agreed to enter into a Concurrent Use Agreement and Consent to Registration, a copy of which is enclosed herewith. Applicant hereby amends the present application to a Concurrent Use application.

An Amendment to Allege Use in connection with the present Application was filed electronically on March 23, 2009, as evidence by the enclosed filing receipt.

WHEREFORE, in view of this additional evidence, Applicant requests reconsideration of the Examining Attorney's refusal to register the Mark.

Respectfully submitted,

Date: 03/23/09

Ben D. Tobor
Mark G. Chretien
GREENBERG TRAURIG LLP
1000 Louisiana Street, Suite 1800
Houston, Texas 77002
Phone: (713) 374-3568
Fax: (713) 754-7568
Attorneys for Applicant,
Jim S. Adler, P.C.

3

## <u>CONCURRENT USE AGREEMENT</u>
## <u>AND CONSENT TO REGISTRATION</u>

THIS AGREEMENT is by and between Jim S. Adler, P.C., a corporation of Texas, having its principal place of business at 1900 West Loop South, 20th Floor, Houston, Texas, 77027-3214 (hereinafter "Jim Adler"), and Isaacs & Isaacs P.S.C., a corporation of Kentucky, with its principal place of business at 900 Cherokee Road Louisville, Kentucky 40204(hereinafter "Isaacs & Isaacs") (each a "Party" and together the "Parties");

WHEREAS, Isaacs & Isaacs is the owner of U.S. Registration No. 3,180,035 for the mark THE KENTUCKY HAMMER for "legal services" (the "Isaacs & Isaacs Registration");

WHEREAS, Jim Adler is the owner of U.S. Registration No. 3,503,851 for the mark THE TEXAS HAMMER and U.S. Application Serial No. 78/245,818 for the mark THE HAMMER, both for use in connection with "legal services" (the "Jim Adler Registration" and the "Jim Adler Application" respectively);

WHEREAS, Isaacs & Isaacs provides legal services in the territory comprising the States of Indiana and Ohio and the Commonwealth of Kentucky (the "Isaacs & Isaacs Territory");

WHEREAS, Jim Adler provides legal services in the territory comprising the forty-seven (47) States outside and exclusive of the Isaacs & Isaacs Territory (the "Jim Adler Territory");

WHEREAS, Jim Adler and Isaacs & Isaacs have each used the mark THE HAMMER for some time in their respective territories, without conflict or confusion, in

connection with the promotion of their respective legal services, and have acquired goodwill in the mark THE HAMMER in their respective territories;

WHEREAS, the Parties are sophisticated in the marketing of the respective services, and desirous of avoiding confusion of the public as to the source of the services provided in connection with the respective marks in the respective territories;

WHEREAS Jim Adler and Isaacs & Isaacs each wish to continue to use the mark THE HAMMER in connection with their respective services in the respective territories, in a manner calculated to avoid any appreciable likelihood of confusion, and each wishes to obtain federal registration of its mark under the Lanham Act;

NOW, THEREFORE, in view of the premises and of the mutual covenants expressed hereinafter, IT IS HEREBY AGREED by and between the parties as follows:

1.    Jim Adler agrees that Isaacs & Isaacs has the exclusive right to use the mark THE KENTUCKY HAMMER throughout the United States in connection with the services listed in the Isaacs & Isaacs Registration.

2.    Jim Adler hereby consents to the use and registration by Isaacs & Isaacs of the mark THE KENTUCKY HAMMER in connection with the services listed in the Isaacs & Isaacs Registration and agrees that it will not petition to cancel the Isaacs & Isaacs Registration.

3.    Isaacs & Isaacs agrees that Jim Adler has the exclusive right to use the mark THE TEXAS HAMMER throughout the United States in connection with the services listed in the Jim Adler Registration.

-2-

4.     Isaacs & Isaacs hereby consents to the use and registration by Jim Adler of the mark THE TEXAS HAMMER in connection with the services listed in the Jim Adler Registration and agrees that it will not petition to cancel the Jim Adler Registration.

5.     Jim Adler agrees that, as between the parties, Isaacs & Isaacs has the exclusive right to use the mark THE HAMMER in the Isaacs & Isaacs Territory in connection with providing legal services.

6.     Isaacs & Isaacs agrees that, as between the parties, Jim Adler has the exclusive right to use the mark THE HAMMER in the Jim Adler Territory in connection with providing legal services.

7.     Neither Party shall use the mark THE HAMMER in the other Party's respective territory, except in the event that a Party's advertising using the mark THE HAMMER is disseminated by means that do not allow that Party to limit dissemination to its respective territory, such as advertising in national editions of magazines, newspapers, the Internet, or television broadcasts; or advertising on broadcast stations based in the respective territory but whose signal may reach persons outside the respective territory. Notwithstanding, in no event shall either Party be permitted to use the mark THE HAMMER in any manner, including but not limited to the Internet or printed publications, specifically directed to consumers located within the other Party's respective territory. Party using advertising methods with any permissible "spillover" shall make reasonable efforts to avoid the likelihood of confusion caused by such advertising. Such efforts may include, without limitation, the use of geographically descriptive terms in association with the mark, disclaimers of association with the other Party, or any other commercially reasonable means. The Parties agree that if any

-3-

confusion does arise, they will take immediate and effective steps to alleviate said confusion or any further likelihood thereof.

8.     Each Party consents to the concurrent use and registration of the mark THE HAMMER by the other Party as set forth above, under the conditions set forth above, and agrees that it will neither oppose the other's application to register THE HAMMER with the United States Patent and Trademark Office, nor petition to cancel any registration resulting therefrom if such application or registration is compliant herewith.

9.     Jim Adler agrees to amend the Jim Adler Application to seek a Concurrent Use Registration restricted to the Jim Adler Territory in accordance with the terms of this Agreement.   Such request shall identify Isaacs & Isaacs by setting forth its name and address, and identifying its proposed application, its geographic area of use, the services with which its mark is used, the mode of use, and the periods of use, pursuant to 37 CFR §2.42.

10.     Isaacs & Isaacs agrees that any application it files to register the mark THE HAMMER shall be a Concurrent Use Application restricted to the Isaacs & Isaacs Territory in accordance with the terms of this Agreement.   Such request shall identify Jim Adler by setting forth its name and address, and identifying the Jim Adler Application, its geographic area of use, the services with which its mark is used, the mode of use, and the periods of use, pursuant to 37 CFR §2.42.

11.     Based upon the foregoing, the Parties agree and conclude that no appreciable likelihood of confusion will be caused by their respective use of the Mark THE HAMMER under the terms and conditions set forth above, and that each Party is to

-4-

enjoy the full benefit of the right to use and enforce the Mark THE HAMMER within its own respective territory.

12.     Should the United States Patent & Trademark Office and/or the Trademark Trial and Appeal Board reject this Agreement, reject either Party's Application or amendment thereto, or require further documentation from either Party, and so long as such deficiencies can be corrected without altering the general purposes and substance of this Agreement, each Party agrees to execute and provide to the other Party any such further needed documentation.

13.     This Agreement is binding upon and inures to the benefit of any successors and assignees of the Parties.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement as of the respective dates shown below.

ISAACS & ISAACS, P.S.C.

By: _____

Name: ____Darryl Isaacs____

Title: ____VP____

Date: ____3-6-09____

JIM S. ADLER, P.C.

By: _____

Name: ____JIM S. ADLER____

Title: ____ATTORNEY____

Date: ____3-20-09____

-5-

## Chretien, Mark G. (Assoc-Hou-IP/Tech)

**From:**    TEAS@uspto.gov
**Sent:**    Monday, March 23, 2009 10:42 AM
**To:**      Chretien, Mark G. (Assoc-Hou-IP/Tech)
**Subject:** Received Your Trademark/Service Mark Allegation of Use for serial number 77245818

We have received your Trademark/Service Mark Amendment to Allege Use form below.

To the Commissioner for Trademarks:

**MARK:** THE HAMMER
**SERIAL NUMBER:** 77245818

The applicant, Jim S. Adler, P.C., having an address of
    1900 West Loop South, 20th Floor
    Houston, Texas 770273214
    United States
is submitting the following allegation of use information:

For International Class 045:
Current identification: Legal services

The mark is in use in commerce on or in connection with all goods or services listed in the application or Notice of Allowance or as subsequently modified for this specific class

The mark was first used by the applicant, or the applicant's related company, licensee, or predecessor in interest at least as early as 03/04/2009, and first used in commerce at least as early as 03/04/2009, and is now in use in such commerce. The applicant is submitting one specimen for the class showing the mark as used in commerce on or in connection with any item in the class, consisting of a(n) Screenshot from Applicant's Internet website displaying the mark and advertising the services.
SPN0-7220138196-113423127_._Example_of_Use_-_THE_HAMMER.pdf

The applicant is not filing a Request to Divide with this Allegation of Use form.

A fee payment in the amount of $100 will be submitted with the form, representing payment for the allegation of use for 1 class.

**Declaration Signature**
Signature: /mgc/  Date: 03/23/2009
Signatory's Name: Mark G. Chretien
Signatory's Position: Attorney of record, Texas bar member

3/23/2009

Thank you,

The TEAS support team
Mon Mar 23 11:42:19 EDT 2009
STAMP: USPTO/AAU-72.20.138.196-20090323114219233333-77245818-
440aee78b24bead77f9b19ed77c81ec278e-DA-7719-20090323113423127348

# EXHIBIT 5

| To: | Jim S. Adler, P.C. (laipmail@gtlaw.com) |
| Subject: | TRADEMARK APPLICATION NO. 77245818 - THE HAMMER - 104311.01090 |
| Sent: | 4/25/2009 3:48:35 PM |
| Sent As: | ECOM114@USPTO.GOV |
| Attachments: | |

# UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO:** 77/245818

**MARK:** THE HAMMER

**CORRESPONDENT ADDRESS:**
BEN D. TOBOR
GREENBERG TRAURIG LLP
1000 LOUISIANA ST STE 1800
HOUSTON, TX 77002-5018

# *77245818*

**RESPOND TO THIS ACTION:**
http://www.uspto.gov/teas/eTEASpageD.htm

**GENERAL TRADEMARK INFORMATION:**
http://www.uspto.gov/main/trademarks.htm

**APPLICANT:**    Jim S. Adler, P.C.

**CORRESPONDENT'S REFERENCE/DOCKET NO:**
104311.01090
**CORRESPONDENT E-MAIL ADDRESS:**
laipmail@gtlaw.com

# OFFICE ACTION

TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE ISSUE/MAILING DATE.

**ISSUE/MAILING DATE: 4/25/2009**

This Office action is in response to applicant's communication filed on March 23, 2009.

**STATUS**

Applicant appeals a final refusal to register the mark THE HAMMER for legal services under Section 2(d) in view of U.S. Registration No. 3180035 for the mark THE KENTUCKY HAMMER also for legal services.

After the appeal was initiated, applicant filed a request to remand the application to the examining attorney to consider an amendment to a concurrent use application. Appli cant concurrently filed an acceptable amendment to allege use. T he request to amend to a concurrent use application is part of a comprehensive concurrent use and consent agreement touching on the use and registration of three marks – THE HAMMER, THE KENTUCKY HAMMER (U.S. Reg. No. 3180035) and THE TEXAS HAMMER (U.S. Reg. No. 3503851), each used with legal services.

The request to convert to a concurrent use application is accepted. T he refusal under Section 2(d) is overcome. Howev er, before the application may be published, applicant must comply with the requirements set forth below.

## PROVIDE MODE OF USE

Applicant must provide the mode of use. 37 C.F.R. §2.42; TMEP §120704(d)(i).

## PROVIDE VERIFIED STATEMENT

Applicant must provide a verified statement that no one else *except as specified in the application* has the right to use the mark. Appli cant provided such a statement with its request to remand. Howev er, that statement was not verified. 15 U.S.C. §1051( a)(3)(D); TMEP §1207.04(d)(i).

## FORM DECLARATION UNDER 37 C.F.R. §2.20

The undersigned being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001, and that such willful false statements and the like may jeopardize the validity of the application or document or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true; and all statements made on information and belief are believed to be true.

_____

(Signature)

_____

(Print or Type Name and Position)

_____

(Date)

If applicant has questions about its application or needs assistance in responding to this Office action, please telephone the assigned trademark examining attorney.

/Mark Rademacher/
Examining Attorney
Law Office 114
Trademarks
United States Patent and Trademark Office
Ph: (5 71) 272-9723

**RESPOND TO THIS ACTION:** Applicant should file a response to this Office action online using the form at http://www.uspto.gov/teas/eTEASpageD.htm, waiting 48-72 hours if applicant received notification of the Office action via e-mail. For *technical* assistance with the form, please e-mail TEAS@uspto.gov. For questions about the Office action itself, please contact the assigned examining attorney. **Do not respond to this Office action by e-mail; the USPTO does not accept e-mailed responses.**

If responding by paper mail, please include the following information: the application serial number, the mark, the filing date and the name, title/position, telephone number and e-mail address of the person signing the response. Please use the following address: Commissioner for Trademarks, P.O. Box 1451, Alexandria, VA 22313-1451.

**STATUS CHECK:** Check the status of the application at least once every six months from the initial filing date using the USPTO Trademark Applications and Registrations Retrieval (TARR) online system at http://tarr.uspto.gov. When conducting an online status check, print and maintain a copy of the complete TARR screen. If the status of your application has not changed for more than six months, please contact the assigned examining attorney.

| | |
|---|---|
| **To:** | Jim S. Adler, P.C. (laipmail@gtlaw.com) |
| **Subject:** | TRADEMARK APPLICATION NO. 77245818 - THE HAMMER - 104311.01090 |
| **Sent:** | 4/25/2009 3:48:37 PM |
| **Sent As:** | ECOM114@USPTO.GOV |
| **Attachments:** | |

# IMPORTANT NOTICE
## USPTO OFFICE ACTION HAS ISSUED ON 4/25/2009 FOR APPLICATION SERIAL NO. 77245818

Please follow the instructions below to continue the prosecution of your application:

**VIEW OFFICE ACTION:** Click on this link **http://tmportal.uspto.gov/external/portal/tow?DDA=Y&serial_number=77245818&doc_type=OOA&** (or copy and paste this URL into the address field of your browser), or visit **http://tmportal.uspto.gov/external/portal/tow** and enter the application serial number to **access** the Office action.

**PLEASE NOTE:** The Office action may not be immediately available but will be viewable within 24 hours of this notification.

**RESPONSE MAY BE REQUIRED:** You should carefully review the Office action to determine (1) if a response is required; (2) how to respond; and (3) the applicable **response time period**. Your response deadline will be calculated from 4/25/2009.

**Do NOT hit "Reply" to this e-mail notification, or otherwise attempt to e-mail your response, as the USPTO does NOT accept e-mailed responses. Instead, the USPTO recommends that you respond online using the Trademark Electronic Application System response form at http://www.uspto.gov/teas/eTEASpageD.htm.**

**HELP:** For *technical* assistance in accessing the Office action, please e-mail **TDR@uspto.gov**. Please contact the assigned examining attorney with questions about the Office action.

# WARNING
**1. The USPTO will NOT send a separate e-mail with the Office action attached.**

**2. Failure to file any required response by the applicable deadline will result in the ABANDONMENT of your application.**

# EXHIBIT 6

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
TRADEMARK EXAMINING DIVISION

| | | | |
|---|---|---|---|
| Mark: | THE HAMMER | ) | |
| | | ) | |
| | | ) | Trademark Examining Attorney: |
| | | ) | Mark Rademacher |
| Applicant: | Jim S. Adler, P.C. | ) | |
| | | ) | Law Office:　114 |
| Serial No.: | 77/245,818 | ) | |
| Filed: | August 2, 2007 | ) | Attorney Docket No.: |
| | | ) | 104311.010900 |

**AMENDMENT AND RESPONSE**

Commissioner for Trademarks
P. O. Box 1451
Alexandria, Virginia 22313-1451

CERTIFICATE OF MAILING
37 C.F.R. § 1.8

I hereby certify that this correspondence is being deposited with
the U.S. Postal Service, First Class Postage prepaid, the envelope
addressed to: Commissioner for Trademarks, P. O. Box 1451,
Alexandria, Virginia 22313-1451, on the date below.

8-14-09　　　　Linda Guice
Date　　　　　　Linda Guice

Dear Madame:

　　In response to the Office Action dated April 25, 2009, Applicant files the following

Amendment and Response. Reconsideration of this application is respectfully requested.

08-17-2009

U.S. Patent & TMOfc/TM Mail Rcpt Dt. #3E

HOU 406,686,227v1

IN THE APPLICATION

Please amend the present application to include the following mode of use:

The mode of use for the mark THE HAMMER is in word or design formats used on websites, in television advertisements, and on other advertising materials provided in interstate commerce.

REMARKS

Applicant appreciates the Examining Attorney's indication that the request to convert to a concurrent use application has been accepted.

Applicant is amending the application as indicated herein. Applicant has set forth the mode of use for the mark pursuant to 37 C.F.R. §2.42 and T.M.E.P. §1207.04(d)(i).

Applicant has also enclosed a verified statement under 15 U.S.C. §1051(a)(3)(D) which sets forth that no one else except as specified in the application has the right to use the mark.

Applicant respectfully requests that its mark be published for opposition purposes and that a Certificate of Registration be issued.

Respectfully submitted,

Date: 08/14/09

Ben D. Tobor
Mark G. Chretien
GREENBERG TRAURIG LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Phone: (713) 374-3528
Fax: (713) 754-7528
Attorneys for Applicant,
Jim S. Adler, P.C.

-2-

HOU 406,888,227v1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
TRADEMARK EXAMINING DIVISION

| | | | |
|---|---|---|---|
| Mark: | THE HAMMER | ) | |
| | | ) | |
| | | ) | Trademark Examining Attorney: |
| | | ) | Mark Rademacher |
| Applicant: | Jim S. Adler, P.C. | ) | |
| | | ) | Law Office:  114 |
| Serial No.: | 77/245,818 | ) | |
| | | ) | |
| Filed: | August 2, 2007 | ) | Attorney Docket No.: |
| | | | 104311.010900 |

**VERIFIED STATEMENT AS REQUIRED
UNDER 15 U.S.C. §1051(A)(3)(D)**

Commissioner for Trademarks
P. O. Box 1451
Alexandria, Virginia 22313-1451

| CERTIFICATE OF MAILING |
|---|
| 37 C.F.R. § 1.8 |
| I hereby certify that this correspondence is being deposited with the U.S. Postal Service, First Class Postage prepaid, the envelope addressed to: Commissioner for Trademarks, P. O. Box 1451, Alexandria, Virginia 22313-1451, on the date below. |
| 8-14-09          _Linda Guice_ |
| Date               Linda Guice |

Applicant declares that no one else except as specified in the application has the right to

use the applied-for mark.

The undersigned, being hereby warned that willful false statements and the like so made

are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful

false statements, and the like, may jeopardize the validity of the application or any resulting

registration, declares that all statements made of his/her own knowledge are true; and that all

statements made on information and belief are believed to be true.

-3-

HOU 406,688,227v1

Respectfully submitted,

Date: _____8/3/09_____

_Jim Adler_
Jim S. Adler, P.C.

HOU 406,688,227v1

# EXHIBIT 7

Int. Cl.: 45

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Reg. No. 3,503,851
Registered Sep. 23, 2008

## SERVICE MARK
### PRINCIPAL REGISTER

# THE TEXAS HAMMER

JIM S. ADLER, P.C. (TEXAS CORPORATION)

1900 WEST LOOP SOUTH, 20TH FLOOR

HOUSTON, TX 770273214

    FOR: LEGAL SERVICES, IN CLASS 45 (U.S. CLS. 100 AND 101).

    FIRST USE 8-2-2002; IN COMMERCE 8-2-2002.

    THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

    NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "TEXAS", APART FROM THE MARK AS SHOWN.

    SER. NO. 77-257,396, FILED 8-16-2007.

MARK RADEMACHER, EXAMINING ATTORNEY

# EXHIBIT 8

# IN THE UNITED STATES PATENT & TRADEMARK OFFICE

TO THE COMMISSIONER FOR TRADEMARKS:

| | | | |
|---|---|---|---|
| Applicant: | Isaacs & Isaacs P.S.C. | ) | Law Office 103 |
| | | ) | |
| Serial No.: | 77/701,833 | ) | Examining Attorney: |
| | | ) | W. Wendy Jun |
| Filing Date: | March 30, 2009 | ) | |
| | | ) | |
| Mark: | THE HAMMER | ) | |

## CONSENT TO REGISTRATION

1.    Jim S. Adler, P.C., a Texas corporation, having its principal place of business at 1900 West Loop South, 20th Floor, Houston, Texas, 77027-3214 (hereinafter "Jim Adler"), is the record owner of U.S. Registration No. 3,503,851 for the mark THE TEXAS HAMMER, U.S. Registration No. 3,651,822 for the mark HAMMER TV, U.S. Registration No. 3,644,185 for the mark HAMMER TIME, and U.S. Application Serial No. 78/245,818 for the mark THE HAMMER, all for use in connection with legal services and/or other related services.

2.    Applicant is the record owner of U.S. Registration No. 3,180,035 for the mark THE KENTUCKY HAMMER and Application Serial No. 77/701,833 for the mark THE HAMMER both for legal services.

3.    Consistent with the Concurrent Use Agreement and Consent to Registration dated March 20, 2009, between Jim Adler and Applicant, Jim Adler hereby consents to Applicant's above-referenced application to register the mark THE HAMMER, Ser. No. 77/701,833.

3.      Neither Jim Adler nor Applicant believes there is any appreciable likelihood of confusion between their respective marks.

JIM S. ADLER, P.C.

By: _____

Name: JIM S. ADLER

Title: PRESIDENT

Date: 11/11/09

750095:1:LOUISVILLE

-2-

# EXHIBIT 9

# United States of America

## United States Patent and Trademark Office

# GOOD HAMMER

**Reg. No. 3,786,310**

**Registered May 4, 2010**

**Int. Cl.: 42**

**SERVICE MARK**

**PRINCIPAL REGISTER**

LEGAL AID OF WESTERN MISSOURI (MISSOURI CORPORATION)
#1900
1125 GRAND BOULEVARD
KANSAS CITY, MO 64106

FOR: LEGAL SERVICES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 11-1-2007; IN COMMERCE 11-1-2007.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

SN 78-898,543, FILED 6-1-2006.

DAWN HAN, EXAMINING ATTORNEY



David J. Kappos

Director of the United States Patent and Trademark Office

# EXHIBIT 10

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2011)

# Trademark/Service Mark Application, Principal Register

### Serial Number: 85294029
### Filing Date: 04/13/2011

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 85294029 |
| **MARK INFORMATION** | |
| ***MARK** | The Velvet Hammer |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | The Velvet Hammer |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| ***OWNER OF MARK** | Koehler, Karen K |
| ***STREET** | 200 2nd Avenue West |
| ***CITY** | Seattle |
| ***STATE** (Required for U.S. applicants) | Washington |
| ***COUNTRY** | United States |
| ***ZIP/POSTAL CODE** (Required for U.S. applicants only) | 98119 |
| **PHONE** | 206-448-1777 |
| **EMAIL ADDRESS** | mab@stritmatter.com |

| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
|---|---|
| WEBSITE ADDRESS | www.karenkoehler.com |

## LEGAL ENTITY INFORMATION

| TYPE | individual |
|---|---|
| COUNTRY OF CITIZENSHIP | United States |

## APPLICANT INFORMATION

| *OWNER OF MARK | Stritmatter Kessler Whelan Coluccio |
|---|---|
| *STREET | 200 2nd Avenue West |
| *CITY | Seattle |
| *STATE (Required for U.S. applicants) | Washington |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE (Required for U.S. applicants only) | 98119 |
| PHONE | 206-448-1777 |
| EMAIL ADDRESS | mab@stritmatter.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |

## LEGAL ENTITY INFORMATION

| TYPE | corporation |
|---|---|
| STATE/COUNTRY OF INCORPORATION | Washington |

## GOODS AND/OR SERVICES AND BASIS INFORMATION

| INTERNATIONAL CLASS | 035 |
|---|---|
| *IDENTIFICATION | Advertising and marketing services provided by means of indirect methods of marketing communications, namely, social media, search engine marketing, inquiry marketing, internet marketing, mobile marketing, blogging and other forms of passive, sharable or viral communications channels |
| FILING BASIS | SECTION 1(a) |

| FIRST USE ANYWHERE DATE | At least as early as 05/28/2010 |
|---|---|
| FIRST USE IN COMMERCE DATE | At least as early as 05/28/2010 |
| **SPECIMEN FILE NAME(S)** | |
| ORIGINAL PDF FILE | spec-6713770226-134526220 . Karen_Koehler_-_Seattle_personal_injury_lawyer__2_.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT11\IMAGEOUT11\852\940\85294029\xml11\APP0003.JPG |
| SPECIMEN DESCRIPTION | www.karenkoehler.com website page showing The Velvet Hammer in use. |
| INTERNATIONAL CLASS | 045 |
| * IDENTIFICATION | Legal consultation services |
| FILING BASIS | SECTION 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 05/28/2010 |
| FIRST USE IN COMMERCE DATE | At least as early as 05/28/2010 |
| **SPECIMEN FILE NAME(S)** | |
| ORIGINAL PDF FILE | spec-1-6713770226-134526220 . Karen_Koehler_-_Seattle_personal_injury_lawyer__2_.pdf |
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT11\IMAGEOUT11\852\940\85294029\xml11\APP0004.JPG |
| SPECIMEN DESCRIPTION | Website page from www.karenkoehler.com showing The Velvet Hammer in use. |
| **CORRESPONDENCE INFORMATION** | |
| NAME | Koehler, Karen K |
| STREET | 200 2nd Avenue West |
| CITY | Seattle |
| STATE | Washington |
| COUNTRY | United States |
| ZIP/POSTAL | |

| CODE | 98119 |
|---|---|
| PHONE | 206-448-1777 |
| EMAIL ADDRESS | mab@stritmatter.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| **FEE INFORMATION** | |
| NUMBER OF CLASSES | 2 |
| FEE PER CLASS | 325 |
| *TOTAL FEE DUE | 650 |
| *TOTAL FEE PAID | 650 |
| **SIGNATURE INFORMATION** | |
| SIGNATURE | /Mary Ann B/ |
| SIGNATORY'S NAME | Mary Ann Baltich |
| SIGNATORY'S POSITION | Administrator |
| DATE SIGNED | 04/13/2011 |
| SIGNATURE | /Mary Ann B/ |
| SIGNATORY'S NAME | Mary Ann Baltich |
| SIGNATORY'S POSITION | Administrator |
| DATE SIGNED | 04/13/2011 |

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2011)

# Trademark/Service Mark Application, Principal Register

**Serial Number: 85294029**
**Filing Date: 04/13/2011**

## To the Commissioner for Trademarks:

**MARK:** The Velvet Hammer (Standard Characters, see mark)
The literal element of the mark consists of The Velvet Hammer.
The mark consists of standard characters, without claim to any particular font, style, size, or color.

The applicants, Karen K Koehler, a citizen of United States, having an address of
    200 2nd Avenue West
    Seattle, Washington 98119
    United StatesStritmatter Kessler Whelan Coluccio, a corporation of Washington, having an address of
    200 2nd Avenue West
    Seattle, Washington 98119
    United States
request registration of the trademark/service mark identified above in the United States Patent and
Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051
et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
    International Class 035:  Advertising and marketing services provided by means of indirect methods
of marketing communications, namely, social media, search engine marketing, inquiry marketing, internet
marketing, mobile marketing, blogging and other forms of passive, sharable or viral communications
channels

In International Class 035, the mark was first used at least as early as 05/28/2010, and first used in
commerce at least as early as 05/28/2010, and is now in use in such commerce. The applicants are
submitting one specimen(s) showing the mark as used in commerce on or in connection with any item in
the class of listed goods and/or services, consisting of a(n) www.karenkoehler.com website page showing
The Velvet Hammer in use..

**Original PDF file:**
spec-6713770226-134526220 . Karen Koehler - Seattle personal injury lawyer 2 .pdf
**Converted PDF file(s) (1 page)**
Specimen File1

**For specific filing basis information for each item, you must view the display within the Input Table.**
    International Class 045:  Legal consultation services

In International Class 045, the mark was first used at least as early as 05/28/2010, and first used in
commerce at least as early as 05/28/2010, and is now in use in such commerce. The applicants are
submitting one specimen(s) showing the mark as used in commerce on or in connection with any item in

the class of listed goods and/or services, consisting of a(n) Website page from www.karenkoehler.com showing The Velvet Hammer in use..

**Original PDF file:**
spec-1-6713770226-134526220 . Karen Koehler - Seattle personal injury lawyer 2 .pdf
**Converted PDF file(s) (1 page)**
Specimen File1


For informational purposes only, applicant's website address is: www.karenkoehler.com
The applicant's current Correspondence Information:

    Koehler, Karen K

    200 2nd Avenue West

    Seattle, Washington 98119

    206-448-1777(phone)

    mab@stritmatter.com (authorized)

A fee payment in the amount of $650 has been submitted with the application, representing payment for 2 class(es).

## Declaration

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.


Signature: /Mary Ann B/   Date Signed: 04/13/2011
Signatory's Name: Mary Ann Baltich
Signatory's Position: Administrator

Signature: /Mary Ann B/   Date Signed: 04/13/2011
Signatory's Name: Mary Ann Baltich
Signatory's Position: Administrator


RAM Sale Number: 475
RAM Accounting Date: 04/14/2011

Serial Number: 85294029
Internet Transmission Date: Wed Apr 13 14:16:32 EDT 2011
TEAS Stamp: USPTO/BAS-67.137.70.226-2011041314163222
5646-85294029-480beaebb240c1cfd020456c1d
23b454d5-CC-475-20110413134526220063

# The Velvet Hammer

Karen Koehler - Seattle personal injury lawyer



Evidence Page 188

Karen Koehler – Seattle personal injury lawyer



Evidence Page 189



Stritmatter Kessler Whelan Coluccio
200 2nd Ave West
Seattle, WA 98119
206.448.1777 tel
206.728.2131 fax

HOME    ABOUT ME    ARTICLES    TRIAL DIARIES    PHOTO ALBUMS    BLOG    CONTACT ME



 Female Trial Advocacy Program

Female trial attorneys face unique challenges and have certain needs that are not currently being sufficiently addressed through available CLE programs. The purpose of FTAP is to focus with particularity upon these issues by using female trial model instructors to teach female attorneys. By the conclusion of the course, the students will have learned and developed skills that will give them more confidence and personal power in their ability to try a case.

CLICK HERE TO LEARN MORE

**Yes, I'm a lawyer.** But I'm also a human being. I have a doggie named Nala, three daughters, eat brown sugar cinnamon pop tarts for breakfast, and wear jeans as often as possible when in court.

If you are reading this website it is either because: a) you are a client or fellow plaintiff attorney and want to get to know me better; b) you are a defense lawyer looking for any inside info you can possibly obtain to use against me (and my clients); or c) you are a random visitor.

Welcome to all of you.

For a detailed lawyer biography check out at Stritmatter Kessler Whelan Coluccio. SKWC



FOLLOW ME

 I encourage you to read one of my latest publications.
If you would like a hard copy of this booklet, feel free to email me.
*Reader Comments* (on the SKWC web site)

© 2010 Karen Koehler. All Rights Reserved